UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **JABARI LYLES,** *et al.*, | * |
| Plaintiff, | * |
| v. | *   CIVIL NO.: 19-CV-3235-RDB |
| **CHEGG, INC.,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLANTIFF JABARI LYLES' OPPOSITION TO DEFENDANT
CHEGG, INC.'S MOTION TO COMPEL ARBITRATION**

Plaintiff Jabari Lyles (hereinafter "Plaintiff" or "Lyles"), on his own behalf and on behalf of all other similarly situated persons, by and through counsel, Cory L. Zajdel, Esq., David M. Trojanowski, Esq., Jeffrey C. Toppe, Esq., and Z Law, LLC, files this Opposition to Defendant Chegg, Inc.'s (hereinafter "Defendant" or "Chegg") Motion to Compel Arbitration and Dismiss or, Alternatively, Stay pursuant to the Federal Arbitration Act ("Motion to Compel Arbitration"). ECF #21. For the reasons that follow, Chegg's Motion to Compel Arbitration must be denied.

**I.    INTRODUCTION**

On September 11, 2019, Plaintiff Lyles filed a Class Action Complaint ("Complaint") in the Circuit Court of Baltimore City on behalf of a class of consumers against Defendant Chegg. ECF #8. Chegg removed the case to this Court on November 8, 2019. ECF #1. Plaintiff Lyles alleges in his Complaint that Chegg violated California common law, various California statutes, and the California Constitution when it failed to maintain and secure Lyles'—and forty-million (40,000,000) other consumer users'—private, personally identifiable information ("PII"). Plaintiff seeks relief for himself and the 40,000,000 Chegg users who had their PII removed from Chegg's

possession in a data breach that occurred on or around April 29, 2018, but was not publicly disclosed until September 25, 2018 in an SEC filing. It is not at all clear when Chegg notified all of its users that the data breach occurred or when Chegg put in place protections to prevent further damage as a result of the data breach. All of the PII lost in the data breach was later sold to thieves and made generally available for purchase and other nefarious uses on the dark web.

Rather than face the merits of the allegations and allow a public airing of the underlying facts leading to this data breach, Defendant Chegg requests that this Court compel Plaintiff Lyles to seek redress for these privacy violations through private, binding, non-class arbitration rather than in court. In doing so, Chegg seeks to insulate itself from liability for its failure to maintain the PII entrusted to it by all purported Class Members, and further seeks to force Plaintiff Lyles and/or any other purported Class Member to proceed against Chegg in arbitration individually—without the prospect of class or consolidated proceedings.

Chegg asserts that when Plaintiff Lyles created "his Chegg.com account on September 30, 2014, Plaintiff agreed to Chegg's Terms of Use in effect at that time[.]" ECF #21-1 at 3. Chegg further asserts that by agreeing to Chegg's Terms of Use, Plaintiff Lyles also agreed to be bound by a binding arbitration agreement contained therein, and that this Court must enforce the purported arbitration agreement under the *Federal Arbitration Act* ("FAA"), 9 U.S.C. §§ 1, *et seq*.

Chegg does not, however: (1) provide a document signed by either party, (2) explain or provide any detail about how Plaintiff Lyles allegedly agreed to the Terms of Use, (3) provide any detail regarding where or how the Terms of Use were disclosed on the website, or (4) provide any detail regarding how Plaintiff Lyles was able to access the Terms of Use. For these reasons,

Plaintiff Lyles contends that no arbitration agreement was formed between himself and Chegg when he signed up and created an account on Chegg.com.[1]

## II. STANDARD OF REVIEW

In order for a United States District Court to compel arbitration under the FAA, the moving party has the burden of proving "a written agreement that includes an arbitration provision that purports to cover the dispute[.]" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). A United States District Judge cannot enter an order compelling arbitration until he or she is "satisfied that the making of the [written] agreement for arbitration . . . is not in issue[.]" FAA § 4; *see Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) ("Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination.").

When an arbitration agreement contains a delegation clause, judicial review is more limited. When a delegation clause is included within an arbitration agreement, the judicial review of a challenge to a demand for arbitration includes only the scope of the delegation clause and formation of the contract containing the arbitration agreement. *Novic*, 757 F. App'x at 266-67; *Berkeley Cty. Sch. Dist. v. HUB Int'l Ltd.*, 363 F. Supp. 3d 632, 644 (D.S.C. 2019) (explaining the scope of permissible challenges to arbitration where a party argues that a delegation provision applies). Here, Plaintiff Lyles only challenges the formation of the contract containing the

