**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

| | |
|---|---|
| JABARI LYLES, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEGG, INC.,<br><br>Defendant. | )<br>)<br>)  Case No. 1:19-cv-3235<br>)<br>)<br>)  Hon. Richard D. Bennett<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>DEFENDANT CHEGG, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS OR, ALTERNATIVELY, STAY</u>**

Plaintiff does not dispute that, if the parties formed the Arbitration Agreement,[1] then Chegg's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay (the "Motion") must be granted.[2] Nor does Plaintiff directly assert that he did *not* accept and agree to Chegg's 2014 Terms of Use, which contained the Arbitration Agreement, when he created his Chegg.com account on September 30, 2014. Instead, Plaintiff's only argument in his Opposition to Chegg's Motion is that Chegg did not provide sufficient evidence about *how* Plaintiff accepted and agreed to the 2014 Terms of Use for the Court to determine that the Arbitration Agreement was formed.

---

[1] Capitalized terms used in this Reply that are not defined herein have the meanings set forth in the Memorandum In Support of Defendant's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay, ECF 21-1 ("Memorandum" or "Mem.").

[2] In particular, Plaintiff concedes that the Arbitration Agreement contains a "broad delegation clause" mandating that issues of arbitrability be decided by the arbitrator. Opposition to Defendant Chegg, Inc.'s Motion to Compel Arbitration ("Opposition" or "Opp'n"), ECF 23, 3 n.1.

Plaintiff is wrong that such additional evidence is required.  The declarations that Chegg submitted in support of the Motion provide ample evidence that the parties formed the Arbitration Agreement when Plaintiff registered for a Chegg.com account.  Plaintiff does not dispute the accuracy or authenticity of any of this evidence; nor does Plaintiff offer any evidence of his own, by declaration or otherwise, that he did not agree to the 2014 Terms of Use.  Because Chegg has submitted evidence showing that the Arbitration Agreement was formed and Plaintiff has submitted no evidence rebutting Chegg's submission, Chegg has met its burden of showing that the Arbitration Agreement was formed in accordance with Rule 56, and the Court should grant the Motion without considering the additional issues raised in Plaintiff's opposition.

Even if the Court were to decide that something more than Chegg's already-submitted and undisputed evidence were necessary to show that the parties formed the Arbitration Agreement, moreover, the result would not change.  The webpage by which Plaintiff agreed to the 2014 Terms of Use, as confirmed by evidence submitted herewith by Chegg, includes the criteria that courts routinely recognize as sufficient to create a binding agreement, when—unlike the case here—the existence of such a binding agreement is appropriately challenged.  None of Plaintiff's authorities are to the contrary.

**I.      ARGUMENT**

      A.  **The Motion, Memorandum, and Evidence in Support Set Forth Ample Evidence that the Parties Entered Into a Binding Arbitration Agreement.**

Notably, Plaintiff does not cite a single case in support of his assertion that "a company attempting to compel a party to arbitration under a clickwrap or browsewrap agreement must identify for the Court specifics related to the sign-up process and sign-up page in order to identify how the clickwrap agreement or browsewrap agreement was disclosed to the user."

Opp'n at 6-7. Nor could he have, since such a requirement does not exist. As Plaintiff elsewhere concedes, the question of whether Chegg met its burden to establish that the parties formed the Arbitration Agreement is decided under Rule 56. Opp'n at 6; *see also Grant-Fletcher v. Collecto, Inc.*, No. CIV.A. RDB-13-3505, 2014 WL 1877410, at *3 (D. Md. May 9, 2014) (Bennett, J.) ("Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment."). Under Rule 56, the Court "shall grant" Chegg's Motion if "there is no genuine dispute as to any material fact and [Chegg] is entitled to judgment as a matter of law." Under this standard, a genuine dispute as to a material fact only exists "if *the evidence* is such that a reasonable jury could return a verdict for the nonmoving party." *Grant-Fletcher*, 2014 WL 1877410, at *3 (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Consistent with the Rule 56 standard, where, as here, the party moving to compel arbitration submits evidence showing that an agreement to arbitrate was formed,[3] the party opposing arbitration must "unequivocal[ly] den[y]" the existence of the agreement and "must

