IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JABARI LYLES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-19-3235 |
| CHEGG, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On April 29, 2018, Defendant Chegg, Inc. ("Defendant" or "Chegg") experienced a data breach resulting in the exposure of its customer's personally identifiable information. Plaintiff Jabari Lyles ("Plaintiff" or "Lyles") has filed a putative class action lawsuit against Chegg which seeks redress for the data breach. Plaintiff's Complaint brings eight Counts, all arising from the April 2018 incident.

Now pending is Defendant's Motion to Compel Arbitration and Dismiss, or, Alternatively, Stay. (ECF No. 21.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, Defendant's Motion to Compel Arbitration and Dismiss (ECF No. 21) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.

### BACKGROUND

Chegg provides education materials and services to high school and college students. (Compl. ¶ 1, ECF No. 2-1.) Lyles is a Maryland resident and former Chegg customer who contracted with Chegg while he was a student at the University of Maryland, Baltimore

County.  (*Id.* ¶ 9; Decl. of Wentao Xu ¶ 2, ECF No. 21-6.)  On September 30, 2014, Lyles created a Chegg account through its online registration process.  (ECF No. 21-6 ¶ 2.)  By clicking the "sign up" button on the Chegg.com website, Lyles agreed to the company's Terms of Use.  (ECF No. 21-6 ¶ 4; ECF No. 24-4.)  The Terms of Use in effect at that time (the "2014 Terms of Use") contains an arbitration notice, as follows:

> **ARBITRATION NOTICE: Except for certain types of disputes described in the ARBITRATION section below, you agree that disputes between you and CHEGG will be resolved by binding, individual ARBITRATION and you waive your right to participate in a class action lawsuit or classwide arbitration.**

(2014 Terms of Use, ECF No. 21-3.)  Beneath the heading "Legal Disputes," the Terms of Use specified that "You and Chegg agree that any dispute, claim or controversy arising out of or relating to these Terms of Use or the breach, termination, enforcement, interpretation or validity thereof . . . will be settled by binding arbitration" (*Id.* at 11.)  The Terms of Use further specify that the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "AAA Rules") govern the arbitration.  (*Id.*)

On April 29, 2018, an unauthorized party gained access to the data of approximately 40 million Chegg customers, including user names, email addresses, shipping addresses, and hashed Chegg passwords.  (Compl. ¶¶ 3, 11; Form 8-K, ECF No. 21-5.)  Plaintiff generally alleges that Defendant did not take proper security measures to prevent the exposure of its customers' personally identifiable information and did not notify its customers of the data breach.  (Compl. ¶¶ 17, 27.)  Plaintiff claims that he has received spam calls mentioning his personally identifiable information since the breach.  (*Id.* ¶ 18.)

On September 11, 2019, Lyles filed this putative class action lawsuit in the Circuit Court of Baltimore City, Maryland. Complaint, *Lyles v. Chegg, Inc.*, No. 24C19004708 (Md. Cir. Ct. Baltimore City, Sept. 11, 2019). The Complaint contains eight Counts, all arising from the April 2018 data breach. On November 8, 2019, Chegg filed a Notice of Removal and removed the Action to this Court pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, and 1446. (ECF No. 1.) On December 4, 2019, Chegg filed the presently pending Motion to Compel Arbitration and Dismiss, or, Alternatively, Stay. (ECF No. 21.)

## STANDARD OF REVIEW

As this Court has previously noted, "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)). Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment. *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019); *see also Caire*, 982 F. Supp. 2d at 589 (citing *Shaffer*, 321 F. Supp. 2d at 684 n.1); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary

judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D.Md.2001) (citations omitted).

**ANALYSIS**

The parties agree that the 2014 Terms of Use contains an arbitration agreement and a "broad delegation clause," leaving to the arbitrator any questions concerning the scope of the agreement. (ECF No. 23 at 3 n.1; ECF No. 24 at 1 n.2.) Quite simply, the only issue before this Court is whether the parties formed an arbitration agreement. While Plaintiff argues that the Defendant has produced insufficient evidence to show that they formed an agreement,

4

there is no triable issue of fact concerning the formation of an arbitration agreement. Accordingly, the Defendant's Motion to Compel Arbitration and Dismiss (ECF No. 21) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* governs the parties' arbitration agreement. The FAA requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2. The FAA explicitly reserves issues of contract formation for trial, "provided that a question of fact as to that issue is properly generated." *Focus Music Entm't, LLC v. Streamify, LLC*, ELH-18-1241, 2018 WL 6423906, at *6 (D. Md. Dec. 5, 2018). To proceed to trial, "an unequivocal denial that the agreement to arbitrate had been made is needed, and some evidence should be produced to substantiate the denial." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001) (citation and internal quotation marks omitted).

