UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| JABARI LYLES, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: 19-CV-3235-RDB |
| CHEGG, INC., | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLANTIFF JABARI LYLES' OPPOSITION TO DEFENDANT
CHEGG, INC.'S MOTION FOR CLARIFICATION OR MODIFICATION OF THE
COURT'S APRIL 27, 2020 ORDER**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   RELEVANT UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  NONRELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    a.   This Motion for Clarification pertains only to Lyles, and not to the 16,113 other individuals who filed demands for arbitration against Chegg, and all alleged issues related to Lyles' arbitration are to be decided by an arbitrator, not this Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    b.   The amount in dispute related to this Motion for Clarification is not the "jaw-dropping $54,000,000 plus" complained of by Chegg; rather, the amount in dispute is $200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.   LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    a.   None of the issues raised in Chegg's Motion for Clarification are for this Court to decide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        i.    Chegg does not argue that Lyles' purported breach of the implied covenant of good faith and fair dealing had anything to do with the formation of the arbitration agreement, and therefore, Lyles' purported breach is an issue for the arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        ii.   The Delegation Clause specifically and unmistakably covers any issues related to the "breach, termination, enforcement . . . or validity" of the arbitration agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        iii.  Chegg does not assert that Lyles specifically breached the delegation clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        iv.   The Legal Disputes portion of the Terms of Use, which contains the arbitration provision and delegation clause, survived the termination of Lyles' contract, and so Chegg is still under an obligation to arbitrate notwithstanding its purported termination of Lyles' contract . . . . . . . . . 20

        v.    The AAA has the power to determine its own jurisdiction, and has already determined that it has jurisdiction over Mr. Lyles' claims . . . . . . . . . . . 22

        vi.   Even frivolous arbitrations must be decided by an arbitrator . . . . . . . . . 23

i

vii.  In the event the arbitrator finds that Lyles' arbitration is frivolous or was filed for an improper purpose, the arbitrator may award sanctions in favor of Chegg . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

b.  In the event this Court deems it appropriate to rule on the substantive issues raised in Chegg's Motion for Clarification, Chegg has failed to show that Lyles has materially breached the arbitration agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i.  Lyles did not materially breach any provision of the Terms of Use . . . . 27

ii.  No implied covenant of good faith and fair dealing can be imposed on the parties as Chegg suggests due to two express contract provision covering this covenant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

iii.  Because the contract expressly anticipates Chegg being responsible for all filing, administrative, and arbitrator fees, Chegg cannot argue that it did not anticipate being responsible for all such fees in the event that a consumer opted to file an arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

c.  Chegg has not provided this Court any legitimate reason to modify its April 27, 2020 Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ii

## TABLE OF AUTHORITIES

### CASES

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S. Ct. 1740 (2011) . . . . . . . . . . . . . .  14

*AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 106 S. Ct. 1415 (1986) . . 24, 25, 27

*Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.,* 944 F.3d 225 (4th Cir. 2019) . . . . . . . . . . . . . . . . 13

*Brandt v. Lockheed Missiles & Space Co.*, 154 Cal. App. 3d 1124, 201 Cal. Rptr. 746 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 31

*Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S. Ct. 1204 (2006) . . . . . *Passim*

*Commercial Union Assurance Companies* v. *Safeway Stores, Inc*. 26 Cal.3d 912, 164 Cal. Rptr. 709 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Drews Distrib., Inc. v. Silicon Gaming, Inc.,* 245 F.3d 347 (4th Cir. 2001) . . . . . . . . . . . . . .  13

*Focus Music Entm't, LLC v. Streamify, LLC, ELH-18-1241,* 2018 WL 6423906, at *6 (D. Md. Dec. 5, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Gerdlund v. Elec. Dispensers Int'l,* 190 Cal. App. 3d 263, 235 Cal. Rptr. 279 (1987) . . . 29, 31

*Granite Rock Co. v. Int'l Bd. of Teamsters,* 561 U.S. 287 (2010) . . . . . . . . . . . . . . . . . . . .  13

*Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga,* 175 Cal. App. 4th 1306, 96 Cal. Rptr. 3d 813 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524 (2019) . . . . . . . . . .  24, 25, 27

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983) . . . . . . . . . . .  14, 15

*Novic v. Credit One Bank, N.A.,*757 F. App'x 263 (4th Cir. 2019) . . . . . . . . . . . . . . . . .  *Passim*

*Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 130 S. Ct. 2772 (2010) . . . . . . . . . . . . . . *Passim*

*Shapiro v. Wells Fargo Realty Advisors,* 152 Cal. App. 3d 467, 199 Cal. Rptr. 613 (1984) . . 29

*Tollefson v. Roman Catholic Bishop,* 219 Cal. App. 3d 843, 268 Cal. Rptr. 550 (1990) . . . .  29

*United Steelworkers of Am. v. Am. Mfg. Co.,* 363 U.S. 564, 80 S. Ct. 1343, (1960) . . . . . . .  24

### FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Federal Rule of Civil Procedure 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

## **STATUTES**

9 U.S.C. § 1, *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 25

## **OTHER SOURCES**

Restatement (Second) of Contracts § 261 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Plaintiff Jabari Lyles (hereinafter "Plaintiff" or "Lyles"), by and through counsel, Cory L. Zajdel, Esq., Jeffrey C. Toppe, Esq., David M. Trojanowski, Esq., and Z Law, LLC, files this Opposition to Defendant Chegg, Inc.'s (hereinafter "Defendant" or "Chegg") Motion for Clarification or Modification of the Court's April 27, 2020 Order ("Motion for Clarification"). ECF #26.  For the reasons that follow, Chegg's Motion for Clarification must be denied.

## I.      PRELIMINARY STATEMENT

When faced with the prospect of having to defend against a class action lawsuit with forty million (40,000,000) potential class members, Chegg urged this Court to send each and every one of Lyles' causes of action to an arbitrator. That is, in fact, what Chegg's Terms of Use require. It successfully argued that the delegation clause in Chegg's Terms of Use prevented this Court from making any rulings related to the scope of the arbitrable claims or the merits of the action. Chegg made every effort to appear as though it wanted to avoid being in court and instead wanted to be in arbitration. And although Lyles fought to keep his case in court, this Court agreed with Chegg and compelled Lyles and Chegg to arbitrate Lyles' claims. So, Lyles was faced with two options: (1) abandon his claims, or (2) proceed to arbitration. Lyles decided to press on, and he demanded that Chegg arbitrate the claims. That is, after all, what Chegg demanded that he do. But now that Lyles has chosen this course of action, Chegg has swiftly and inexplicably reversed course. And now Chegg has filed the instant Motion for Clarification in an attempt to bring this case *back* in front of this Court. But Chegg has either developed amnesia, or is trying to "unspeak" every single word it said to this Court when it urged this Court to send Lyles to arbitration. This hypocrisy is astounding and shocks the conscience.

Now, instead of arguing that an arbitrator must decide whether Chegg breached the covenant of good faith and fair dealing (*see* Count Three of Plaintiff's Complaint, ECF #8), Chegg

1

is arguing that *this Court* must determine if *Lyles* breached that covenant. Instead of arguing that an arbitrator must determine if Chegg breached its contract (Count One of Plaintiff's Complaint, *id.*), Chegg is arguing that *this Court* must determine if *Lyles* breached the contract. Instead of arguing that this Court's only role is to determine if Lyles and Chegg entered into a valid agreement to arbitrate, Chegg is arguing that this Court's role is to *prevent Lyles from arbitrating*. This is all truly stranger than fiction.

As we are all finding out, Chegg never had any intention of arbitrating Lyles' dispute, despite telling this Court that it had every intention of arbitrating his dispute. And so now Chegg is in the rare (and indeed awkward) position of having to completely backtrack on every single argument it already made in favor of arbitration, because now it believes that arbitration is not favorable to Chegg. This Motion for Clarification is nothing but a gross and despicable attempt to continue to deprive Lyles of his chance at obtaining a remedy for Chegg's failure to protect his private data. The Court must not give Chegg the Court's blessing in this regard.

Unfortunately for Chegg, Lyles did not vanish into thin air after this Court ordered both Lyles and Chegg to arbitrate Lyles' claims. His claims still exist, and his disputes are still arbitrable under the inarguably clear terms of the Order compelling Lyles and Chegg to arbitrate. Lyles must arbitrate his dispute, and so must Chegg—that is what this Court required, at Chegg's insistence, months ago. Chegg requests that the Court clarify what it meant when it Ordered that "[t]he parties will proceed to arbitration[.]" ECF #25, at pg. 9. There is nothing in this sentence to clarify and there is no basis for this Court to modify its Order, and the Motion for Clarification must be denied.