---

[1] Plaintiff Lyles has other arguments relating to the arbitrability of the claims asserted in the Complaint. Nonetheless, Plaintiff Lyles does not raise these issues in this forum due to the broad delegation clause included in the purported arbitration agreement. Plaintiff Lyles agrees with Chegg that due to the inclusion of the broad delegation clause in the purported arbitration agreement, the only issues appropriate to resolve in this forum are issues related to the *formation* of a contract containing an arbitration clause. ECF #21-1 at 10-11 (quoting *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x at 263, 266-67 (4th Cir. 2019) (finding that the Court still must determine whether the parties entered into a contract containing an arbitration agreement with a delegation clause). All remaining issues related to arbitrability will be left for the arbitrator to decide if this Court determines that arbitration is the appropriate forum for the dispute.

arbitration agreement and reserves any rights to challenge other aspects of the arbitration agreement if this Court compels him to arbitrate his dispute with Chegg.

      A.    *The FAA Policy Favoring Enforcing Arbitration Clauses Does Not Come into Play in Determining Whether a Written Agreement to Arbitrate Exists.*

Courts have interpreted the policy of the FAA to favor enforcing written arbitration agreements. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). But this policy favoring arbitrating claims under the FAA does not arise until after the moving party proves that a written arbitration agreement exists between the parties. *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (stating that the general policy favoring arbitrating claims does not "apply to the issue of which claims are arbitrable"). The United States Supreme Court has rejected the suggestion that the policy favoring arbitration under the FAA should be considered in determining whether the parties to a contract agreed to arbitrate the dispute at issue. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2850 (2010) (stating that courts must decide motions to compel arbitration by "applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand"); *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279 (2002); *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 667 A.2d 649, 654-665 (1995) (finding that under FAA "an arbitration clause is only 'liberally read' when an arbitration agreement in fact exists"). Accordingly, the Court must not provide any weight to the FAA policy favoring enforcing written arbitration agreements because the only argument presented by Plaintiff is whether a written arbitration agreement exists between the parties.

      B.     *State Contract Law Applies to the Determination of Whether a Contract Containing a Written Arbitration Agreement was Formed*

The question of whether parties have entered into an agreement to arbitrate is resolved through application of general state contract law principles that govern the formation of any contractual agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (emphasis in original); *Rota-McLarty v. Chegg Consumer USA, Inc.,* 700 F.3d 690, 697 (4th Cir. 2012) ("[T]he question of whether an enforceable agreement exists between [the parties] is a matter of contract interpretation governed by state law."). Defendant Chegg has conceded this point in its opening brief. ECF #21-1 at 11 ("The parties formed an agreement to arbitrate under Maryland law.").

      C.     *Defendant Chegg has the Burden of Proving the Formation and Existence of a Written Arbitration Agreement.*

The moving party has the burden of proving that an enforceable and valid written arbitration agreement between the parties was formed and exists. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139-41 (9th Cir. 1991); *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362 (2d Cir. 2003) (holding that arbitration clause of a contract was unenforceable because party seeking to enforce had not demonstrated that a contract had been created). The burden is substantial and requires summary judgment type proof. *Shaffer v. ACS Government Services, Inc.*, 321 F. Supp. 2d 682, 683-84 and 688 (2004) (denying motion to compel arbitration on the record before the court because the court was not convinced that the "parties actually entered

into an agreement to arbitrate"); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) ("[W]hen considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the district court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."). Accordingly, Defendant Chegg has the burden of proving that a written arbitration agreement was formed between Lyles and Chegg and that the written arbitration agreement still exists between Lyles and Chegg in accordance with FED. R. CIV. P. 56.

### III. CHEGG DID NOT PROVIDE SUFFICIENT EVIDENCE THAT LYLES ENTERED INTO AN AGREEMENT CONTAINING AN ARBITRATION CLAUSE.

Until recently, a party to litigation could prove the existence of an arbitration agreement by submitting a written document containing an actual signature on a real piece of paper. That is rarely the case with twenty-first century businesses that interact with their customer base exclusively through the internet. Internet-based companies generally contend that contracts with arbitration agreements were formed between itself and any user through a so-called "clickwrap" or "browsewrap" agreement that exist only on the internet, where no person ever actually signs the document containing the arbitration agreement. Rather, the company will claim that a contract containing an arbitration agreement lived on the internet and that, by some type of affirmative consent, that person agreed to be bound by the clickwrap agreement.