---

[3] As set forth in its Memorandum, Chegg supplied ample evidence, via declarations of two Chegg employees, that the parties agreed to the 2014 Terms of Use, which contained the Arbitration Agreement, when Plaintiff created his Chegg.com account. Mem. 2-5, 12. First, Mr. Xu, a Director of Engineering for Chegg, explained that Chegg maintains records showing both when users Chegg.com accounts and when those users accept and agree to the Chegg.com Terms of Use. He further declared that those records identify only one Jabari Lyles, and that Mr. Lyles created an account and agreed to the Chegg.com Terms of Use in place on September 30, 2014 at 11:48am. ECF 21-6, Xu Decl. ¶¶ 2-4. Second, Ms. Jewell, Vice President, Associate General Counsel for Chegg, provided a true and correct copy of Internet Archive records showing the Terms of Use posted on Chegg.com on September 30, 2014 at 11:48am. ECF 21-2, Jewell Decl. ¶¶ 6-7, Ex. 1, 2. The 2014 Terms of Use in turn contain the Arbitration Agreement. ECF 21-2, Jewell Decl. Ex. 1, 10. Plaintiff does not dispute either the accuracy or authenticity of any of this evidence.

produce 'some evidence . . . to substantiate the denial'" if he hopes to have a chance of avoiding arbitration on formation grounds. *Focus Music Entm't, LLC v. Streamify, LLC*, No. CV ELH-18-1241, 2018 WL 6423906, at *6 (D. Md. Dec. 5, 2018) (quoting *Drews Distrib., Inc. v. Silicon Gaming, Inc*., 245 F.3d 347, 352, n.3 (4th Cir. 2001)). Plaintiff has done neither of these things.[4] Here, then, since the *only* evidence before the Court indicates that the parties formed the Arbitration Agreement, and this is the only issue that Plaintiff disputes in his opposition, the Court should grant the Motion. *See Hodgin v. UTC Fire & Sec. Ams. Corp*., 885 F.3d 243, 252 (4th Cir. 2018) (granting summary judgment where non-moving party offered no record evidence to dispute moving party's evidence); *see also Grant-Fletcher*, 2014 WL 1877410, at *6 (holding that arbitration agreement was formed under the Rule 56 standard, even though the plaintiff submitted an affidavit contesting formation, where evidence included in the plaintiff's

---

[4] The Opposition merely states that Chegg failed to meets its burden and "[f]or this reason" Plaintiff "contends that no arbitration agreement was formed between himself and Chegg when he signed up and created an account on Chegg.com." Opp'n at 2-3. Plaintiff does not affirmatively deny that he agreed to the 2014 Terms of Use, which contained the Arbitration Agreement. In particular, he does not assert that Chegg's process for obtaining Plaintiff's assent to the 2014 Terms of Use was somehow inadequate or otherwise dispute the accuracy of any of the evidence that Chegg submitted to demonstrate that the Arbitration Agreement was formed. And there can be no question that Plaintiff has presented no evidence whatsoever—in the form of a declaration or otherwise—suggesting that the Arbitration Agreement was not formed. While irrelevant to the legal issue of whether Plaintiff has met *his* burden to rebut the evidence that Chegg produced showing that an agreement to arbitrate was formed, it bears noting that, if Plaintiff believed that Chegg's process for obtaining his assent to the 2014 Terms of Use was insufficient, nothing would have stopped him from raising that issue in the Opposition, since information about that process, as it existed in September 2014, is publicly available and, alternatively, could have been requested from Chegg during the meet and confer process in the same way that Plaintiff requested (and received) a copy of the 2014 Terms of Use. *See* Supplemental Declaration of Dana Jewell ISO Motion to Compel Arbitration and Dismiss or, Alternatively, Stay ("Supp. Jewell Decl.") ¶ 2 (providing Internet Archive links); ECF 21-7, Visser Decl. ¶¶ 3-5; Supplemental Declaration of Michelle L. Visser ISO Motion to Compel Arbitration and Dismiss or, Alternatively, Stay ("Supp. Visser Decl.") ¶ 2.

declaration was insufficient to create a genuine issue of material fact); *LTVN Holdings LLC v. Odeh*, No. CIV. A. CCB-09-0789, 2009 WL 3736526, at *3-4 (D. Md. Nov. 5, 2009) (finding clickwrap agreement enforceable without analyzing sufficiency of consent mechanism in rejecting evidentiary challenge to personal jurisdiction).[5]