Employing a so-called "delegation provision," the parties may agree to arbitrate the "gateway" issue of arbitrability, "essentially allowing the arbitrator to determine his or her own jurisdiction." *Novic v. Credit One Bank, N.A.*, 757 F. App'x 263, 265 (4th Cir. 2019). In such cases, the court may not pass upon the scope or validity of the arbitration agreement. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72, 130 S. Ct. 2772 (2010). Even when questions of arbitrability have been delegated to the arbitrator, however, the court must decide issues concerning contract formation. *Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for

the courts to decide."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, 126 S. Ct. 1204 (2006) (distinguishing between arbitral questions of contract validity and nonarbitral questions of whether a contract was "ever concluded"); *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225 (4th Cir. 2019) ("[T]he district court – rather than the arbitrator – [must] decide whether the parties have formed an agreement to arbitrate.").

Plaintiff has failed to generate a triable issue concerning the formation of an arbitration agreement. According to the Declaration of Wentao Xu, who holds the position of Director of Engineering at Chegg, Lyles created a Chegg.com account on September 30, 2014. (ECF No. 21-6 ¶ 2.) By clicking on the "sign up" button on the Chegg.com website, Lyles agreed to the 2014 Terms of Use on September 30, 2014. (ECF No. 21-6 ¶ 4; ECF No. 24-4.) The 2014 Terms of Use contains an arbitration agreement and a delegation provision. (ECF No. 21-3 at 11.) Lyles does not deny any of this. He neither disputes that he accepted the 2014 Terms of Use nor submits any evidence refuting the formation of a contract.

Lyles nevertheless argues that arbitration may not be compelled because Chegg has failed to produce evidence concerning the manner in which the 2014 Terms of Use and its arbitration provision were communicated to him on the Chegg.com website. Without this evidence, Lyles argues, Chegg has not established that the parties formed an arbitration agreement. Although it takes the position that this evidence is not required, Chegg replied to Plaintiff's arguments by furnishing additional evidence concerning the manner in which the Chegg.com website provided notice of the 2014 Terms of Use to its users.

To resolve questions of contract formation, this Court must apply state contract law. *First Options of Chi, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Maryland, "the law of the jurisdiction where the contract was made [*"lex loci contractus"*] controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 535 A.2d 466, 467 (1988). As this case involves the issue of the formation of the arbitration agreement and because the contract was entered into by the parties in Maryland, Maryland law governs.

Courts applying Maryland law have upheld clickwrap agreements—that is, "agreements that require a customer to affirmatively click a box on the website acknowledging receipt of an assent to the contract terms before he or she is allowed to proceed using the website." *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009); *see also Fusha v. Delta Airlines, Inc.*, RDB-10-2571, 2011 WL 3849657, at *2-4 (D. Md. 2011). Such agreements must "give the user reasonable notice that a click will manifest an assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016)). Federal district courts have generally upheld clickwrap so long as it "reasonably communicate[s]" the existence of the contract terms. *Meyer*, 868 F.3d at 76 (collecting cases).

Applying these principles, the evidence supports Chegg's contention that the parties formed an arbitration agreement. Chegg has produced a copy of the Chegg.com sign-up page appearing on September 30, 2014, which presented a large button inviting users to "Sign up" by providing an email address and creating a password. (ECF No. 24-2.) Below the "Sign up" button, the webpage indicated that "By clicking 'sign up' you agree to the Terms and Privacy Policy." (*Id.*) By hovering over the word "Terms" with their cursors, Chegg customers

were able to review the 2014 Terms of Use.  (ECF No. 24-1 ¶ 4; ECF No. 24-4.)  The Terms of Use contain a clearly visible arbitration agreement.  (ECF No. 21-3 at 2.)  This layout reasonably communicated the terms of the 2014 Terms of Use and clearly indicated that, by signing up for a Chegg account, a user agreed to those terms.  Plaintiff has not presented any evidence supporting a contrary position.  Accordingly, there is no triable issue to be presented concerning the formation of an arbitration agreement, and this case must proceed to arbitration.

The FAA requires the district court to stay judicial proceedings covered by an arbitration agreement.  9 U.S.C. § 3.  Notwithstanding this provision, the United States Court of Appeals for the Fourth Circuit permits dismissal "when all the issues presented in a lawsuit are arbitrable."  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).  By deciding that there is no triable issue concerning the formation of an arbitration agreement, this Court has now decided the only issue presented in the parties' submissions.  As the parties have delegated the issue of arbitrability to an arbitrator, there is nothing further for this Court to decide.  *See Gillam v. Branch Banking & Tr. Co. of Virginia*, 3:17-CV-722, 2018 WL 3744019, at *5 (E.D. Va. Aug. 7, 2018).  Accordingly, this case is DISMISSED WITHOUT PREJUDICE.

For the foregoing reasons, is HEREBY ORDERED this 27th day of April, 2020, that:

1. Defendant's Motion to Compel Arbitration and Dismiss (ECF No. 21) is GRANTED;
2. The parties will proceed to arbitration;
3. This case is DISMISSED WITHOUT PREJUDICE;

4. The Clerk of this Court shall transmit copies of this Order and accompanying Memorandum Opinion to counsel;

5. The Clerk of this Court shall CLOSE this case.

                                                  _____/s/_____

                                                  Richard D. Bennett
                                                  United States District Judge