## II.   <u>RELEVANT UNDISPUTED FACTS</u>

Lyles created an account with Chegg on September 30, 2014. ECF #21-1, Memorandum in Support of Motion to Compel Arbitration, pg. 3. On that date, Lyles agreed to Chegg's Terms

of Use in effect at that time. *See id.* (citing Xu Decl. ¶ 4). Sometime after Lyles agreed to Chegg's Term of Use, on April 28, 2018, Chegg suffered a data breach, and as a result, Lyles' (and 40 million other users') personally identifiable information ("PII") was stolen from Chegg's possession. ECF #23, Opposition to Motion to Compel Arbitration, pg. 1-2; *see also* ECF #26-1, at pg. 1. Lyles' PII was later sold to thieves and made generally available for purchase on the dark web. ECF #23, at pg. 2. Thereafter, Lyles filed a class action lawsuit against Chegg in order to seek compensation for Chegg's failure to protect his PII. Lyles' original chosen forum was the Circuit Court of Maryland for Baltimore City. *See* ECF #8, Class Action Complaint. Lyles alleged in the Complaint, *inter alia*, a breach of implied contract (Count One), and a breach of the implied covenant of good faith and fair dealing (Count Three).[1] ECF #8. Chegg was unwilling to litigate the class action in state court, and so Chegg removed the complaint to this Court ("Removal"). ECF #1, Notice of Removal. As part of its Removal to this Court, Chegg requested that this Court allow three out-of-state attorneys to appear before this Court. ECF #5, #6, and #7. By removing the case to federal court, and by having three out-of-state attorneys enter their appearance through *pro hac vice* motions, Chegg paid a total of $700 to avoid having the case heard in state court.[2]

After removing the case to federal court, Chegg demanded that Lyles arbitrate each and every one of the claims made in his Complaint. ECF #21, Motion to Compel Arbitration. In support of its Motion to Compel Arbitration, Chegg asserted that Lyles and Chegg agreed to be bound by the Terms of Use, that the Terms of Use contained an arbitration provision, and that any disputes—

---

[1] The relevance of this fact is discussed in Section V.a.i *infra.* In brief, Chegg has argued that Lyles breached the implied obligation of good faith and fair dealing by filing his demand for arbitration. Chegg already told this Court, however, that a dispute regarding a breach of that obligation must be presided over by an arbitrator, not this Court.

[2] The relevance of this fact is discussed in Section V.c *infra.* In brief, this fact refutes the notion that Chegg is aggrieved by having to pay an additional $200 to arbitrate.

including the arbitrability of Lyles' disputes—were subject to arbitration by virtue of the existence of the arbitration provision that required arbitration of all disputes. ECF #22-1, Memorandum in Support of Motion to Compel Arbitration. Chegg argued that the only role this Court served in deciding the fate of the case was to determine whether or not Lyles and Chegg mutually agreed to be bound by the Term of Use, and if so, then each and every one of Lyles' disputes was required to be decided by an arbitrator, not the Court. *Id.* In support of this position, Chegg argued that the arbitration provision delegated all decision-making authority related to the "Terms of Use or the breach, termination, enforcement, interpretation or validity thereof" to an arbitrator. *Id.* at pg. 12. Chegg also argued that, to the extent the Court found that the delegation clause did not prevent the Court from determining what claims were arbitrable, Lyles' claim for breach of the implied covenant of good faith and fair dealing was clearly within the scope of the arbitration agreement. *Id.* at pg. 16-21. In other words, Chegg made itself clear that, in addition to not wanting to be in state court, it also did not want to be in federal court.

Lyles did not disagree with many of Chegg's arguments. He agreed that there was a broad delegation clause. ECF #23, at pg. 3, fn. 1 ("Lyles agrees with Chegg that due to the inclusion of the broad delegation clause in the purported arbitration agreement, the only issues appropriate to resolve in this forum are issues related to the *formation* of a contract containing an arbitration clause.") (emphasis in original). He agreed that the contract, if valid, required arbitration. *Id.* In fact, Lyles' only challenge to arbitration was that he never agreed to the Terms of Use, and therefore was not required to arbitrate under its terms. ECF #23. The reason for his challenge, that he never agreed to be bound by the Terms of Use, was that Chegg did not properly disclose to him the existence of the Terms of Use at the time of contract formation. *Id.*

4

The Court agreed with the parties that the broad delegation clause in the arbitration agreement left only one issue for the Court: Did the parties form a valid agreement to arbitrate? ECF #25, Order Compelling Arbitration ("Quite simply, the only issue before this Court is whether the parties formed an arbitration agreement."). The Court found that a valid agreement did, in fact, exist, and compelled Lyles to arbitrate his claims. *Id.* at pg. 7. The Court stopped short of making any findings other than the finding that a valid and enforceable agreement to arbitrate existed between the parties. *Id.* As the Court recognized, its duty was done, having ordered arbitration. *Id.* at pg. 8 ("As the parties have delegated the issue of arbitrability to an arbitrator, there is nothing further for this Court to decide."). Accordingly, the Court dismissed Lyles' Complaint, without prejudice, and ordered the parties to arbitrate. *Id.*

In light of the Court's Order compelling him to arbitrate, Lyles filed a demand for arbitration against Chegg on July 1, 2020. ECF #26-10, Lyles' Demand for Arbitration. Lyles demanded $25,000 in damages for Chegg's failure to protect his PII, which included a demand for punitive damages. ECF #26-10. Lyles filed the demand for arbitration with the American Arbitration Association ("AAA"), which is the arbitral authority specifically selected in the Terms of Use. Lyles, also in accordance with the Terms of Use, provided Chegg with notice of his filing. ECF #26-16, Cover Letter Accompanying Lyles' Demand for Arbitration. In accordance with the Terms of Use, Lyles did not submit any form of payment along with his arbitration, as the Terms of Use specify that Chegg will bear all costs and filing fees associated with the arbitration. ECF #26-6.

The AAA acknowledged receipt of Lyles' filing on July 14, 2020, and informed Chegg that it had made the preliminary determination that the Consumer Rules applied to Lyles' dispute, and that a review of the Terms of Use confirmed that Chegg was responsible for the $500 initial

filing fee ($300 for the business filing fee, and $200 for the consumer filing fee). ECF #26-14, AAA Acknowledgement Letter. Chegg, apparently displeased that Lyles had chosen to vindicate his rights in the AAA, informed the AAA that it would never be under any obligation to pay those filing fees associated with Lyles' arbitration, and refused to pay the fees. ECF #26-12, Letter from Douglas Meal to AAA. Next, Chegg terminated Lyles' user account and terminated its relationship with Lyles. ECF #26-11, Douglas Meal Termination Letter. As a justification for this drastic and unprecedented action, Chegg asserted that Lyles breached the Terms of Use by demanding $25,000 in his demand for arbitration. *Id*. Chegg now asserts that there could never be any set of circumstances where Lyles would be entitled to collect $25,000 from Chegg as a result of the data breach.

Chegg presented this argument to the AAA, in a transparent attempt to avoid responsibility for paying the filing fees described above. However, after considering this argument, the AAA determined that Chegg was responsible for the filing fees, regardless of whether or not Lyles breached the Terms of Use. Declaration of Cory L. Zajdel (attached hereto); Exhibit 1 to Declaration of Cory L. Zajdel. Accordingly, the AAA issued a final invoice to Chegg, requiring it to pay all filing fees associated with Lyles' demand for arbitration. *Id*. Chegg flatly refused to pay by the deadline set forth by the AAA.

Now Chegg has brought this case back before this Court, asserting that, in addition to not wanting to be in state court, and not wanting to be in federal court, it now does not want to be in arbitration. All this despite Chegg having already told this Court that it did not want to be in court. And in fact, as part of its Motion for Clarification, Chegg tells this Court that it does not want to be in the Federal District Court either, but rather, it wants to be in small claims court. As set forth

6

herein, this continuing course of bad faith refusal to provide Lyles with a forum in which to resolve

his dispute must end, and this Court must deny Chegg's Motion for Clarification.

## III. NONRELEVANT FACTS

### a. This Motion for Clarification pertains only to Lyles, and not to the 16,113 other individuals who filed demands for arbitrations against Chegg, and all alleged issues related to Lyles' arbitrations are to be decided by an arbitrator, not this Court.[3]

The Motion for Clarification concerns only Lyles' dispute with Chegg, as none of the other

individuals referenced in Chegg's Motion for Clarification are (or have been) before this Court.