The sign-up page, clickwrap agreement, and browsewrap agreement changes from time to time. Identifying the webpage containing the clickwrap or browsewrap agreements is not sufficient to prove the formation of a contract between the parties. Rather, a company attempting to compel a party to arbitration under a clickwrap or browsewrap agreement must identify for the Court specifics related to the sign-up process and sign-up page in order to identify how the clickwrap

agreement or browsewrap agreement was disclosed to the user. Chegg is claiming that Plaintiff Lyles entered into a clickwrap agreement on Chegg's website, but Chegg has not provided any evidence of how the clickwrap agreement was disclosed to Lyles during the sign-up process. Nor did Chegg provide any evidence that Lyles did, in fact, agree to its terms. Without any such evidence, Chegg's Motion to Compel Arbitration cannot be granted.

      A.    *Clickwrap Agreements are Only Enforceable if the Website Containing the Clickwrap Agreement Clearly and Conspicuously Discloses the Arbitration Agreement.*

A clickwrap agreement is only formed "where the existence of the terms was reasonably communicated to the user." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 76 (2d Cir. 2017). Whether the clickwrap agreement was "reasonably communicated to the user" is a "fact-intensive inquiry." *Id*. On a motion to compel arbitration, a court can "determine that [a clickwrap] agreement to arbitrate exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent [is] unambiguous as a matter of law." *Id*.

Determining whether the hyperlink to any arbitration agreement that is stored on another webpage was "reasonably conspicuous" depends on how the sign-up page was set up, and whether the arbitration agreement "is highlighted in blue and underlined[.]" *Id*. at 78. Where a website page is busy or does not provide the consumer an indication that an agreement contained on another webpage will bind them, no contract (including an arbitration agreement) will form. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233-34 (2d Cir. 2016) (citing cases).

      B.    *Chegg Produced no Evidence that the Website Page where Lyles Signed up for a Chegg Account Contained a Clear and Conspicuously Disclosed Arbitration Agreement.*

Chegg asserts that on September 30, 2014, Plaintiff Lyles "created a Chegg.com account [and] accepted and agreed to the terms of use posted on Chegg.com[.]" ECF #21-6 at ¶¶ 2 and 4. Chegg does not, however, provide a screenshot of the sign-up page. Chegg does not state how the "terms of use" were "posted on Chegg.com as of that date and time." *Id*. Chegg does not state

whether the terms of use were contained within a hyperlink close to any "accept" or "register" button. Chegg does not state whether the terms of use were hyperlinked, underlined, and highlighted in blue on the sign-up webpage. In fact, Chegg has provided this Court no evidence of how the terms of use purportedly containing the arbitration agreement were disclosed to Plaintiff Lyles.

For this reason, Chegg failed to meet its burden of establishing that the terms of use purportedly containing the arbitration agreement were clearly and conspicuously disclosed to Lyles prior to agreeing to sign up and create an account on Chegg.com, and its Motion to Compel Arbitration must be denied.

## IV. CONCLUSION

For the reasons stated herein, Defendant Chegg's Motion to Compel Arbitration should be denied. In the alternative, should this Court grant Chegg's Motion to Compel Arbitration, Plaintiff Lyles requests the Court stay the case pending the resolution of arbitration.[2]

                                      Respectfully submitted,

                                      Z LAW, LLC

Dated: December 23, 2019            By:      **/s/ 28191**
                                      Cory L. Zajdel, Esq. (Fed. Bar #28191)

---

[2] Chegg requests that the Court dismiss the case rather than stay the litigation pending the completion of the arbitration. The *Federal Arbitration Act*, 9 U.S.C. § 3 requires that a District Court stay litigation after compelling arbitration when "one of the parties" makes an "application" for a "stay[.]" *Id.* This Court has nonetheless entered orders dismissing litigation after granting motions to compel arbitration. The United States Court of Appeals for the Fourth Circuit has recognized the tension from within its own opinions as to whether it is appropriate to dismiss a case after ordering arbitration. *Compare Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001) with *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir 2012). The Second Circuit recently rebuked this line of cases and held that the District Court has no authority to dismiss a case under these circumstances. *Katz v. Cellco P'Ship d/b/a/ Verizon Wireless*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S.Ct. 596 (2015)). Plaintiff Lyles requests that if the Court is inclined to grant the Motion to Compel Arbitration, that the case be stayed rather than dismissed because a dismissal could result in piecemeal appeal, two separate filing fees, two separate case numbers, will leave this Court without jurisdiction should there be any need for judicial intervention during the course of any arbitration proceeding, and would require either party to open a new case to confirm or request review of an arbitration award.

Jeffrey C. Toppe (Fed. Bar #20804)
David M. Trojanowski (Fed. Bar #19808)
2345 York Road, Ste. B-13
Timonium, MD 21093
(443) 213-1977
clz@zlawmaryland.com
jct@zlawmaryland.com
dmt@zlawmaryland.com

**Attorneys for Plaintiff**