    The cases that Plaintiff cites to illustrate what factors courts sometimes consider when formation of online arbitration agreements is challenged are not to the contrary. In *Uber*, the Plaintiff submitted a declaration denying the formation of the agreement at issue, such that further inquiry into whether he had sufficient notice of the online terms was appropriate. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71 (2d Cir. 2017) (plaintiff submitted evidence that he did not recall seeing terms, following the hyperlink, or reading the terms). And *Amazon* was decided on a motion to dismiss, where the court found that, under the Rule 12(b)(6) standard, certain evidence that Amazon submitted via declaration was not properly before the court, such that the only evidence supporting Amazon's contention that an agreement to arbitrate was formed was the website itself. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234-35 (2d Cir. 2016). Unlike in *Uber*, Plaintiff has not submitted any evidence disputing that an agreement to arbitrate was formed. And unlike in *Amazon*, the Rule 12(b)(6) motion to dismiss standard is inapplicable, and Chegg has submitted evidence that is properly before the Court other than the website itself

---

[5] *See also Baine v. Citibank, N.A.*, No. 1:18-CV-3024-AT-JSA, 2018 WL 6136792, at *7 (N.D. Ga. Oct. 31, 2018), report and recommendation adopted, No. 1:18-CV-3024-AT, 2018 WL 7018640 (N.D. Ga. Dec. 13, 2018) (declaration of financial institution employee that exhibit to declaration was operative agreement between the parties sufficient to establish formation of a contract where opposing party offered no evidence to the contrary).

showing that an agreement to arbitrate was formed.[6] Under the Rule 56 standard that applies here, the undisputed evidence that Chegg submitted when it filed its Motion shows that the parties formed the Arbitration Agreement. The Court, accordingly, should grant Chegg's Motion.

      B.    **Even if Further Inquiry Were Required by Reason of Plaintiff's Opposition, Further Evidence Reinforces that the Parties Entered into the 2014 Terms of Use, Which Contained the Arbitration Agreement.**

Even if Plaintiff had submitted some evidence disputing that he agreed to the 2014 Terms of Use (he did not), such that further inquiry into the issue of mutual assent were warranted (it is not), the result of such an inquiry would affirm that Plaintiff agreed to the 2014 Terms of Use. Contrary to Plaintiff's contention,[7] the required assent in the context of online agreements need

---

[6] Plaintiff's other authorities in support of his general assertion that Chegg has the burden of establishing formation are similarly inapposite. In *Three Valleys*, the Ninth Circuit merely found that the question of whether an arbitration agreement was formed is for the court, rather than the arbitrator, a point which Chegg does not challenge here. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1142 (9th Cir. 1991). In *Opals*, the court considered the factually irrelevant situation of parties executing different versions of agreements and consequently not reaching a meeting of the minds. *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003). In *Shaffer*, the court merely found that an employer could not compel arbitration of a dispute with an employee based on the employee's signed acknowledgement of an alternative dispute resolution program that did not expressly reference arbitration. *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 688 (D. Md. 2004). Plaintiff has conceded here, as he must, that the Arbitration Agreement clearly references arbitration, and specifically delegates issues of arbitrability to the arbitrator. *See* Opp'n at 3 n.1. Finally, *Par-Knit* reinforces the shortcomings in Plaintiff's Opposition, as the plaintiff there supported his denial by affidavit. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980).

[7] *See* Opp'n at 7. While the court in *Uber* did suggest that the existence of "text that is highlighted in blue and underlined" would put a consumer on sufficient notice of hyperlinked contractual terms, it by no means found that this is the only means to do so. *Uber*, 868 F.3d at 79 (analyzing webpage as a whole and concluding that Uber provided reasonably conspicuous notice of the Terms of Service at issue in that case). Similarly, the court in *Amazon* found that the plaintiff in that case was not on sufficient notice of the agreement to arbitrate after determining that notice was not "conspicuous in light of the whole webpage." 834 F.3d at 237.

not take any particular form; rather, courts "apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement." *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009); *cf. Grant-Fletcher*, 2014 WL 1877410, at *7, n.2 (finding agreement to arbitrate formed where party opposing arbitration "was made aware of, and had access to, the [t]erms of [s]ervice containing the arbitration clause"). As the cases that Plaintiff himself cites make clear, in the online context, actual notice is not required. Rather, courts focus on whether the online user was on inquiry notice of the agreement. *Uber*, 868 F.3d at 75 (explaining "click" can signify acceptance of contract where site gives user "reasonable notice that click will manifest assent") (quotation omitted); *Amazon*, 834 F.3d at 232 (assent may be accomplished where user "knows or has reason to know that the other party may infer from his conduct that he assents") (quotation omitted). Where an online user is on inquiry notice of the agreement and the steps that will result in acceptance of such agreement, an action by the user to take such steps will suffice to show manifestation of assent. *See Uber*, 868 F.3d at 79-80 (finding assent "unambiguous" where, based on the "objectively reasonable notice of the terms," a "reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not").