This Court's broad reach does not extend past Lyles in this case. Despite Chegg's insistence to the

contrary, the case does not concern any of the 16,113 other individuals who filed arbitrations

against Chegg.[4] It does not have to do with the filing fees owed by Chegg as a result of those filings

by other claimants.[5] It does not have to do with whether or not those claims are frivolous or were

---

[3] In the event this Court wishes to make factual findings related to any claimant other than Lyles, undersigned counsel respectfully requests that this Court grant the undersigned the opportunity to conduct discovery related to the factual assertions set forth in Chegg's Motion for Clarification. Lyles has no personal information related to many of the factual assertions made by Chegg through Declaration and other exhibits, and this Court should not determine issues of fact related to this Motion for Clarification until Lyles is provided an opportunity to appropriately challenge these factual representations. Declaration of Jabari Lyles (attached hereto); Exhibit 2 to Declaration of Cory L. Zajdel. Lyles will file a separate Motion to Take Discovery.

[4] This Court has no jurisdiction to make any legal or factual findings related to any arbitration claimant other than Lyles. To the extent Chegg is requesting this Court to make findings of fact or law affecting the legal rights of individuals over whom this Court has not acquired personal jurisdiction (*see* FED. R. CIV. P. 4), such a request is plainly improper. This is especially so considering that none of the referenced individuals are party to this lawsuit, have not been served with process, and are therefore not subject to the reach and authority of this Court.

[5] For instance, Chegg asserts that Lyles "summarily and without explanation rejected Chegg's suggestion" that he withdrawal his demand for arbitration, and file one single demand including all 16,114 claimants in order to make it less cost prohibitive for Chegg. ECF #26-1, at pg. 2. The implications of Lyles' failure to withdrawal and refile his demand for arbitration are not for this Court to consider, as discussed herein. Moreover, Lyles does not have the power to force

filed for an improper purpose, or whether those claims were properly filed and/or served on Chegg.[6] And it certainly does not have to do with an extortion scheme,[7] as suggested by Chegg. ECF #26-1, pg. 32. Rather, the case pending before this Court has only to do with the arbitration Lyles filed against Chegg. In fact, the only real question this Court has the authority to entertain is, even assuming Lyles filed a frivolous arbitration or breached Chegg's Terms of Use by filing his arbitration, what is this Court empowered to do at this time? The answer, as Chegg has already explained, is that this Court may not do anything, as questions regarding the quality or nature of

---

each of the other claimants to proceed on a consolidated basis. Having been kicked out of Court and his class action dismissed, Lyles only proceeds in arbitration on behalf of himself.

[6] For instance, Chegg complains that the boxes sent by undersigned to Chegg, which contained the various demands for arbitration, were missing twenty-nine demands for arbitration, and so Chegg has no way of knowing who the twenty-nine unidentified claimants are, since undersigned "refuse[d] to share with Chegg either the electronic version of the claims or its spreadsheet of claimants that it shared with the AAA . . . ." ECF #26-1, at pg. 10. However, since the time of the filing of the instant Motion for Clarification, undersigned has shared a copy of the electronic spreadsheet, which identifies in detail each of the claimants who filed arbitrations against Chegg. Exhibit 2 to Declaration of Cory L. Zajdel. Therefore, Chegg now has all the information it needs to determine who was and/or was not properly served according to Chegg. It has all the information it needs to verify whether or not a particular claimant agreed to the Terms of Use. It has all the information it needs to assess the validity of each and every claim filed by each and every claimant. To the extent this Court finds it appropriate to determine whether the various demands for arbitration were properly filed and/or served, Lyles requests the opportunity to conduct limited discovery related to this issue.

[7] Chegg has failed to provide the Court with any evidence that either Lyles, any of the 16,113 claimants, or undersigned counsel have attempted to extort anything at any time from Chegg. Extortion is the act of obtaining money or other property by intimidation, threat or violence. But when Chegg is eventually forced to pay the filing fees for Lyles and the 16,113 claimants, Lyles and the 16,113 claimants will receive nothing from that payment—that payment will be delivered to the arbitration association for costs related to arbitration. In fact, neither Lyles nor any of the 16,113 claimants have even suggested that they would be interested in resolving the matter shy of completing the arbitration process. So, Lyles and the 16,113 claimants stand to gain nothing from this purported extortion scheme and have neither requested nor demanded anything from Chegg other than the contractually guaranteed right to arbitrate.

Lyles' arbitration (*i.e.* whether it is frivolous or was filed for an improper purpose) are expressly and inarguably reserved for the arbitrator.

    b. **The amount in dispute related to this Motion for Clarification is not the "jaw-dropping $54,000,000 plus" complained of by Chegg; rather, the amount in dispute is $200.**

To put this Motion for Clarification into context, the Court should be aware of what is actually at stake here. Chegg's Terms of Use and the American Arbitration Association's ("AAA") Consumer Rules, which the Terms of Use elect as the governing set of arbitral rules, both require that to initiate an arbitration, the AAA must receive five hundred dollars ($500.00). The AAA's Consumer Rules require the consumer to pay two hundred dollars ($200.00) and the business pay the remaining three hundred dollars ($300.00), unless the agreement between the parties states that the business will pay more. The AAA Rules limit the consumer's responsibility for payment of fees to a maximum of $200 for the entire arbitration process. Per the AAA Rules, these two fees (the business fee and the consumer fee) are due *regardless* of whether the arbitration is frivolous or filed for an improper purpose.[8] Per Chegg's Term of Use, Chegg voluntarily undertook the responsibility of paying both of these fees, unless an arbitrator determines that the arbitration was frivolous or was filed for an improper purpose. (*See* ECF #26-6, pg. 12) ("Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Chegg will pay all such fees *unless the arbitrator finds* that either the substance of your claim or the relief sought in your Demand for

---

[8] Importantly, a determination regarding whether the demand for arbitration is frivolous or was filed for an improper purpose can only be made by an arbitrator, *after* the arbitration has been properly filed. ECF #26-6, pg. 12 (". . . unless *the arbitrator finds* that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose . . . .") (emphasis added). Per the AAA Rules, an arbitration is not deemed "properly filed" until the filing fees have been paid. AAA's Consumer Arbitration Rules, Rule R-2(a), Exhibit 3 to Declaration of Cory L. Zajdel.

Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).") (emphasis added). As stated, the AAA Rules specify that a consumer's responsibility is limited to a maximum of $200. Therefore, under the Terms of Use drafted by Chegg, the only remedy available in the event that an arbitrator determines that a claimant filed a frivolous arbitration is that the consumer must repay Chegg $200. So, in the event that an arbitrator finds that Lyles' arbitration was frivolous or filed for an improper purpose, the arbitrator may award Chegg $200, in order to compensate it for the filing fees that it paid on behalf of Lyles (which is something it explicitly agreed to do in the Terms of Use that it drafted). In other words, **all that is at stake is $200**.[9] Regardless of the outcome of the arbitration, and regardless of whether or not Lyles' arbitration is deemed to be frivolous or filed for an improper purpose, Chegg will still be required to pay all of the remaining mandatory AAA filing fees. The best-case scenario for Chegg is that, if the arbitrator finds that Lyles' arbitration is frivolous, Lyles might be responsible for repaying Chegg $200.

But none of this actually concerns the Court. As discussed below, the questions of whether Lyles' arbitration is frivolous or was filed for an improper purpose, whether Lyles breached the Terms of Use, and whether the Legal Disputes section is still enforceable, are all explicitly reserved to an arbitrator. *See id.,* (". . . unless the *arbitrator* finds . . .") (emphasis added). Therefore, the

---

[9] Chegg argues that Lyles' "objective in pursuing this arbitration approach was and is not to have [his] claims arbitrated on the merits, but rather to make [his] claims so prohibitively expensive to arbitrate that Chegg simply could not afford to do so." ECF #26-1, at pg. 2. This is categorically false. Lyles' attempts to obtain compensation for Chegg's misconduct has now been thwarted by Chegg no fewer than three times: First in state court, then in federal court, and now in arbitration. Furthermore, to the extent that arbitration is expensive for Chegg, that is not Lyles' doing—it is Chegg's doing, for having selected an arbitral authority with a fee structure that Chegg feels is unfair. If Chegg did not want to have to pay those fees, the solution would have been to select a different arbitral authority, or to not elect arbitration at all. Alas, Chegg *did* make the decision to select the AAA, and so now that Lyles has chosen to resolve his dispute in that forum, Chegg is not free to complain about the consequences of the choices that it made.

Court should deny Chegg's Motion for Clarification, and direct Chegg to proceed to arbitration pursuant to this Court's April 27, 2020 Order, so that Chegg may raise these issues to an arbitrator after the initial filing fees are paid.