Here, Plaintiff was put on inquiry notice of, and assented to, the 2014 Terms of Use through a standard online account creation mechanism that courts routinely have held is

sufficient to create a binding agreement. The picture below shows the webpage where Plaintiff created his Chegg.com account and agreed to the 2014 Terms of Use.[8]

[Image: Chegg Sign up dialog with fields for Email address and Create a password, buttons "I'm in college" and "I'm in high school", a green "Sign up" button with text "By clicking 'Sign up' you agree to the Terms and Privacy Policy", and a "Sign up with Facebook" button.]

---

[8] Consideration of this additional evidence is appropriate since the evidence addresses arguments raised in the Opposition. *See Allen v. Enabling Techs. Corp.*, No. CV WMN-14-4033, 2016 U.S. Dist. LEXIS 106005, at *12 (D. Md. Aug. 11, 2016) ("nothing in the Federal Rules of Civil Procedure forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised in an opposition"). It is especially warranted here since Plaintiff never raised the possibility of a challenge to the Arbitration Agreement based on how Chegg's website was designed during the meet and confer process. As set forth in Chegg's Memorandum and supporting declaration of Ms. Visser, during the meet and confer process, Plaintiff never disputed that he agreed to be bound by the 2014 Terms of Use when he created his Chegg.com account. Visser Decl. ¶¶ 3-5. If anything, the meet and confer process suggested that Plaintiff acknowledged he agreed to the 2014 Terms of Use, insofar as Plaintiff's counsel requested a copy of the 2014 Terms of Use but did not request any information about how Plaintiff agreed to the 2014 Terms of Use or how the 2014 Terms of Use were disclosed on the website. Visser Decl. ¶¶ 3-5; Supp. Visser Decl. ¶ 2.

Supp. Jewell Decl. ¶¶ 2-3; *id.* Ex. 4.  The picture below shows the same webpage when the user puts his curser over the word "Terms":



Supp. Jewell Decl. ¶ 4, Ex. 6.  As set forth in these pictures, directly under the "Sign up" button, Chegg put Plaintiff on notice that "[b]y clicking 'Sign up' [he] agree[d] to the Terms."[9]

Courts frequently have found that online users are on sufficient inquiry notice of online terms of use agreements when, as is the case here, a user is presented with a page that requests user information and contains a button to create an account (or take some other action) in close proximity to text explaining that by clicking the button, the user agrees to the applicable terms of

---

[9] Clicking on the "Terms" hyperlink on this page brought the user to the 2014 Terms of Use. Supp. Jewell Decl. ¶ 4, Ex. 6.

- 9 -

use.[10] The existence of adequate inquiry notice is underscored here by (i) the word "Terms" being emphasized through bold text and, when a user scrolls over the word with his curser, through underlined text (Supp. Jewell Decl. ¶ 4, Ex. 6), and (ii) the account creation button and sentence explaining the implication of clicking this button being presented on an uncluttered page, in immediate proximity to the account creation button.[11] Accordingly, by clicking "Sign up," Plaintiff manifested assent to the 2014 Terms of Use and the Arbitration Agreement therein. *See Uber*, 868 F.3d at 80; *see also supra* nn. 10-11.

The enforceability of the mechanism used here by the parties is reinforced by the cases cited by Plaintiff. In *Uber*, the court found that the applicable account creation mechanism sufficed to form an enforceable contract because, *like the mechanism here*, it was "uncluttered,"

---

[10] *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017) (sufficient notice where text stating "[b]y creating an Uber account, you agree to the Terms & Conditions" was on the same screen as the "DONE" button that users were required to click to create a new account); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *1-3 (S.D.N.Y. Apr. 24, 2014) (sufficient notice where the "sign-up box" stated that "the consumer will become a Gilt member and agrees to be bound by the 'Terms of Membership'"); *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *6 (N.D. Cal. Feb. 24, 2017) (sufficient notice where "[t]he text containing the Terms and Conditions hyperlink was located directly above [the Submit Secure Purchase] button and indicated that clicking "Submit Secure Purchase" constituted acceptance of those terms").