## IV.   LEGAL STANDARD

Consider the reality of the substance of Chegg's instant Motion for Clarification: it is not actually a Motion for Clarification or Modification of the Order Compelling Arbitration; it is an opposition to the Motion to Compel Arbitration *that it filed* back in December 2019. Chegg has, in practice, filed an opposition to its own Motion to Compel Arbitration, disguised as a motion seeking clarification of this Court's clear Order Compelling Arbitration. The Court must be dubious, if not incredulous. From one side of its mouth, Chegg is telling this Court that Lyles must arbitrate his disputes with Chegg; but from the other side, it is telling this Court that Chegg is not required to arbitrate *its dispute* with Lyles. Both cannot be true. This Court, in fact, has already determined that the disputes set forth in Lyles' Class Action Complaint were all arbitrable, so why should it be any different for Chegg's disputes with Lyles? The answer is that it cannot be, and is not, any different. This Motion for Clarification is more properly considered a motion to reconsider a prior order of this Court—despite the fact that the party asking for reconsideration is the party who asked for the order in the first place.

The Court previously ruled, in line with the legal arguments presented by the parties, that due to the broad delegation clause Chegg included in its arbitration agreement, the only issue the Court needed to determine was whether Lyles and Chegg "formed" an arbitration agreement. All other issues related to the scope and validity of the arbitration agreement were reserved to the arbitrator under the broad delegation clause. *See* ECF #21-1, Memorandum in Support of Motion to Compel Arbitration ("[I]f the court agrees that the parties formed an agreement to arbitrate that

includes a delegation clause, the court 'must enforce [the delegation provision] under §§ 3 and 4 [of the FAA],' leaving to the arbitrator any challenges to the scope of the arbitration agreement or the validity of other clauses in the agreement."); ECF #23, Opposition to Motion to Compel Arbitration ("Lyles agrees with Chegg that due to the inclusion of the broad delegation clause in the purported arbitration agreement, the only issues appropriate to resolve in this forum are issues related to the *formation* of a contract containing an arbitration clause.") (emphasis in original); ECF #25, Order Compelling Arbitration ("Employing a so-called 'delegation provision,' the parties may agree to arbitrate the 'gateway' issue of arbitrability, 'essentially allowing the arbitrator to determine his or her own jurisdiction.'") (citing *Novic v. Credit One Bank, N.A.*,757 F. App'x 263, 265 (4th Cir. 2019)). And just as Lyles is bound to the arguments he made in his Opposition, Chegg is bound to the arguments that it made in its Motion to Compel Arbitration. And likewise, both parties are bound by this Court's Order Compelling Arbitration. Perhaps most importantly, none of the United States Supreme Court opinions requiring arbitration in cases like this, where there is a valid arbitration provision, have been reconsidered by the Supreme Court in the time since this Court ordered arbitration.

Nonetheless, Chegg now takes the indefensible position (and indeed diametrically opposite position than it itself has already taken) that this Court—despite already finding that all disputes are arbitrable, and despite the existence of dozens of Supreme Court cases indicating the contrary—must decide whether Chegg is required to arbitrate Lyles' claims, despite the fact that this Court has already found the existence of a valid and enforceable arbitration provision. All that is to say that this Court must view the instant Motion for Clarification as a motion (and opposition) to compel arbitration all filed by the same party, not as a motion to clarify or modify.

12

This Court has already spoken on the legal standard with respect to a motion to compel

arbitration where the arbitration agreement contains a broad delegation clause:

> The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* governs the parties' arbitration agreement. The FAA requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2. The FAA explicitly reserves issues of contract formation for trial, "provided that a question of fact as to that issue is properly generated." *Focus Music Entm't, LLC v. Streamify, LLC,* ELH-18-1241, 2018 WL 6423906, at *6 (D. Md. Dec. 5, 2018). To proceed to trial, "an unequivocal denial that the agreement to arbitrate had been made is needed, and some evidence should be produced to substantiate the denial." *Drews Distrib., Inc. v. Silicon Gaming, Inc.,* 245 F.3d 347, 352 n.3 (4th Cir. 2001) (citation and internal quotation marks omitted).
>
> Employing a so-called "delegation provision," the parties may agree to arbitrate the "gateway" issue of arbitrability, "essentially allowing the arbitrator to determine his or her own jurisdiction." *Novic v. Credit One Bank, N.A.,* 757 F. App'x 263, 265 (4th Cir. 2019). In such cases, the court may not pass upon the scope or validity of the arbitration agreement. *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 72, 130 S. Ct. 2772 (2010). Even when questions of arbitrability have been delegated to the arbitrator, however, the court must decide issues concerning contract formation. *Granite Rock Co. v. Int'l Bd. of Teamsters,* 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for the courts to decide."); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 n.1, 126 S. Ct. 1204 (2006) (distinguishing between arbitral questions of contract validity and nonarbitral questions of whether a contract was "ever concluded"); *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.,* 944 F.3d 225 (4th Cir. 2019) ("[T]he district court—rather than the arbitrator—[must] decide whether the parties have formed an agreement to arbitrate.").

ECF #25.

Therefore, before the Court reaches any of the substantive issues with respect to Chegg's

Motion for Clarification, the Court must first determine that the legal issues Chegg placed before

13

the Court in its Motion for Clarification relate to the formation of the Terms of Use. If the issues do not relate to formation, then the Motion for Clarification must be summarily denied leaving the issues presented in Chegg's Motion for Clarification for the arbitrator to determine. This is precisely the argument Chegg advanced in its quest to remove Lyles from this court originally.

In order for this Court to accept Chegg's position, the Court must be convinced that Lyles' purported breach of the implied covenant of good faith and fair dealing (which purportedly took place after this Court ordered the parties to arbitration) somehow relates to the formation of the arbitration agreement (an impossible task). Even if the Court were somehow to determine that such a breach relates to the formation of the agreement, the Court would still have to find: (1) that the Terms of Use do not contain a broad delegation clause (untrue); (2) that the delegation clause does not include issues related to the breach of the Terms of Use (untrue); (3) that the delegation clause is not severable from the Terms of Use (untrue); (4) that the delegation clause does not survive termination of the Terms of Use (untrue); (5) that the arbitration agreement is not severable from the Terms of Use (untrue); (6) that the arbitration agreement does not survive termination of the Terms of Use (untrue); and (7) that the AAA's determination that it had jurisdiction over the arbitration was incorrect (untrue).

Of course, this is simply a demonstration of why Chegg's request is truly absurd. Obviously, all of these determinations must follow the United States Supreme Court's directive that favor arbitration. *See, e.g., Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 130 S. Ct. 2772, (2010); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 131 S. Ct. 1740 (2011). As this Court is undoubtedly aware, the Supreme Court's cases have repeatedly described the Federal Arbitration Act as "embod[ying] [a] national policy favoring arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207 (2006), and "a liberal federal policy

14

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). This Court, like Chegg, is bound by the decisions and directives of the Supreme Court. Therefore, this Court must not allow Chegg to entirely reverse course, as such an allowance would be contrary to every single decision passed down by the United States Supreme Court.

## V.   ARGUMENT

### a.   None of the issues raised in Chegg's Motion for Clarification are for this Court to decide.

#### i.   Chegg does not argue that Lyles' purported breach of the implied covenant of good faith and fair dealing had anything to do with the formation of the arbitration agreement, and therefore, Lyles' purported breach is an issue for the arbitrator.

The Fourth Circuit Court of Appeals has stated, in unmistakable terms, that when a contract contains an arbitration agreement, and the parties delegate the gateway issues of arbitrability to an arbitrator, then "courts will not intervene in interpreting the parties' agreement," absent "a challenge to the validity of such delegation[.]" *Novic v. Credit One Bank*, 757 F. App'x 263, 266 (4th Cir. 2019) (citing *Rent-A-Center*, 561 U.S. at 70-71). The Fourth Circuit determined, in *Novic*, that "a party's challenge to a different contract provision, or to the contract as a whole, will not prevent a court from submitting to the arbitrator the question of arbitrability." *Id.* In that case, similar to this case, the plaintiff "fail[ed] to advance any argument directly challenging the validity of the delegation clause . . . ." *Id.* at 265. The Court determined, therefore, that "[the plaintiff's] arguments [were] irrelevant to a determination of the validity of the arbitration provision and its delegation clause, which are severable from the remainder of the contract." *Id.* The conclusions the Court reached in *Novic* were no different from the conclusions reached by the Supreme Court in *Rent-A-Center*. In *Rent-A-Center*, the Supreme Court explicitly stated that, when a party to an

15

arbitration agreement fails to challenge a provision plainly delegating issues of arbitrability to an arbitrator, courts "must enforce [the agreement] under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Rent-A-Center,* 561 U.S. at 72.