[11] *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (sufficient notice where sentence indicating assent with hyperlink to the terms was "immediately below" "Sign Up" button); *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (sufficient notice where button "immediately above" sentence that "[b]y clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions" and links were emphasized); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 161 (E.D.N.Y. 2019) (sufficient notice where "entire screen is visible at once" and had "a minimalist layout and no distractions") (quotation omitted).

it contained a nearly identical warning regarding the implications of creating an account,[12] it placed this warning "directly below" the account creation button, "the entire screen [was] visible at once," and the linked text was emphasized. *See Uber*, 868 F.3d at 78.  In *Amazon*, the court found that "reasonable minds could disagree" that the applicable purchase completion mechanism sufficed to form an enforceable contract because, *unlike the mechanism here*, (i) the order confirmation page at issue was cluttered, containing an order summary, billing and shipping information, payment information, and 15-25 other links; and (ii) the language stating that "[b]y placing your order, you agree to Amazon.com's privacy notice and conditions of use"—which included the agreement to arbitrate—was not near the "Place your order" button. *See Amazon*, 834 F.3d at 236-37.  Thus, Plaintiff's cases merely reinforce that, to the extent that Chegg's account creation mechanism is properly before Court on this Motion, it was sufficient to bind the parties to the 2014 Terms of Use and Arbitration Agreement therein.

        C.      **The Court Should Compel Individual Arbitration and Dismiss the Litigation.**

Plaintiff concedes that the Fourth Circuit, and district courts in this Circuit following the Fourth Circuit's lead,  have dismissed cases referred to arbitration where there is nothing left for the court decide.  *See* Opp'n at 8 n.2; *see also* Mem. at 16 (collecting cases).  *Katz*, a Second Circuit case cited by Plaintiff, acknowledged that the Fourth Circuit has permitted district courts to dismiss actions that are subject to arbitration.  *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).  While the Second Circuit in *Katz* finds a different rule to be applicable in the Second Circuit, that ruling has no effect on the Fourth Circuit authority and subsequent persuasive

---

[12]    The text of the warning in *Uber* was "[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." *Uber*, 868 F.3d at 71.

district court cases holding that dismissal is appropriate in such cases.[13] Dismissal thus remains appropriate here because, once the Court finds that the parties entered into the 2014 Terms of Use, which contained the Arbitration Agreement, there will be nothing left for the Court to decide. Alternatively, the entire litigation should be stayed pending the conclusion of arbitration. *See* 9 U.S.C. § 3.

## II. CONCLUSION

For the reasons set forth above and in the Memorandum, Chegg respectfully requests that the Court grant its Motion to Compel Arbitration and Dismiss or, Alternatively, Stay.

---

[13] In the *Aggarao* case cited by Plaintiff, the Fourth Circuit acknowledges some tension in Fourth Circuit precedent in this area but expressly declined to resolve that tension because the issues in that case were "not all subject to arbitration," such that was dismissal would not be a proper under the Fourth Circuit *Choice Hotels* decision that sanctioned dismissal. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 & n.18 (4th Cir. 2012). Since *Aggarao*, district courts in the Fourth Circuit have continued to dismiss cases referred to arbitration where there is nothing left for the Court decide. *See* Mem. at 16 (collecting cases).

Dated: January 13, 2020					Respectfully submitted,

                                                             /s/ *Jonathan A. Direnfeld*
Jonathan A. Direnfeld (Bar No. 28859)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
jdirenfeld@orrick.com
Telephone: (202) 339-8614

Douglas H. Meal (Bar No. 811810)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
dmeal@orrick.com
Telephone: (617) 880-1880

Michelle Visser (Bar No. 811806)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
mvisser@orrick.com
Telephone: (415) 773-5518

David Cohen (Bar No. 811803)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
david.cohen@orrick.com
Telephone: (212) 506-3566

*Attorneys for Defendant Chegg, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2020, a copy of the foregoing document was filed electronically and is available for viewing from the Court's ECF system. Notice of this filing will be sent to counsel of record via the Court's ECF system.

>  /s/ *Jonathan A. Direnfeld*
>  Jonathan A. Direnfeld