Here, Chegg advances the argument that Lyles breached the implied obligation of good faith and fair dealing, and thus breached the remainder of the contract (including the arbitration provision and delegation clause). This is not an issue of whether the arbitration provision was validly formed (*i.e.* whether the parties created an enforceable contract). It is not an issue of whether the delegation clause was validly formed. In fact, Chegg has already told this Court, and this Court has found, that both provisions were validly formed. ECF #21; ECF #25. Specifically, and perhaps most ironically, this Court has already found that Lyles and Chegg formed a valid arbitration agreement and that Lyles' causes of action for breach of implied contract (Count One) and breach of the implied obligation of good faith and fair dealing (Count Three) were arbitrable. ECF #25. It is no different now that *Chegg* is on the offensive making these identical claims against Lyles.

The issues raised in the Motion for Clarification have nothing to do with whether or not Lyles and Chegg entered into a valid arbitration agreement and delegation clause.[10] Rather, Chegg asserts only that, due to a purported breach of the implied covenant of good faith and fair dealing, the validly formed arbitration agreement and delegation clause are no longer enforceable. As *Novic* tells us, Chegg is free to make that argument, but must make that argument to an arbitrator. In the parlance used by the *Novic* Court, Chegg's arguments are "irrelevant to a determination of the

---

[10] It would be patently absurd for Chegg to argue that Lyles breached the arbitration agreement or delegation clause by filing an arbitration as required by the arbitration agreement.

16

validity of the arbitration provision and its delegation clause, which are severable from the remainder of the contract." *Novic,* 757 F. App'x at 265 (holding that it was for the arbitrator to determine if a party waived its right to arbitration at some point after the formation of the arbitration agreement making the arbitration agreement unenforceable where the contract contained a delegation clause). For that reason alone, this Court's review of Chegg's Motion for Clarification must end here, and the Motion for Clarification must be denied.

ii. **<u>The Delegation Clause specifically and unmistakably covers any issues related to the "breach, termination, enforcement . . . or validity" of the arbitration agreement</u>**.

The delegation clause contained in the arbitration agreement states that "You and Chegg agree that any dispute, claim or controversy arising out of or relating to these Terms of Use or the *breach, termination*, *enforcement*, interpretation or *validity* thereof . . . will be settled by binding arbitration . . . ." ECF #21-3 (emphasis added). Just as in *Novic* and *Rent-A-Center*, this language is a "clear and unmistakable" agreement "that an arbitrator will decide which disputes the parties have agreed to arbitrate." *Novic,* 757 Fed. App'x. at 265 (citing *Carson v. Giant Food, Inc.,* 175 F.3d 325 (4th Cir. 1999)). The provision in dispute in *Novic* stated that: "Claims subject to arbitration include, but are not limited to, disputes relating to . . . the *application, enforceability or interpretation* of this Agreement, including this *arbitration provision*." *Id.* at 264 (emphasis supplied by the Court). The Court noted that "the language in the delegation clause . . . is similar in crucial respects to the language of the delegation clause at issue in *Rent-A-Center*, [which stated that] '[t]he Arbitrator . . . shall have exclusive authority to resolve any disputes relating to the . . . *enforceability* . . . of this [agreement].'" *Id.* at 266. The clauses at issue in *Novic* and in *Rent-A-Center* are materially identical to the delegation provision at issue here, which again states that "any dispute, claim or controversy arising out of or relating to these Terms of Use or the breach,

termination, enforcement, interpretation or validity thereof . . . will be settled by binding arbitration . . . ." ECF #21-3. Therefore, this Court has no cause to give this delegation clause any special consideration, especially since it is so similar to the delegation clauses in *Novic* and *Rent-A-Center*. Therefore, this Court's analysis with respect to this requirement must be brief, since all parties have already agreed that any alleged breaches of contract, including the breach of the obligation of good faith and fair dealing, must be decided by an arbitrator. *See* ECF #21, ECF #23.

iii.   <u>**Chegg does not assert that Lyles specifically breached the delegation clause.**</u>

Chegg purports to advance the truly confusing argument that Mr. Lyles breached the delegation clause of the arbitration agreement. But it reaches this conclusion not because Lyles actually took specific action in derogation of the delegation clause, but rather because he purportedly breached *other* provisions in the contract. The delegation clause contained in the arbitration agreement states that "You and Chegg agree that any dispute, claim or controversy arising out of or relating to these Terms of Use or the breach, termination, enforcement, interpretation or validity thereof (collectively, "**Disputes**") will be settled by binding arbitration . . . ." ECF #21-3 (emphasis in original). Though it is difficult to understand how one is capable of breaching a delegation clause of an arbitration agreement, here is how Chegg explains the logic: (1) because Lyles demanded $25,000 in his demand for arbitration—an amount to which Lyles could apparently never be entitled—Lyles' demand was frivolous; (2) Lyles' frivolous demand was tantamount to a material breach of the implied obligation of good faith and fair dealing; (3) a material breach of one aspect of a contract generally constitutes a material breach of the whole contract; and (4) therefore, by virtue of his material breach of the implied obligation of good faith and fair dealing, Lyles breached the delegation clause.

18

In other words, Chegg does not take the position that Lyles specifically breached the delegation clause. Rather, in a roundabout way, Chegg argues that Lyles' breach of the obligation of good faith and fair dealing amounted to a breach of the delegation clause, because a material breach of the whole contract is tantamount to a material breach of every other specific provision of the contract. ECF #26-1, at pg. 26. So Chegg's argument is that Lyles breached the Terms of Use, not the delegation clause. This is an obvious attempt to get around the ruling in *Novic*. This challenge, as described above, and as required by *Novic* and *Rent-A-Center*, among many other cases, is to be made before an arbitrator.

Furthermore, in order for the Court to reach the conclusion that Chegg is asking the Court to reach, the Court would first have to find that Lyles' demand for arbitration is frivolous (a determination expressly reserved to the arbitrator). *See* AAA Rule R-44(c) (stating that an arbitrator can determine whether an arbitration is frivolous or filed for an improper purpose), Exhibit 3 to Declaration of Cory L. Zajdel. The Court would then have to determine that the frivolous demand for arbitration was tantamount to a breach of the obligation of good faith and fair dealing (also reserved to the arbitrator). Finally, the Court would have to make the legal determination that a breach of the obligation of good faith and fair dealing constitutes a breach of the entire contract, including the delegation clause (also reserved to the arbitrator). If the Court were to make any of these determinations, it would be usurping the entirety of the arbitrator's role. As the Court surely knows, and as Chegg made clear in its Motion to Compel Arbitration, it is required to avoid that outcome.

Perhaps more importantly is that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S. Ct. 1204, 1209, 163 L.Ed.2d 1038, 1044 (2006); *see*

*also Rent-A-Center,* 561 U.S. at 64 ("Because here the agreement to arbitrate enforceability (the delegation provision) is severable from the remainder of the Agreement, unless [the plaintiff] challenged the delegation provision specifically, it must be treated as valid under § 2 and enforced under §§ 3 and 4 [of the FAA]."). So, even if Lyles breached the obligation of good faith and fair dealing by demanding $25,000 in his arbitration, both the arbitration clause and delegation clause are severable from the contract as a whole, and any alleged breach of those provisions must be specific to those provisions—a breach of contract *not* specific to those severable provisions will not extend to them. *See, e.g., id.* Therefore, even if Lyles breached the obligation of good faith and fair dealing, his breach would not extend to the severable portions of the contract.

iv.   **The Legal Disputes portion of the Terms of Use, which contains the arbitration provision and delegation clause, survived the termination of Lyles' contract, and so Chegg is still under an obligation to arbitrate notwithstanding its purported termination of Lyles' contract**.

Lyles filed an arbitration against Chegg, and Chegg's response was to terminate its agreement with Lyles (including terminating his user account). Because Lyles exercised his rights under the Terms of Use, Chegg has chosen to forever bar him from accessing Chegg's services ever again—all because he brought his dispute before the AAA as required by the Terms of Use and by this Court's Order. It is clear why Chegg took this drastic action: It wanted to spawn the argument that it "does not believe . . . the Order [compelling arbitration] requires Chegg to arbitrate Lyles's cyberattack-related claims [because] Chegg is no longer under an enforceable contractual obligation to do so." ECF #26-1, pg. 4. Chegg spells out the exact reasons why it feels that Lyles materially breached the contract, and ultimately concludes that these material breaches entitled Chegg to terminate the Terms of Use. This Court can assume, for the sake of argument, that Lyles materially breached the Terms of Use, and that Chegg did, in fact, validly terminate Lyles'

contract.[11] In Section III.A.c of Chegg's Motion for Clarification, it sets forth the argument that, "Chegg was . . . relieved . . . of any contractual obligation Chegg otherwise might have had to arbitrate Lyles's claims . . . by reason of Lyles's [frivolous] demand." ECF #26-1, pg. 27. This argument touches the edge of bad faith.

*First*, Chegg makes absolutely no mention of the *two* distinct survival clauses in the Terms of Use. The Terms of Use provide that the Legal Disputes section (which contains the arbitration provision and delegation clause) "will survive any termination of these Terms of Use," and "shall survive any expiration or termination of your relationship with Chegg." ECF #26-6, pg. 11-12. So even if Chegg terminated Lyles' contract, and even if Lyles breached the contract by filing a frivolous demand for arbitration, the dispute related to that breach must "be settled by binding arbitration." ECF #26-6, pg. 11. That is, both Chegg and Lyles must still arbitrate every dispute between them per the Terms of Use, regardless of the existence or nonexistence of any other remaining obligations under the Terms of Use, because Lyles' alleged breach of the implied obligation of good faith and fair dealing does not invalidate the arbitration provision or the delegation clause, as both of those provision, by their express terms, survive termination of the Terms of Use.

*Second*, as explained above, Chegg does not directly challenge Lyles' conduct as being violative of either the arbitration provision or the delegation clause. Rather, in a roundabout way, Chegg argues that the nature and quality of Lyles' demand for arbitration is tantamount to a material breach of the obligation of good faith and fair dealing, which, in turn, violates the entire contract, including the arbitration provision and delegation clause. But this argument ignores what

---

[11] Lyles disputes that he materially breached the Terms of Use, as explained in Section V.b, *infra*.

21

the Supreme Court said in *Buckeye*: "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445 ("[W]e conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court."). Therefore, Chegg's challenge to the continued enforceability of the contract must go to the arbitrator, as Chegg does not directly challenge the enforceability of the arbitration provision or the delegation clause.

The determination of whether or not Lyles breached the delegation provision of the Terms of Use will undoubtedly require factual findings. An arbitrator must make those factual findings pursuant to the delegation clause, which survived the termination of the contract. Lyles must be given the opportunity to prove that he is entitled to the damages he seeks. Quite simply, regardless of whether or not Lyles materially breached the contract, the arbitration provision and delegation clause survive, and Chegg must arbitrate Lyles' dispute. For this reason, Chegg's Motion for Clarification must be denied.

> v. **The AAA has the power to determine its own jurisdiction, and has already determined that it has jurisdiction over Mr. Lyles' claims**.

The AAA has already made the administrative determination that Lyles' Demand for Arbitration met all the filing requirements imposed by the Consumer Rules. ECF #26-17 ("The consumers have met our administrative filing requirements on each of the 1,007 cases filed."). The AAA has also made the administrative determination that Chegg must pay $500 to initiate Lyles' arbitration. *Id.* The AAA has already directed Chegg to pay those fees. *Id.* Chegg has indicated that it feels that the AAA's determinations were made in error. ECF #26-1, pg. 17. Chegg is, of course, free to disagree with those determinations. However, what Chegg is not free to do is to

22

bring those disagreements to this Court for resolution. The AAA Rules, which Chegg elected to be governed by, specifically state that if a party objects to a decision of the AAA regarding which rules apply, the sole remedy is that "the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply." AAA Rule R-1(e).[12]

vi. **Even frivolous arbitrations must be decided by an arbitrator**.

Even *assuming arguendo* that Lyles somehow breached the delegation clause by filing a frivolous demand for arbitration, *the determination of whether the delegation clause is therefore invalid or unenforceable is left to the arbitrator.* Chegg was very clear when it drafted its arbitration clause: "You and Chegg agree that any dispute, claim or controversy arising out of or relating to these Terms of Use or the breach, termination, enforcement, interpretation or validity thereof (collectively 'Disputes') will be settled by binding arbitration . . . ." ECF #26-6, pg. 11. So, to the extent that Chegg is advancing the position that Lyles breached the Terms of Use, that dispute falls squarely within the arbitration clause and delegation clause. In fact, as stated above, Count Three of Lyles' original Class Action Complaint alleged that *Chegg* breached the implied covenant of good faith and fair dealing. Chegg told this Court in its Motion to Compel Arbitration that the merits of that cause of action was for an arbitrator to assess. Why now is it different when Chegg is asserting that Lyles breached that obligation of good faith and fair dealing? The answer: it is not different in any way whatsoever.

---

[12] Even still, it is worth noting that the only plausible interpretation of "Chegg will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose" means that Chegg will, in fact, pay all such fees. And so Chegg's disagreement with the AAA's determination on this point is meritless.

To be clear, while these arguments are presented to the Court in an atypical circumstance (*i.e.* a *company* trying to avoid arbitration, rather than a consumer), there is nothing novel about them. In fact, the United States Supreme Court has, on several occasions, addressed whether a party can bypass arbitration where a frivolous demand for arbitration is filed. Notably absent from Chegg's Motion for Clarification is any reference to these cases.

In *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649-50, 106 S. Ct. 1415, 1419, 89 L.Ed.2d 648, 656 (1986), the Supreme Court held that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." The Court noted that this is true "even if [the claim] appears to the court to be frivolous[.]" *Id.* at 650. Ultimately, the Court determined that the courts have "no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.* (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568, 80 S. Ct. 1343, 1347, 4 L.Ed.2d 1403, 1407 (1960)). Here, Chegg is arguing that Lyles' claim is frivolous on its face (which, as explained herein, is a flatly absurd position to take). But *even if* Lyles' claim appears to this Court to be frivolous, the Court must still send the dispute to an arbitrator for resolution. That is, after all, what the parties agreed to.

More recently, a unanimous Supreme Court explained that the Court meant what it said in *AT&T Techs. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526, 202 L.Ed.2d 480, 484 (2019). In *Henry Schein*, the parties disagreed over whether the dispute between them was arbitrable. *Id.* at 528. Archer and White (the plaintiff) sued Schein (the defendant), and Schein compelled Archer and White to arbitrate the dispute. *Id.* Archer and White argued that, where the

24

defendant's argument for arbitration is "wholly groundless," the court may resolve the threshold question of arbitrability. *Id.* The district court agreed with Archer and White, and held that Schein's argument in favor of arbitration was wholly groundless, and determined that the dispute belonged in court. *Id.* The Fifth Circuit affirmed. *Id.* The Supreme Court granted *certiorari*, and Justice Kavanaugh delivered the opinion of the Court. Justice Kavanaugh explained that "when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless." *Id.*

The Court's opinion in *Schein* was underpinned by the text of the Federal Arbitration Act ("FAA"). The Court noted that the FAA requires courts to enforce arbitration contracts according to their terms. *Id.* at 529. The Court went on to explain that, some Courts of Appeals had taken it upon themselves to "block frivolous attempts to transfer disputes from the court system to arbitration." *Id.* However, the Court concluded that no such "wholly groundless" exception existed within the text of the FAA, and that such an exception was inconsistent with the text of the FAA and with the Court's precedent. *Id.* As applied here, *Schein* provides that this Court may not make any rulings regarding any issues that are reserved for the arbitrator. This is important, because in order for this Court to reach the conclusion that Lyles breached the delegation clause (which would be the only possible way that Chegg could avoid arbitration), the Court would first have to determine (1) that Lyles' arbitration demand was frivolous, and (2) the frivolous demand amounted to a breach of the implied covenant of good faith and fair dealing. Only then could this Court determine whether or not Lyles breached the delegation clause. But unfortunately for Chegg, those decisions must be left to the arbitrator. In other words, this Court may not make the determinations necessary to reach the ultimate conclusion of whether or not Lyles breached the delegation clause.

25

This is true even if Lyles' arbitration appears to this Court to be frivolous and/or to have been filed for an improper purpose. *See, e.g., Schein, AT&T Techs*.

The Supreme Court has shown exceptional deference to arbitration agreements in other cases as well. For instance, in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), Justice Scalia, writing for the Court, held that when a party challenges a contract as void *ab initio*, the arbitration clause is still enforceable, and the question of whether the contract is void must be decided by the arbitrator. ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). In other words, even if a contract might be void, the court must still send the dispute to an arbitrator for determination of whether the contract is void. Until that point, the court is to take no part in that determination. *Id.* The result is the same here: An arbitrator must determine whether or not Lyles materially breached the contract, since that determination has been specifically delegated to an arbitrator.

If Chegg wishes to resolve its dispute with Lyles outside of arbitration, then an arbitrator must decide whether or not Lyles' demand for arbitration was frivolous and/or filed for an improper purpose, and whether this would result in the loss of the right to arbitrate. If so, the arbitrator may determine that Chegg has the right to have the dispute decided in court. Until that time, however, Chegg has no right to be in court.

vii. **In the event the arbitrator finds that Lyles' arbitration is frivolous or was filed for an improper purpose, the arbitrator may award sanctions in favor of Chegg**.

If the arbitrator determines that Lyles' arbitration was frivolous, Chegg has a remedy both under the AAA's Consumer Rules and under the Terms of Use. So Chegg is protected. But it is asking this Court to provide that remedy before it could possibly become due. The AAA retains the right to impose monetary sanctions on Lyles, under Consumer Rule 44(c) ("The arbitrator may

26

also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous."). Exhibit 3 to Declaration of Cory L. Zajdel. In other words, the dispute regarding whether Lyles' arbitration is frivolous and/or was filed for an improper purpose is not yet ripe for consideration—either by this Court or by an arbitrator—since Chegg has deprived any arbitrator of the opportunity to evaluate the nature and quality of Lyles' demand. Therefore, Chegg's request is not ripe and this Court has no reason to act before the arbitrator makes a determination concerning whether Lyles' arbitration was frivolous and/or filed for an improper purpose.

b. **In the event this Court deems it appropriate to rule on the substantive issues raised in Chegg's Motion for Clarification, Chegg has failed to show that Lyles has materially breached the arbitration agreement**.

The *foundational premise* for Chegg's claim that Lyles breached the Terms of Use is that he could not ever possibly be entitled to recover $25,000, due, in part, to the limitation of liability provision in the Terms of Use, and due, in part, to the fact that no court has ever recognized such an amount in a data breach case. ECF #26-1, pg. 14-16. In other words, Chegg thinks Lyles demanded too much money. So, if this Court deems it appropriate to address the merits of Chegg's arguments—which it should not—the only question this Court needs to ask is this: Did Lyles materially breach the arbitration agreement by requesting $25,000 in his demand for arbitration?

i. **Lyles did not materially breach any provision of the Terms of Use.**

If Lyles could not possibly be entitled to $25,000—a contention with which Lyles disagrees—then there is no risk of an arbitrator awarding him $25,000. The arbitrator will award Lyles whatever the arbitrator thinks he is due, if anything. Chegg's suggestion that Lyles

27

demanded an inflated amount for the purpose of avoiding small claims jurisdiction, and thus breached the Terms of Use, is not a good faith legal argument.[13] It is an obvious and desperate attempt to get out of a voluntarily assumed obligation that Chegg apparently regrets creating.

*First*, Chegg points out that there is a limitation of liability clause that limits Lyles' damages to $250. Lyles disputes the validity of this provision, and intends to challenge its application in arbitration. The validity and enforceability of this provision must be adjudicated by an arbitrator, not this Court. *Second*, Chegg points out that there is a disclaimer of consequential damages related to data breaches set forth in the Terms of Use. Lyles disputes the validity and enforceability of this provision, and intends to challenge its application in arbitration. Again, this provision must be examined by an arbitrator. Simply put, the issue of whether the amount of damages claimed by Lyles is reasonable or frivolous must be examined by an arbitrator.

Furthermore, Lyles followed the arbitration agreement in the Terms of Use and this Court's Order to the letter. After being compelled to arbitration, Lyles sent a written demand for arbitration to Chegg. ECF #26-6, pg. 11 ("A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules."). Lyles did not submit any filing fees with his demand for arbitration, because Chegg's Terms of Use specify that Chegg will bear those costs. *Id.*, pg. 12 (". . . if your claim for damages does not exceed $75,000, Chegg will pay all such fees . . . ."). Lyles sent his demand to Chegg's general counsel at the address listed in the Terms of Use. Every step of the way, Lyles was in compliance with the Terms of Use. Clearly Lyles did not independently breach the arbitration provision, as he followed the requirements set forth therein. Lyles also did not independently breach the delegation clause, nor does Chegg argue that he directly breached the delegation clause. Therefore, Chegg has failed to

---

[13] Also, that argument must be reserved for the arbitrator. *See Schein, AT&T Techs.*

28

show that Lyles has materially breached the Terms of Use by demanding arbitration. Therefore, the Motion for Clarification must be denied.

> ii. **No implied covenant of good faith and fair dealing can be imposed on the parties as Chegg suggests due to two express contract provision covering this covenant.**

Perhaps the most frustrating aspect of the instant Motion is that it is legally impossible for Chegg to prove that Lyles breached the implied obligation of good faith and fair dealing. As a matter of law, the extent of the obligation of good faith and fair dealing is entirely "dependent upon the nature of the bargain struck between [the parties] and the legitimate expectations of the parties which arise from the contract." *Brandt v. Lockheed Missiles & Space Co.*, 154 Cal. App. 3d 1124, 1129, 201 Cal. Rptr. 746, 749 (1984) (alteration in original) (quoting *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* 26 Cal.3d 912, 918, 164 Cal. Rptr. 709, 610 P.2d 1038) (1980). Indeed, "[n]o obligation can be implied . . . which would result in the obliteration of a right expressly given under a written contract." *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 277, 235 Cal. Rptr. 279, 286 (1987); *Tollefson v. Roman Catholic Bishop*, 219 Cal. App. 3d 843, 854, 268 Cal. Rptr. 550, 556 (1990) (the obligation of good faith and fair dealing "cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract."). "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482, 199 Cal. Rptr. 613, 622 (1984). Stated alternatively, where there is an express provision in a contract allowing or requiring a specific result, a party to the contract cannot complain that the other party, who is in compliance with said provision, is in breach of the *implied* obligation of good faith and fair dealing. This is so because the express

29

agreement sets forth the obligations of the parties, and the consequence for breach of those express obligations.

For example, in *Brandt*, the plaintiffs contributed to an invention that was patented by their employer. Under the terms of the parties' agreement, the employer was permitted, but not required, to award employees for contributing to inventions that later become patented (through a device called a "Special Invention Award"). The plaintiffs claimed an employer's refusal to make a "Special Invention Award" was a breach of the covenant of good faith and fair dealing. The employment contract provided that upon request, "'[T]he Invention Awards Committee . . . will consider whether or not a Special Invention Award shall be made to the inventor-employee . . . . Upon consideration of such request the Committee may, but is not obligated to, grant to the inventor-employee a Special Invention Award . . . . All decisions by the Committee . . . shall be final and conclusive.'" *Brandt,* 154 Cal. App 3d at 1129. The court found that the employer had fully complied with the agreement, and so it could not conclude that "in doing so it violated a duty of good faith and fair dealing." *Id.* at 1130 (internal quotations omitted). The court reasoned that the express provision of the contract precluded the employees from proving a breach of an implied covenant. *Id.*

Here, the agreement between the parties (the Terms of Use) expressly contemplates that frivolous arbitrations might be filed. ECF #26-6, at pg. 12 (". . . Chegg will pay all [filing] fees unless the arbitrator finds that [your demand for arbitration] was frivolous . . . ."). This express provision demonstrates two things: first, the agreement expressly contemplates that frivolous arbitrations will still be heard by an arbitrator; and second, that the sole remedy is that Chegg will not bear any responsibility for the consumer's portion of the filing fee ($200). In other words, there is an express provision covering the consequences for filing and proceeding with a frivolous

30

arbitration: The consequence is that the arbitrator may award Chegg $200 to compensate it for having had to pay the consumer's portion of the filing fee. It does not contemplate either party being able to terminate the contract and avoid arbitration as a consequence. In fact, by the express terms, the determination of whether or not an arbitration is frivolous must, by definition, take place after Chegg has already paid the requisite filing fees.

Furthermore, not only do the express terms of the Terms of Use set forth the consequence of filing a frivolous arbitration, but the AAA Consumer Rules (which are expressly incorporated into the Terms of Use) set forth the consequence for filing and proceeding with a frivolous demand for arbitration. Rule R-44 states that, as part of the arbitral award, "[t]he arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous." Exhibit 3 to Declaration of Cory L. Zajdel.

Stated alternatively, in line with *Brandt* and *Gerdlund*, because the parties expressly contemplated that frivolous arbitrations may be filed, and that there would be a specific, identifiable penalty for filing such arbitrations, Chegg cannot ask this Court (or indeed an arbitrator) to find that Lyles breached an *implied* obligation of good faith and fair dealing. The remedy Chegg is seeking—termination of the obligation to arbitrate—would, by definition, "result in the obliteration of a right expressly given under a written contract," *Gerdlund* 190 Cal. App. 3d at 277, that right being Lyles' right to arbitrate his disputes, frivolous or not. Chegg is asking this Court to substitute Chegg's desired remedy (termination of the obligation to arbitrate) for the express remedy provided for in the contract (repayment of $200). The Court must not do so. For this additional reason, Chegg could not possibly prove that Lyles breached the implied covenant

31

of good faith and fair dealing. Even if it could, it would be an arbitrator's duty to determine and apply the appropriate penalty for filing such an arbitration.

          iii.   **Because the contract expressly anticipates Chegg being responsible for all filing, administrative, and arbitrator fees, Chegg cannot argue that it did not anticipate being responsible for all such fees in the event that a consumer opted to file an arbitration.**

Chegg argues that, even if this Court does not find that Lyles materially breached the Terms of Use, Chegg is nonetheless relieved of its obligation to proceed to arbitration under the doctrines of impracticability and frustration of purpose. ECF #26-1, at pg. 28-29. The Court may quickly dismiss these meritless arguments. The fundamental requirement in an impracticability defense is that the parties must have assumed that the event/condition that renders performance impracticable was not going to occur. Restatement (Second) of Contracts § 261 (1981) ("Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the *non-occurrence of which was a basic assumption on which the contract was made*, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.") (emphasis added). In other words, for Chegg to prevail on a defense of impracticability would require this Court to find that Chegg could not have anticipated being responsible for paying the filing fees associated with Lyles' arbitration. But the Terms of Use belie such an assertion. The Terms of Use *expressly anticipate* that Chegg will bear these costs. ECF #26-1, pg. 6 ("Chegg will pay all [filing, administrative, and arbitrator] fees.").[14] Therefore, Chegg is arguing that it could not have anticipated that Lyles would file an arbitration, even though that

---

[14] Furthermore, the cost of Lyles' arbitration is not nearly sufficient to render performance impracticable. The total amount of fees due for Lyles' entire arbitration would be less than $5,000, an amount that Chegg describes as a "measly" sum. *See* ECF #26-1, at pg. 23 (explaining the cost of one arbitration). Chegg's position that the cost of paying for Lyles's arbitration is a "measly" sum forecloses to it the possibility of prevailing on an impracticability argument, as a matter of law.

32

is what the Terms of Use required and even after this Court compelled Lyles to do so. This Court must assume that Chegg meant what it said when it drafted the language of the Terms of Use. The payment of the fees associated with Lyles' arbitration does not render Chegg's performance impracticable.

Likewise, Chegg's frustration of purpose argument fails for similar reasons. The fundamental requirement for a frustration of purpose defense to prevail is that "the reason the parties entered into the agreement has been frustrated by a supervening circumstance that was not anticipated, such that the value of performance by the party standing on the contract is substantially destroyed." *Habitat Tr. for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1336, 96 Cal. Rptr. 3d 813, 843 (2009). Chegg offers only two sentences in support of its position that the purpose of the contract was frustrated: "Here, as explained above, the basic reason for entering into an agreement to arbitrate was to provide a cost-effective dispute resolution mechanism. That purpose was destroyed by Lyles and his fellow claimants' orchestration of the mass aggregation of frivolous arbitration demands brought for an improper purpose." ECF #26-1, pg. 29. First, responding to Chegg's asserted reason for entering into the agreement: There is no covenant in the Terms of Use that provide Chegg with the right to a cost-effective method of dispute resolution. On the contrary, the only covenant in the Terms of Use related to the cost-effectiveness of arbitration guarantees *the consumer* the right to a cost-effective method of dispute resolution. ECF #26-6, pg. 11 ("If a dispute arises between you and Chegg, our goal is *to provide you* with a neutral and cost-effective means of resolving the dispute quickly.") (emphasis added). As the Court can see, Lyles agreed to offer no reciprocal benefit. The AAA decided that Lyles was not responsible for any portion of the arbitration filing fees, so Lyles is receiving the benefit of that covenant (he is receiving a cost-effective method of dispute resolution). Second, and perhaps

33

more to the point, just as with its impracticability argument, Chegg cannot argue that being required to pay for all arbitration fees "was not anticipated." *Cucamonga*, 175 Cal. App. 4th at 1336. Again, it was expressly anticipated in the Terms of Use that Chegg drafted. For this reason, Chegg's frustration of purpose argument must fail.

### c. **Chegg has not provided this Court any legitimate reason to modify its April 27, 2020 Order**.

As a last-ditch effort, Chegg asks this Court to modify its April 27, 2020 Order. ECF #26-1, at pg. 30-33. Chegg's position is premised on the supposition that it has a meritorious argument, as required by the standard set forth in Federal Rule of Civil Procedure 60(b). It also supposes that modification of the Order would not operate to prejudice Lyles. It also contends that exceptional circumstances justify modification of the Order. Each of these assumptions is incorrect.

*First,* Chegg's position lacks merit. As described throughout this Opposition, Chegg's position that Lyles has materially breached the Terms of Use is patently meritless. The foundation of Chegg's position is that Lyles materially breached the Terms of Use by filing a demand for arbitration in the amount of $25,000. This, argues Chegg, entitles it to relief under Federal Rule 60(b). As explained in detail above, however, the question of whether Lyles' arbitration is frivolous and/or was filed for an improper purpose is to be decided by an arbitrator. Furthermore, as explained in detail above, Lyles' demand for arbitration was neither frivolous nor filed for an improper purpose. Lyles is entitled to seek damages in any amount he feels in good faith he is entitled to. Notably, Lyles has demanded punitive damages. Therefore, a $25,000 recovery is not unreasonable, and certainly not frivolous. Therefore, Chegg does not have a meritorious position as required by Federal Rule 60(b).

*Second,* Modification of this Court's Order would operate to prejudice Lyles, thus precluding relief under Federal Rule 60(b). Chegg argues that, if this Court modifies its Order,

34

"Lyles will [] be able to proceed to present his claim in court – Lyles's originally preferred venue." ECF #26-1 pg. 31. Therefore, concludes Chegg, Lyles will not suffer any prejudice if this Court requires Lyles to proceed in court. Chegg ignores the fact that Lyles *has already been prejudiced* by Chegg's failure to proceed in arbitration, as required by this Court's Order. Lyles filed this case into court. Chegg forced Lyles out of court. Lyles proceeded to arbitration. And now, due to Chegg's utter failure to arbitrate, Chegg now requests the Court's help to force Lyles out of arbitration. And now Chegg is asking this Court to force Lyles back into court. Chegg ignores all of that in arguing that Lyles will not be prejudiced if this Court were to assume jurisdiction over the case again. Lyles has been prejudiced, and continues to be prejudiced every day his arbitration does not move forward. Frankly, the Court must put an end to the nonsense.

*Third,* no exceptional circumstances exist to justify modification. As explained in detail above, the only amount of money at stake here is $200—the $200 the AAA determined (after interpreting Chegg's arbitration agreement) was due from Chegg rather than from Lyles. If this Court does not modify its Order, then Chegg will be responsible for Lyles' portion of the filing fee. That is the only harm Chegg will allegedly suffer in the event the Court does not modify its Order. This $200 falls far shy of the $700 Chegg has already voluntarily paid to this Court in order to litigate this case in this federal forum prior to the filing of the arbitration proceeding and to have its preferred attorneys appear through local counsel. ECF #1 (paying $400 filing fee to remove case from Circuit Court); and ECF #5, 6, and 7 (paying $300 for out-of-state attorneys to participate in this case). So, Chegg's insistence that there are extraordinary circumstances justifying a modification of this Court's Order is feigned. Therefore, the Court must not modify its Order, and must direct Chegg to continue to arbitration.

## VI.    CONCLUSION

For decades, arbitration clauses, by design and intention, have kept consumers out of court and left millions without a remedy (this case is no exception). Now, when faced with a consumer trying to exercise his right to proceed in arbitration after being forced out of court, the company who drafted the arbitration agreement that sent him there is complaining that it will be too expensive to defend. *Chegg is the one who sent Lyles to arbitration*. It cannot put on a straight face and tell this Court that it does not want to be there anymore. The Motion for Clarification, which is no more than a disguised opposition to its own Motion to Compel Arbitration, must be denied.

Respectfully submitted,

Z LAW, LLC

Dated: August 18, 2020                     _____**/s/ 28191**_____
Cory L. Zajdel, Esq. (Fed. Bar #28191)
Jeffrey C. Toppe (Fed. Bar #20804)
David M. Trojanowski (Fed. Bar #19808)
2345 York Road, Ste. B-13
Timonium, MD 21093
(443) 213-1977
clz@zlawmaryland.com
jct@zlawmaryland.com
dmt@zlawmaryland.com

**Attorneys for Plaintiff**

36