1    IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF MARYLAND
2      NORTHERN DIVISION

3  JABARI LYLES       )
   Plaintiff,     )
4   vs.        )CIVIL ACTION NO.
 CHEGG, INC.,      )1:19-cv-03235-RDB
5   Defendant.     )
 _____)
6           Baltimore, Maryland
           December 8, 2020
7           3:35 p.m.

8   **THE ABOVE-ENTITLED MATTER CAME ON FOR**
    **TELECONFERENCE MOTIONS HEARING**
9   **BEFORE THE HONORABLE RICHARD D. BENNETT**

10

11

12      A P P E A R A N C E S

13

On Behalf of the Plaintiff:

14
   CORY L. ZAJDEL, ESQUIRE
15   DAVID M. TROJANOWSKI, ESQUIRE
   JEFFREY C. TOPPE, ESQUIRE
16
On Behalf of the Defendant:
17
   DOUGLAS H. MEAL, ESQUIRE
18   MARK S. SAUDEK, ESQUIRE
   DAVID T. COHEN, ESQUIRE
19
Also Present:
20
CATHERINE GAMPER, LAW CLERK
21

22

23       Reported by:

24     Ronda J. Thomas, RPR, CRR
      Federal Official Reporter
25    101 W. Lombard Street, 4th Floor
     Baltimore, Maryland 21201

*P R O C E E D I N G S*

1

**THE COURT:**  Good afternoon, everyone.  This is calling

the matter of *Lyles L-Y-L-E-S versus Chegg C-H-E-G-G*

*Incorporated*, a case which was closed here on April the 27th by

my memorandum order of Paper Number 25, and we are conducting a

hearing here today with respect to a pending Defendant's Motion

For Clarification Or Modification of that order which is Paper

Number 26.

We're conducting this by way of audio in light of the

current pandemic and consistent with the Standing Order of the

Court 2020-20 which actually now has been amended to be 2020-22

in terms of conducting virtual proceedings in light of the

precautions taken as a result of the COVID-19 pandemic.

And as always I want to thank Catherine Stavlas, the

Deputy Clerk of Court who coordinates all this.  And

specifically today the courtroom Deputy Clerk Katina Tyson as

well as the Court Reporter Ronda Thomas here for their efforts

in coordinating that.  And as well as my law clerk, Catherine

Gamper, who's also on this call.

So with that, if counsel would identify themselves for

the record please?  First for the Plaintiff?

**MR. ZAJDEL:**  Thank you, Your Honor.  This is Cory

Zajdel on behalf of Jabari Lyles and on the phone with me are

two additional counsel that can introduce themselves.

**MR. TOPPE**:  Good afternoon, Your Honor.  This is

1    Jeffrey Toppe also on behalf of Mr. Lyles.   T-O-P-P-E.

2           **MR. TROJANOWSKI:**  Good afternoon, Your Honor.  David

3    Trojanowski also on behalf of Mr. Lyles.  Trojanowski is

4    T-R-O-J-A-N-O-W-S-K-I.

5           **THE COURT:**  Good afternoon to all of you.  And you all

6    are with the Z Law Firm here in Timonium, Maryland.  Correct?

7           **MR. ZAJDEL:**  That is correct, Your Honor.

8           **THE COURT:**  Good afternoon to all of you.

9           Then on behalf of the Defendant Chegg Incorporated?

10          **MR. SAUDEK:**  I apologize for speaking over.

11          Good afternoon, Your Honor.  Mark Saudek from

12   Gallagher Evelius & Jones on behalf of Chegg and with me also,

13   Your Honor, are co-counsel from Orrick who will introduce

14   themselves.

15          **MR. MEAL:**  Thanks, Mark.  Good afternoon, Your Honor.

16   Douglas Meal from Orrick on behalf of Chegg.

17          **MR. COHEN:**  Good afternoon, Your Honor.  David Cohen

18   from Orrick on behalf of Chegg as well.

19          **THE COURT:**  Good afternoon to all of you.  I gather

20   the only one, not that he has to be on the call, but Jonathan

21   Direnfeld from the Washington office of Orrick Herrington &

22   Sutcliffe is not on the line; is that correct?

23          **MR. COHEN:**  That is correct, Your Honor.

24          **THE COURT:**  Good afternoon to all of you.  I apologize

25   if this has been sitting for a bit.  We've been trying to catch

1   up on some matters with the confusion of partially opening and

2   partially closing down the courthouse again.

3           But essentially the matters here -- I think this has

4   essentially been ripe since October the 29th and so I apologize

5   for letting this sit for about four weeks or so.

6           But essentially the facts as I understand in my review

7   of my notes here are that this case arises out of a data breach

8   that occurred on about April 29 of 2018.  And the Defendant

9   Chegg Incorporated experienced a data breach resulting in the

10  exposure of its customers' personally identifiable information.

11          And the Plaintiff Jabari Lyles essentially filed a

12  punitive class action lawsuit against Chegg which sought

13  redress for this data breach.  And that lawsuit was filed in

14  the Circuit Court for Baltimore City and ultimately that was

15  then removed here to this Court on November 8, 2019, pursuant

16  to diversity of citizenship and pursuant to 28 U.S.C. Sections

17  1332(a) and (d), 1441 and 1446.

18          And then subsequently on December the 4th of 2019, the

19  Defendant Chegg filed a Motion To Compel Arbitration and

20  Dismiss or Alternatively for a Stay, Paper Number 21.

21          Ultimately on April 27th of this year I dismissed

22  without prejudice the Plaintiff's complaint and granted the

23  Defendant's Motion to Compel Arbitration directing the parties

24  to proceed to arbitration which is Paper Number 25.

25          And the purpose of this hearing is to address the

```
1   Defendant's pending Motion for Clarification or Modification of
2   that order which is Paper Number 26 which was filed in the
3   beginning of August and then triggered another motion from the
4   Plaintiff which is a Motion for Leave to Take Limited
5   Discovery, Paper Number 28.
6            Without getting too deep into the weeds, have I
7   essentially summarized the procedural posture of this case from
8   the point of view of the Plaintiff, Mr.~Zajdel?
9            MR. ZAJDEL:  Yes, Your Honor.
10           THE COURT:  Mr. Saudek or whoever is going to speak
11   for Chegg, have I correctly summarized the procedural posture
12   from your point of view?
13           MR. SAUDEK:  Your Honor, this is Mark Saudek.  I
14   believe you have but Mr. Meal will be speaking on behalf of
15   Chegg.
16           THE COURT:  That's fine.  Okay.  That's fine.  All
17   right.  So where we are on this is that essentially I
18   understand Chegg is an entity that provides education materials
19   and services to high school and college students and that the
20   Plaintiff Lyles is a Maryland resident and former Chegg
21   customer who contracted with Chegg while he was a student at
22   the University of Maryland Baltimore County campus.
23           Essentially the -- according to my opinion here, the
24   clicking of the signup button on the Chegg.com website
25   contained an agreement that I previously ruled with respect to
```

1   the arbitration notice and the terms of use as reflected in

2   Paper Number 21-3 essentially reflected arbitration notice

3   except for certain types of disputes described in arbitration

4   section below:  You agree that disputes between you and Chegg

5   will be resolved by binding individual arbitration and you

6   waive your right to participate in a class action lawsuit or

7   classwide arbitration.

8           So based upon my memorandum opinion on April the 27th

9   I essentially ruled that on the only issue before me was

10  whether the parties formed an arbitration agreement and I ruled

11  that they did.  And that the Federal Arbitration Act as

12  codified at 9 United States Code Section 1, et seq. governs

13  that agreement and by clicking on the signup button on the

14  Chegg.com website the Plaintiff Lyles agreed to the 2014 terms

15  of use on September 30, 2014, which was reflected in Paper

16  Number 21-6 Paragraph 4 as well as Paper Number 24-4 in the

17  file.

18          And I specifically note that courts opine Maryland law

19  have upheld those kind of clickwrap arrangements and in light

20  of my opinion as noted I determined that there would be a

21  dismissal with respect to these matters that are subject to

22  arbitration.

23          The Defendants have filed essentially a motion for

24  clarification here noting that it contends it no longer has an

25  obligation to arbitrate Plaintiff's claims at all because

1   Plaintiff materially breached the parties' agreement by filing

2   a frivolous arbitration demand for the purpose of imposing

3   onerous or unnecessary cost on Chegg.

4           And specifically it is, apparently released from the

5   papers, it is contended that on April 30, 2020, three days

6   after my memorandum opinion, the Z Law Firm here in Maryland

7   filed some 15,000 separate demands for arbitration with the

8   American Arbitration Association, and that as a result on

9   June 8 the American Arbitration Association informed Chegg that

10  it was responsible for the consumer filing fees associated with

11  these initial demands totaling over $7.5 million.

12          And then it's contended that on July 1, 2020, the Z

13  Law Firm filed another 1,000 additional demands for arbitration

14  against Chegg including one on behalf of the Plaintiff in this

15  case Lyles, and essentially Chegg is contending that it should

16  not have to pay these fees and it can terminate the account.

17          As I understand it in October -- on October 5th of

18  this year the Z Law Firm filed a petition to compel arbitration

19  in the California Superior Court in Santa Clara County,

20  California, on behalf of 16,351 of the 16,691 individuals on

21  behalf of whom Z filed the American Arbitration Association

22  demands.

23          So as I -- according to my review of the materials,

24  apparently Chegg has moved to stay the proceedings in

25  California pending this Court's determination of Chegg's Motion

 1    for Clarification.

 2          I think that's a reasonable summary of where we are

 3    here on this matter.  And with that I'll be glad to hear from

 4    counsel for Chegg with respect to the relief that's being

 5    sought and then I'll hear from counsel for the Plaintiff.

 6          With that I gather, Mr. Meal, you'll be handling this.

 7    I'll be glad to hear from you.

 8          **MR. MEAL:**  Thank you very much, Your Honor.

 9    Appreciate the opportunity to present our position to you.

10          Your Honor, I think what I'll do is begin by

11    addressing the arguments that were made in opposition to our

12    motion to the effect that our motion is procedurally improper

13    by reason of the delegation clause contained in the arbitration

14    provision.

15          And secondly I'll then deal with the merits of our

16    position that Chegg has been relieved from any obligation to

17    arbitrate by reason of the material breach of the arbitration

18    revision by Mr. Lyles.

19          **THE COURT:**  Mr. Meal, if I could just interrupt you

20    for one second.  I just want to make sure I'm clear on one

21    thing.  Chegg is a corporation that's incorporated under the

22    laws of Delaware and the principal office of Chegg is in Santa

23    Clara, California.  Correct?

24          **MR. MEAL:**  Yes, that's correct, Your Honor.

25          **THE COURT:**  Okay.  All right.  Thank you very much.

1           **MR. MEAL:**  So in terms of a procedural issue, Your

2   Honor, the starting point I believe is Section 2 of the Federal

3   Arbitration Act and under Section 2, as recognized in the

4   *Rent-A-Center* case from the Supreme Court that is discussed at

5   some length in the parties' briefs, under Section 2 arbitration

6   agreements may be invalidated by generally applicable contract

7   defenses.

8           And the essence of our position on our Motion for

9   Clarification or Modification is that subsequent to Your

10  Honor's ruling on April 27 of this year this particular

11  arbitration agreement was invalidated and rendered

12  unenforceable by virtue of Mr.~Lyles' material breach of that

13  agreement which is a generally applicable contract defense.

14          Now, as is discussed in the briefs at length, that

15  general rule under Section 2 of the Federal Arbitration Act

16  that I just referred you to has a limitation in a situation

17  where the arbitration provision in question contains a

18  so-called delegation clause.  That is, a clause that reserves

19  for the arbitrator gateway issues of arbitrability including

20  issues of the validity or enforceability of the arbitration

21  provision.

22          In that situation fortunately we have very, very clear

23  guidance, Your Honor, from the Supreme Court in the

24  *Rent-A-Center* case saying that where an arbitration provision

25  contains a delegation clause, as this one here does, Your

1    Honor, that provision -- that provision may be invalidated by a

2    court only where the validity challenge is directed to the

3    delegation clause.  So and that's the key distinction that

4    *Rent-A-Center* draws between an enforceability or a validity

5    challenge that's directed to the agreement as a whole versus

6    one that is directed -- at least also directed to the

7    delegation clause.

8         And what the Court said in *Rent-A-Center* very clearly

9    is that as long as the particular challenge under generally

10   applicable contract defenses is directed not just to the

11   agreement as a whole but also specifically, and that's the

12   language of the *Rent-A-Center* case, specifically to the

13   arbitration provision and the delegation clause contained in

14   the arbitration provision then a court may address the issue of

15   the enforceability or the validity of the arbitration

16   provision.

17        Now here, Chegg did expressly direct its validity

18   challenge to the delegation clause.  And in fact it's that

19   expressed direction of our argument that the delegation clause

20   is all over our moving brief, Pages 3 and 4, Page 20, Page 26,

21   Page 28.  We did that repeatedly in fact going all the way back

22   to your initial letter, Chegg's initial letter, Your Honor,

23   where Chegg exercised its right to cease performance under the

24   agreement and under the delegation clause by reason of

25   Mr. Lyles' material breach.

1          We specifically called out the fact that our challenge

2     was directed not just to the agreement as a whole but

3     specifically the delegation clause in the arbitration provision

4     in question.

5          And again we have teaching on this that's directly on

6     point from the Fourth Circuit in the *Sequoia* case where the

7     Fourth Circuit held that if you do that, if, in making your

8     challenge, you direct it specifically to the delegation clause

9     that's all you need to do in order to meet the requirement of

10    *Rent-A-Center* in regard to making it procedurally appropriate

11    for a court rather than arbitrator to address that challenge.

12         We also have some very, very important teaching from

13    the *Haynes* case from the Fourth Circuit earlier this year.  We

14    cite this in our brief.  I just want to quote it here because

15    it's so on point for this issue.

16         What the Fourth Circuit said in *Haynes* is, quote, "In

17    specifically challenging a delegation clause a party may rely

18    on the same arguments that it employs to contest the

19    enforceability of -- of other arbitration provisions," closed

20    quote.  That's 967 F.3d at 338 from earlier this year from the

21    Fourth Circuit.  And that's exactly what we did here, Your

22    Honor.

23         The entirety of our challenge to Mr. Lyles' conduct is

24    directed to his conduct, in our view his misconduct, under the

25    arbitration provision and our agreement with him.  So the

 1    entirety of our challenge here is directed to the arbitration

 2    provision and specifically to the delegation clause in the

 3    arbitration provision.

 4          We think that's dispositive in terms of the issue of

 5    the delegation clause and the issue of whether Your Honor has

 6    authority to entertain our challenge to the continued

 7    enforceability and validity of the arbitration provision and

 8    the terms of use.

 9          There's a reference that's made in Mr. Lyles' opposition

10    brief to the fact that the delegation clause here is severable.

11    The severability of the delegation clause is irrelevant to the

12    analysis.  *Rent-A-Center* makes that clear.  Supreme Court said,

13    quote, "that agreements to arbitrate are severable does not

14    mean that they're unassailable."  That's 561 U.S. at 71.

15          And in fact that's the whole point that the Court made in

16    *Rent-A-Center*.  Where a delegation clause is severable as long

17    as the challenge that's then leveled, the arbitrability is

18    leveled toward the delegation clause but you satisfied the

19    *Rent-A-Center* test.

20          Here, as severed, the delegation clause contained its own

21    implied covenant of good faith and fair dealing that was

22    breached for the same reason that the arbitration provisions

23    and the terms of uses implied covenants of good faith and fair

24    dealing were breached.  And so our argument that we make on the

25    merits fits, we believe, squarely within what *Rent-A-Center*

1    requires in order for a court to be able -- for Your Honor in

2    this case to be able to entertain the arbitrability challenge

3    that we're leveling at this point.

4        Another red herring, Your Honor, in our view is the

5    argument that the arbitration provision here according to the

6    terms of use survives termination, underscoring that word

7    "termination" of the -- of the arbitration provision and

8    termination of the terms of use.

9        That's a red herring, Your Honor, because our argument

10   that we have no continuing obligation under that agreement to

11   arbitrate with Mr. Lyles isn't dependent on -- in fact is in no

12   way related to the fact that Chegg exercise its right to

13   terminate its agreement with Mr. Lyles.

14       Our argument is that Mr. Lyle's material breach relieves

15   Chegg from any future performance obligation under the

16   agreement whether or not Chegg terminated the agreement.

17       So it's the -- it's the material breach that Chegg's right

18   under California law by reason of material breach to cease

19   future performance under the agreement that's the basis for our

20   challenge to arbitrability; not the fact that Chegg separately

21   and independently exercised its right to terminate that

22   agreement.

23       So, Your Honor, that's in substance our argument on the

24   procedural issue.  I'm glad to answer any questions you might

25   have on that issue.  Otherwise I can turn to what I would call

1    the merits of our arbitrability challenge.

2          **THE COURT:**  Mr. Meal, let me just ask you this:  I was

3    really not sure what kind of relief you're seeking here.  I'm

4    not really sure if I'm still clear on it in that you want

5    clarification that my order was not intended to operate if the

6    underlying agreement is unenforceable, correct?

7          **MR. MEAL:**  Yes, Your Honor.

8          **THE COURT:**  Then secondarily you seek my review in

9    terms of the determination of enforceability with respect to a

10   merits analysis?

11         **MR. MEAL:**  Yes.  It's --

12         **THE COURT:**  Let me ask you this:  Let's assume that

13   with respect to the posture here in terms of preventing

14   manifest injustice under Rule 59(e) of the Federal Rules of

15   Civil Procedure and under Rule 60(a) with respect to this

16   Court's jurisdiction to essentially clarify an ambiguity here

17   that it may be that the Court indicates that my memorandum

18   order of April 27, Paper Number 25, is clearly only operable if

19   the underlying agreement -- is not operable and is not intended

20   to operate if the underlying agreement is unenforceable.

21         But as to the matter of the determination of the

22   enforceability of it, that is within the discretion of the

23   court order, also may lie with respect to the arbitrator,

24   correct?

25         **MR. MEAL:**  Well, we would say no in regard to the

 1   arbitrator, Your Honor, for the reasons that I just went

 2   through that because Chegg has been relieved of any further

 3   obligation to -- to arbitrate under the agreement and because

 4   Chegg's arbitrability challenge is directed to that arbitration

 5   provision and to the delegation clause.  You are the entity in

 6   the first instance under those circumstances as per

 7   *Rent-A-Center* to decide whether or not there's a continuing

 8   obligation to arbitrate.

 9          **THE COURT:**  Well, that amounts to a declaratory

10   judgment action, does it not?

11          **MR. MEAL:**  Well, I would think it could, Your Honor.

12   But at the same time I think in the context of not only the

13   fact that you have this case before you and the issue of

14   arbitrability is one that you have already dealt with, in fact,

15   you have jurisdiction to decide arbitrability.  I think it's

16   certainly open to you to decide that issue in the context of

17   ruling on our motion.

18          **THE COURT:**  Well, I agree that it may or may not be

19   open to me but it terms of -- it seems to me the justifiable

20   mechanics here given that your client has its principal office

21   located in Santa Clara, California, and in light of the fact

22   that there are proceedings already in the California Superior

23   Court in Santa Clara County, it would seem to me that, I know

24   that you moved to stay those proceedings pending my

25   determination or clarification here, it would seem to me that

1   the matter of the merits in the form of a declaratory judgment

2   action of whether or not there is even an agreement that's

3   enforceable would best lie in that court.  It would be the most

4   expeditious way of handling it it seems to me.

5        It doesn't preclude you from arguing that, but it

6   basically would clarify that my order with respect to

7   arbitration is strictly based upon the fact that there is an

8   enforceable arbitration agreement.  And if the underlying

9   agreement is unenforceable then essentially -- you're asking

10  for two things here.  One of which I understand and the other

11  of which I think is a stretch if I can just be candid with you

12  on this.

13       You're asking me to clarify in an order to say that

14  the order was not intended to operate if the underlying

15  agreement itself is unenforceable.  And clearly, I'll hear from

16  Plaintiff's counsel in a minute, but I certainly understand

17  that request in light of what I understand to have been the

18  procedural steps taken here; and particularly in light of the

19  fact that there are now consumer filing fees associated with

20  these various demands approaching over 7.$5 million.

21       But I don't know that the determination in

22  enforceability therefore is just left to me.  It may be left to

23  an arbitrator or quite frankly it's a matter of an action there

24  in the Superior Court for Santa Clara County.

25       Would that not make more sense for your client?

1      **MR. MEAL:**  Where I would disagree with that

2  respectfully, Your Honor, is that Mr. Lyles is not a party to

3  the proceeding in California.  Mr. Lyles is a party to this

4  action and Your Honor has jurisdiction over this action and

5  Your Honor has jurisdiction over Mr. Lyles.

6      And so for us to get a ruling that we have no

7  obligation to arbitrate with Mr. Lyles, we think the

8  appropriate thing is for you to rule on that.  The California

9  court doesn't have any ability to rule on that because

10  Mr. Lyles isn't a party to that action and you have the ability

11  to rule on that here in this action.  So that's why we thought

12  it was appropriate, Your Honor, to present the issue of whether

13  or not Chegg had a continuing obligation to arbitrate with

14  Mr. Lyles before you.

15      **THE COURT:**  Well, let me just get to the facts of

16  this.  Very simply just as to Mr. Lyles and not the 15,000

17  separate demands made earlier or the other 1,000 demands.

18      As to Mr. Lyles in terms of seeking arbitration, you

19  can certainly present to the arbitrator the fact that there is

20  no enforceable agreement because of the alleged sins committed

21  by Mr. Lyles.  Could you not?  That could happen in any kind of

22  context.

23      **MR. MEAL:**  I think we -- I think actually we could not

24  because we -- there is no longer any enforceable arbitration

25  agreement between us and Mr. Lyles for all the reasons that we

1    said.

2            And also an approach, Your Honor, under which we were

3    going to present to an arbitrator the issue of whether there's

4    an enforceable agreement between ourselves and Mr. Lyles or

5    between ourselves and any of Mr. Lyles' fellow claimants would

6    in essence defeat the whole purpose of the arbitrability

7    challenge that we're presenting here because that whole purpose

8    of that arbitrability challenge is to make sure that Chegg

9    doesn't incur the arbitration fees that we say, Your Honor,

10   should not be imposed on us.

11           And so in our view the appropriate course is, in

12   regard to Mr. Lyles, since Mr. Lyles is before this Court and

13   there's jurisdiction over Mr. Lyles in this Court; since we

14   don't have any obligation to arbitrate with Mr. Lyles any

15   longer; since Mr. Lyles isn't a party to the subsequently

16   commenced California action, the Court -- this Court should be

17   the -- decide because at this moment in time this Court is the

18   only court that has jurisdiction to decide that issue.

19           **THE COURT:**  Well then let's assume you prevail as to

20   Mr. Lyles.  My ruling on Mr. Lyles has absolutely nothing to do

21   with the 15,000 separate demands for arbitration with the AAA

22   filed on April the 30th by the law firm here, the Z Law Firm in

23   Maryland.  And it has nothing to do with the 1,000 additional

24   demands for arbitration that happen to include among those one

25   thousand Mr. Lyles.  It only relates to Mr. Lyles, correct?

1    **MR. MEAL:**  It's likely, Your Honor.  Although we
2    haven't, we're not sure about this, we haven't fully researched
3    this.  Would be -- certainly Your Honor is correct that it
4    would be at a minimum questionable whether it would be anything
5    more than *stare decisis* effect as to Mr. Lyles' fellow
6    claimants.  I agree with that.

7         I can't say definitively that there's nothing more
8    than the *stare decisis* effect.  But certainly Your Honor is
9    correct that there'd be a serious question as to whether there
10   would be anything more than *stare decisis* effect by reason of
11   Your Honor's ruling.

12        But having said that, Your Honor, the *stare decisis*
13   effect of your ruling could be quite significant.  And in fact
14   the California judge indicated that he was hopeful that you
15   will rule on this issue because he would want to have the
16   benefit of your ruling in his mind when he rules on the issues
17   that are before him in California.

18        **THE COURT:**  All right.  Well, with that, let me hear
19   from Mr.~Zajdel.

20        Mr.~Zajdel, I'll be glad to hear from you.

21        **MR. ZAJDEL:**  Sure, Your Honor.  With respect to the
22   application of the delegation clause and Chegg's attempt to
23   bypass the delegation clause and citing to Supreme Court
24   opinions, Chegg is correct that they did say the words
25   "challenge the delegation clause" throughout their brief but

1    they don't actually challenge the delegation clause.  There is

2    no challenge to the delegation clause.  They try to bypass

3    binding Supreme Court precedent by just saying that they're

4    challenging the delegation clause.

5           But it's important to look at what the actual text of

6    the delegation clause says and I'm just going to read from the

7    arbitration agreement:  You and Chegg agree that any dispute,

8    claim or controversy arising out of or related to these terms

9    of use or the breach, termination, enforcement, interpretation

10   or validity thereof will be settled by binding arbitration.

11          That's the delegation clause.

12          Chegg has not made any argument that Mr. Lyles

13   breached anything in that clause.  What Chegg did was they made

14   a general contractual argument that Mr. Lyles breached the

15   terms of use by filing an arbitration for damages above the

16   amount that they think is fair.  And that he breached his

17   arbitration agreement by failing to waive a contractual right

18   provided to him by Chegg to have his individual claim filed

19   individually and not arbitrated on a group basis.

20          So to the extent that we're talking about the

21   delegation issue, Chegg has this all wrong and the foundational

22   argument that they've challenged the delegation clause is

23   inaccurate.  They have not made any challenge to the delegation

24   clause.  They've just told Your Honor that they're challenging

25   the delegation clause.  That's not sufficient.  Okay.

```
 1          That's -- with respect to the delegation clause we
 2   would -- if Your Honor has questions for me with respect to
 3   that issue I'm happy to answer but I think our brief covers
 4   that.
 5          I do want to speak on the issue of -- I'm sorry.  I do
 6   want to speak on the issue of the survival clause because we
 7   don't understand what it is that Chegg thinks it gets from an
 8   order saying that the terms of use are no longer valid because
 9   the place that's going to wind up deciding these issues is an
10   arbitrator.  Because a survival clause specifically requires
11   that the legal dispute section live on regardless of what
12   happens with the terms of use, regardless of whether there's a
13   breach or not, regardless of what conduct occurs those disputes
14   are being decided by an arbitrator because they live on
15   forever.
16          And Chegg hasn't provided the Court with any -- any
17   type of authority other than its say so that the survival
18   clause just goes away.  And we've briefed that issue as well.
19          I also wanted to bring up the fact which wasn't a big
20   highlight in our brief but I think the court should be
21   considering this that under the triple A's rules, and this goes
22   to Chegg's merits argument, that Lyles breached his terms of
23   use by filing a frivolous arbitration and joining it with other
24   people to exceed costs.
25          According to the triple A's rules, Lyles hasn't done
```

1   anything.  Triple A's rule for filing of an arbitration

2   specifically states that no arbitration is commenced and no

3   arbitration is initiated until you've -- until the claimant

4   satisfies the administrative requirements for triple A, which

5   is the filing of a demand and service of a demand, and the

6   complete filing fee is paid.

7        It's no different than when you file an action in your

8   court, Your Honor.  You can't just file a complaint in court

9   and have the court consider it.  It's not filed until the

10  filing fee is paid.  I know that because I've had that happen

11  in the Circuit Court of Maryland where we filed a complaint, we

12  didn't have the proper filing fee, and it was sent back to me.

13  Nothing occurred.  There was no filing.  No action had been

14  taken.

15       So according to all the facts before Your Honor, even

16  though Chegg tells you there was a breach because there is

17  these onerous filing fees and because Jabari Lyles took all

18  these actions, in actuality nothing has happened.

19       He could not have breached an agreement because no

20  action is pending.  No action is filed.  No action is

21  initiated.  Triple A has said that repeatedly in their letters

22  which are before the Court.  They will not initiate the claim

23  until the filing fee is paid.

24       So to the extent Chegg is relying on actions taken by

25  Mr. Lyles those arguments are without support from the very

1  venue where the action supposedly was pending.

2      THE COURT:  Well I understand that according to the

3  papers filed by Chegg that your client demanded $25,000 in his

4  arbitration demand.

5      MR. ZAJDEL:  That is correct.

6      THE COURT:  And I gather -- have you filed 15,000

7  separate demands for arbitration with the AAA?

8      MR. ZAJDEL:  Your Honor, my -- correct.  My law firm

9  has filed more than 16,000 demands for arbitration with the

10 Triple A.

11     THE COURT:  And as to that, the Triple A has informed

12 Chegg and/or anyone else that it was responsible for these

13 filing fees, correct?  The AAA advised Chegg of that; is that

14 correct?

15     MR. ZAJDEL:  That's correct.  And those are the

16 letters that I believe Mr. Meal attached to his memorandum.

17 Yes.  True.  And in those letters --

18     THE COURT:  You filed a total -- you filed essentially

19 some 16,000 demands for arbitration against Chegg only one of

20 which is from Mr. Lyles; is that correct?

21     MR. ZAJDEL:  That's correct.  Mr. Lyles has an

22 individual arbitration filed under his own name with his own

23 demand for arbitration which was served on the triple A and on

24 Chegg.  And his demand for arbitration requests his damages for

25 himself, yeah.

1    **THE COURT:**  I understand.  So the point of it is

2   that -- and Chegg would be responsible, correct me if I'm

3   mistaken, as I understand it Chegg is then responsible for some

4   over $7.5 million in consumer filing fees for which it's

5   responsible; is that right?

6    **MR. ZAJDEL:**  That is correct, Your Honor.  That is the

7   contractual arrangement that Chegg made with its customers.

8    **THE COURT:**  I understand.  Essentially and you

9   solicited all of these various demands through the offices of

10   Mr. Lyles; is that right?

11    **MR. ZAJDEL:**  That is incorrect, Your Honor.

12    **THE COURT:**  All these people called your law firm to

13   ask you to represent them?

14    **MR. ZAJDEL:**  No, my apologizes, Your Honor.  Part of

15   what you're saying is correct --

16    **THE COURT:**  I asked you specifically, Mr.~Zajdel, you

17   obviously solicited $16,000 people.

18    **MR. ZAJDEL:**  Well, I can't agree that I solicited

19   because solicited is --

20    **THE COURT:**  Let me make a different phrase.

21    **MR. ZAJDEL:**  -- I marketed --

22    **THE COURT:**  Let me make a different phrase to be fair

23   to you.  Without question 16,000 people did not call your law

24   firm here in Maryland and ask you to represent them initially

25   to file these complaints.  That at some point in time you

1  marketed your services of the law firm with respect to 16,000

2  people, one of whom is Mr. Lyles, to file demands for

3  arbitration in connection with the merits that you postured as

4  to this case, correct?

5        MR. ZAJDEL:  I still have to disagree with that and I

6  will explain.  The individuals, other than Mr. Lyles, I will

7  agree, yes, those -- those clients were retained by my law firm

8  through marketing.

9        THE COURT:  All right.

10        MR. ZAJDEL:  Mr. Lyles was not part of that group.

11  His action was filed -- he was -- he -- he signed a retainer

12  agreement with my law firm to represent him as a main plaintiff

13  in a class action which is what we filed on his behalf.

14        THE COURT:  Obviously the people that you -- the

15  16,000 people who you have indicated clearly did not call you

16  but you, quote, "marketed", end of quote.  That process started

17  three days after I filed my memorandum order granting the

18  Motion to Dismiss because you had sought to file a class action

19  here with respect to Mr. Lyles, on behalf of Mr. Lyles and

20  others similarly situated with respect to the data breach here

21  in this case, correct?

22        MR. ZAJDEL:  It's correct to the extent that we wanted

23  to participate -- we wanted to move forward on the class action

24  basis for Mr. Lyles.

25        THE COURT:  I understand.  And that class action basis

 1    would have included presumably these 16,000 claims by 16,000

 2    other people?

 3           **MR. ZAJDEL:**  Yes, Your Honor, that's correct.

 4           **THE COURT:**  All right.  And the reason I ask that is

 5    because the -- with respect to a standard of review or

 6    reconsideration of a judgment after its entry, with respect to

 7    Fourth Circuit law and even some references in Federal Practice

 8    and Procedure by Professor Wright is that Rule 59(e) provides

 9    for a motion to author or amend a judgment within 28 days of

10    the judgment but doesn't necessarily clearly provide for a

11    standard for determining when such a motion should be granted.

12           The Fourth Circuit has previously ruled that in

13    *Pacific Insurance Company versus American National Fire*

14    *Insurance*, 148 F.3d 396, an opinion of the Fourth Circuit 1998,

15    essentially there were -- that's a Fourth Circuit opinion in

16    1998.

17           Essentially at 148 F.3d at 403 it's noted that there

18    are three grounds for amending the judgment.  It's one, to

19    accommodate an intervening change in controlling law; two, to

20    account for new evidence not available at trial; or to correct

21    a clear error of law or to prevent manifest injustice is the

22    language that's used by the Fourth Circuit.

23           And Rule 60(a) of the Federal Rules of Civil Procedure

24    provides that a court can correct a clerical mistake or a

25    mistake arising from oversight or omission whenever one is

1   found in a judgment order or other part of the record and the

2   Fourth Circuit in *Sartin versus McNair Law Firm*, PA, 756 F.3d

3   259, discussion at Page 266 a Fourth Circuit opinion in 2014

4   specifically noted that -- the Fourth Circuit noted that a

5   district court may also correct an unintended ambiguity that

6   obfuscates the Court's original intent.

7   So I am analyzing this in terms of the matter of an

8   unintended ambiguity that obfuscates the Court's original

9   intent.  And I interpreted this motion by the Defendant Chegg

10  to be to clarify that the order should be somehow amended or

11  clarified so that it is not intended to operate in a situation

12  where the agreement upon which the order was predicated is no

13  longer enforceable.

14  So Mr. Meal has suggested that this necessarily requires

15  me to make a determination of whether or not the agreement is

16  enforceable or not or whether it should be determined by an

17  arbitrator.

18  Now, in terms of the issue of whether or not this Court

19  should determine issue of enforceability or whether or not it

20  should be determined by an arbitrator, the class that you

21  proposed here in this litigation of now apparently some 16,000

22  people which as you said your firm, quote, "marketed," end of

23  quote, whether it's marketed or whether solicited is another

24  matter, presumably that was the class that you would seek for

25  certification.

1        And what is before me is the fact that to the extent that
2   there are individual motions to arbitrate pursuant to the
3   American Arbitration Association rules it appears that the
4   posture of this now is that there are literally 7 point -- over
5   $7.5 million in fees that will be required of Chegg with
6   respect to just a matter of proceeding with arbitration.

7        Is that a correct summary, Mr.~Zajdel?

8        **MR. ZAJDEL:**  Well, I -- I -- it's partially correct
9   but it's partial -- I believe it's partially incorrect in that
10  Your Honor entered a dismissal without prejudice.  There is no
11  class.  There is nobody before the Court except for Mr. Lyles
12  and all the other people that we represent are currently in
13  court in California.  Whatever Your Honor decides to do with
14  this motion that order is going to impact Mr. Lyles and
15  Mr. Lyles only.

16       Mr. Lyles is the only party before the Court and we
17  still are having trouble grasping what it is that Chegg gets
18  out of the first portion of what they're asking for,
19  clarification that if there's an unenforce-- that the order is
20  not supposed to be applicable to an unenforceable agreement.
21  You don't need a court to say that.

22       The idea of whether or not the arbitration agreement
23  is enforceable is an issue that arises in arbitration.  So I --
24  I don't understand the basis of having a court make a
25  clarification to state that.

1          I think what Chegg is really here for is for the Court

2     to make an order saying that because of the actions that

3     Mr. Lyles took or didn't take that they don't have to arbitrate

4     with anyone.  That's what they want is they want an order from

5     this Court that although pretends to be for Mr. Chegg would be

6     for everyone.  And there is no one before the Court other than

7     Mr. Lyles.  That was my first point of disagreement.

8          The other side of it is almost all, if not all of the

9     cases that Your Honor cites to and that Chegg refers to in

10    their briefs, they all have to do with final judgments and

11    there's no judgment in this case.  There is an order enforcing

12    a contract.  That is essentially what the Court's Motion To

13    Compel -- ruling on a Motion To Compel Arbitration is, is an

14    order forcing the person out of court by enforcing an

15    arbitration agreement.

16         So the Court has already enforced an arbitration

17    agreement.  Now the question of whether it remains enforceable

18    is a question for the arbitrator and the delegation clause

19    would -- in order for the Court to find -- to provide Chegg

20    with the relief that it's asking for under Rule 60 the Court

21    needs to make so many merits determinations, so many factual

22    and legal determinations that it makes a mockery out of

23    arbitration agreements.  Because in order to even get to

24    whether or not the demand -- the demand of $25,000 is frivolous

25    which is what Chegg argues because one of their two linchpins

1   of why there's a -- the agreement is terminated for breach of

2   good faith and fair dealing, the Court first needs to find --

3   have a trial on issues of liability and damages, make factual

4   determinations related to the data breach, the efforts that

5   Chegg undertook to protect consumers, whether and to what

6   extent Lyles suffered damages, and then make legal findings

7   with respect to the disclaimer and liability -- limitations of

8   liability clauses and the enforceability of those clauses

9   within the terms of use.  And only after all those

10  determinations can the Court come to the conclusion that Lyles

11  filed a frivolous arbitration.

12      So what Chegg's asking you to do is to have the

13  arbitration here in court, to have the arbitration in court so

14  that they don't have to have an arbitration.

15      Then the other side of it is they want the Court to

16  make the decision that Lyles took steps to make his arbitration

17  prohibitively expensive to Chegg.  But once the Court cuts

18  through the fact that all the other people filed arbitrations

19  and that those fees are due for the other people's

20  arbitrations, the Court will see that Chegg contractually

21  agreed to pay arbitration fees rather than deal with class

22  actions and other actions in court.

23      So no matter how Lyles filed his arbitration, Chegg

24  had contractually agreed to pay all the filing fees.  Whether

25  it's 3,400, 4,900, whatever that amount is Chegg agreed to pay

 1    that.

 2              So for Chegg to come into court and say he breached

 3    the agreement by forcing us to pay the $3,400 is a really

 4    out-there argument.  That's the amount of money that the triple

 5    A charges for an arbitration.  It's publicly available and it's

 6    what Chegg included in the arbitration agreement.

 7              So Chegg is trying to make this assertion that all

 8    these fees make it necessary for the Court to take action for

 9    Chegg now but all the fees that have been presented to the

10    court have nothing to with Jabari Lyles.

11              Jabari Lyles filed his case in court and wanted to

12    move forward on classwide basis in court and opposed

13    arbitration.  It wasn't until after the Court ruled that he had

14    to arbitrate that he went and filed the arbitration.

15              So Chegg is now asserting that he has breached his

16    contract by doing what the Court told him he had to do.

17              So, I mean, even if the Court gets to the merits of

18    the argument it doesn't sound true to Mr. Lyles.  Mr. Lyles did

19    nothing that increased the cost of arbitration to Chegg.

20              Chegg's only argument with respect to these expenses

21    have to do with the people that my law firm represent refusing

22    to agree to consolidate their case and file it as one action.

23    And the arbitration agreement speaks to this.  It says that --

24    it says that unless both you and Chegg otherwise agree, the

25    arbitrator may not consolidate more than one person's claims

1    and may not otherwise preside over any form of any class or

2    representative proceeding.

3           So Chegg says, well, you could have -- you could have

4    filed them all as one claim.  If you would have agreed, because

5    Chegg agreed to do this, if you would have agreed, meaning

6    Mr. Lyles, if he would have agreed to proceed with the other 16

7    and a half thousand people in one claim then it only would have

8    cost them $3,400.

9           Well, that's not a foregone conclusion first of all

10   because triple A hasn't said that they would take that type of

11   arbitration and only charge $3,400.  But putting that aside,

12   Mr. Lyles does not -- is not required to waive his contractual

13   right because Chegg decided that it was going to pay for filing

14   fees.  That would be like us coming into court and filing a

15   class action and then when Chegg asserts its right to

16   arbitration we write to Chegg and say, "Excuse me, Chegg, we

17   demand that you withdraw your Motion To Compel Arbitration

18   because we want to be in court."

19           **THE COURT:**  Let me ask you this, Mr.~Zajdel, with

20   respect to the Motion for Clarification doing the first half as

21   opposed to the second half, if the Court were to say that the

22   order with respect to that there is an arbitration agreement,

23   and I have found in my order clearly that by clicking on the

24   signup button that your client, Mr. Lyles, agreed to the 2014

25   terms of use on September 30, 2014; and then noting that courts

 1    opine Maryland law have upheld such clickwrap agreements.  That

 2    if the clarification is simply that, that based upon the

 3    existence of a contract that the opinion was based upon an

 4    enforceable agreement but I make no finding as to

 5    enforceability and leave that to another forum.  That

 6    essentially grants the Plaintiff, I mean grants Chegg, a part

 7    of what it desired.  But the matter of the determination of

 8    enforceability is left to another forum and it's up to another

 9    forum, be it an arbitration or the -- for that matter the --

10    essentially the Superior Court in Santa Clara County to

11    determine enforceability.

12            What you have summarized to me I think is not at

13    variance with that; is that correct?

14        **MR. ZAJDEL:**  That's correct.  Yeah, that's correct,

15    Your Honor.  We don't think what Chegg has asked in their first

16    part of the relief does anything to change anything.  It just

17    says --

18        **THE COURT:**  I understand.

19        **MR. ZAJDEL:**  -- yeah, what everyone agrees to that of

20    course --

21        **THE COURT:**  The point is is that I just said that

22    there's a contract and that there is essentially the only issue

23    before me as I noted back in April was whether the parties

24    formed an arbitration agreement.  And I have held that yes they

25    did and they formed an arbitration agreement.  And therefore

1   there's an arbitration agreement and accordingly I granted the

2   motion of the Defendant to compel arbitration and it's granted

3   and the parties will proceed to arbitration.  That relates to

4   Mr. Lyles and no one else.  And the case here as to Mr. Lyles

5   was dismissed without prejudice.

6           With respect to whether or not there's some basis to

7   find that there's a breach, that there is a breach of

8   essentially that agreement, that there is an arbitration

9   agreement but a view that there has been a breach of the

10  arbitration agreement, that could be left to another forum and

11  you have no objection to that, correct?

12          **MR. ZAJDEL:**  That's correct, Your Honor.  In fact --

13          **THE COURT:**  Mr. Meal, let me ask you this:  You had --

14  you can have clarification here that clearly it's predicated

15  that I found there's an arbitration agreement and it's

16  predicated upon whether or not there's been a breach of an

17  arbitration agreement.

18          You're not asking me to reverse *Field* in terms of my

19  ruling with respect to the fact that there's an arbitration

20  agreement.  You are asking me essentially to say -- to clarify

21  that not only there was an arbitration agreement but there has

22  been a breach of the arbitration agreement.

23          In a nutshell that's what you're asking, correct?

24          **MR. MEAL:**  Yes, Your Honor.

25          **THE COURT:**  All right.  And still the fact of the

```
 1  matter is is that there's no jurisdiction as far as I'm
 2  concerned nor do I choose to exercise jurisdiction to do that.
 3  That the record will reflect here for the reasons set forth on
 4  the record that I certainly have granted the Defendant's Motion
 5  for Clarification.  I'm going to deny the motion -- Plaintiff's
 6  Motion for Leave to take Limited Discovery on this issue.
 7       It's really quite simple.  I'm providing clarification
 8  that I have found that there was clearly, under Maryland law,
 9  there was clearly here an arbitration agreement which was
10  formed between Mr. Lyles and Chegg, without question.  And I
11  have found that the Federal Arbitration Act as codified at 9
12  United States Code Section 1 F.2d governs that arbitration
13  agreement.  And I have noted that by clicking on the signup
14  button on the Chegg.com web site that Mr. Lyles agreed to the
15  2014 terms of use on September 30, 2014.  Whether or not that
16  triggers a winning argument that he's breached it, I don't
17  know.  It's not before me.
18       And applying Maryland law, which have upheld those
19  kind of clickwrap agreements, consistent with this Court's
20  earlier opinions in *CoStar Realty Info versus Field*, 612 F.
21  Supp. 2d 669, a 2009 opinion of this Court, as well as an
22  opinion I had in 2011 *in Fusha versus Delta Airlines* which is
23  2011 Westlaw 3849657, there was clearly essentially that
24  Mr. Lyles had noticed that a click on that clickwrap agreement
25  manifested an assent to an agreement.  So there was an
```

1    arbitration agreement that was agreed upon.  And that is how

2    I've ruled and I -- no one is asking me to change that and I'm

3    not changing it.  I'm not reconsidering it.  Nor is that really

4    what the request is.

5         I'm clarifying that I have found that there is an

6    agreement.  I have not ruled upon the enforceability of that

7    agreement and whether or not there has been any breach of it in

8    any way and that is open to another forum, be it the state

9    court in Santa Clara County, California, or be it an

10   arbitrator.  That's really not before me.

11        So I'm certainly willing to clarify that in that

12   fashion and a transcript of these proceedings can be prepared

13   and requested of Ms. Thomas, Ronda Thomas here, the court

14   reporter, who if counsel want a transcript to be prepared she

15   could prepare one.  And you would -- I'm trying to make my

16   ruling as clear as I can for my judicial colleague out in the

17   Superior Court for Santa Clara, California, or any arbitrator

18   who looks at this.

19        Now, you haven't gotten all of your relief, Mr. Meal,

20   but you've certainly got clarification as to that, correct?

21        **MR. MEAL:**  I appreciate the clarification, Your Honor.

22   I just want to make one point and I understand that --

23        **THE COURT:**  Just if I can, let me just -- okay, if you

24   agree that's a clarification and, Mr.~Zajdel, from your point

25   of view that's a clarification to which you don't take any

1    exception?

2           **MR. ZAJDEL:**  That's correct, Your Honor.

3           **THE COURT:**  That's where we are.

4           Yes, go ahead Mr. Meal.

5           **MR. MEAL:**  I just want to make one point, Your Honor,

6    so the record's clear on this.  In terms of leaving the issue

7    of arbitrability as to Mr. Lyles to another forum, Your Honor

8    mentioned California, Santa Clara, Your Honor mentioned

9    arbitration.  Just so it's clear we have no jurisdiction to

10   bring a proceeding against Mr. Lyles in Santa Clara.  There's

11   no jurisdiction over him there.  And number two, there is no

12   way to bring that before an arbitrator because there's no, in

13   our view, no longer any arbitration provision.

14          So the other forum respectfully, Your Honor, in our

15   view would be your court where there is jurisdiction over

16   Mr. Lyles.

17          So I totally understand where Your Honor is headed

18   with today's ruling but to the extent we would need to go

19   somewhere to obtain a ruling on this issue as to Mr. Lyles I

20   would think we would be certainly potentially headed back to

21   your court.

22          **THE COURT:**  And without addressing that precisely I

23   think you're correct.  You could certainly file a declaratory

24   judgment action based upon diversity of citizenship with

25   respect to a client, with respect to a contract you have with

1  anyone in Maryland with respect to your contention that there

2  has been a breach of an existing contract.

3       And if you file such an action you should certainly

4  file that it's a related case in light of my having addressed

5  this case in Case Number 19-3235 and the clerk would assign it

6  to me and I would agree to take it.

7       **MR. MEAL:**  Understood, Your Honor.  I understand.  And

8  I appreciate that clarification so thank you.

9       **THE COURT:**  All right.  And Mr.~Zajdel, as to that,

10  there's no question that there could be a declaratory judgment

11  action filed in terms of whether or not there is an enforceable

12  contract between Mr. Lyles and Chegg and could be litigated in

13  that fashion, correct?

14       **MR. ZAJDEL:**  Happens all the time, Your Honor.  I

15  might take issue with the forum but, yes, a declaratory

16  judgment action could certainly resolve that issue.

17       **THE COURT:**  And there would be diversity of

18  citizenship with respect to assuming Mr. Lyles is still a

19  resident of --just one second here if I can, wait a minute.

20       **MR. ZAJDEL:**  He is a resident of Maryland.

21       **THE COURT:**  He's a resident of Maryland and to the

22  extent that an out-of-state company is suing an individual in

23  Maryland they can seek the -- file on basis of diversity of

24  citizenship and seek a -- file a declaratory judgment action

25  and we can go from there.

1        So if such is filed someone should just note

2   Mr.~Saudek is obviously very, very experienced here in our

3   court as is Mr.~Zajdel and you certainly can, Mr.~Saudek, you

4   can note it's a related case and the clerk will assign it

5   accordingly if there's a related case and it probably would

6   clearly be assigned to me.

7        Then I will have to deal with the issue of

8   enforceability specifically as between Mr. Lyles and Chegg.

9   Having no class action ramifications at all.  I would deal just

10  with Mr. Lyles and Chegg Incorporated.

11       Okay.  So I think we've reached a common ground here.

12  My chambers will prepare an order here.  Ms. Tyson, we'll

13  handle this from chambers here noting that we've conducted a

14  hearing, we've reviewed the submissions of the parties, and for

15  the reasons set forth on the record here today the Motion for

16  Clarification was granted and clarification was provided here

17  at the hearing and is set forth on the record.  So Paper Number

18  26 will be granted.

19       And Paper Number 28, the Plaintiff's Motion for Leave

20  to Take Limited Discovery, will be denied as moot.  And I will

21  sign that order and get it filed tomorrow and that will -- I

22  won't say it's the end of the matter but it deals with this

23  portion of it.

24       Is there anything else from the point of view of --

25  given that Chegg was the moving party here initially, is there

40

1  anything else, Mr. Meal or Mr.~Saudek, from your point of view?

2       **MR. MEAL:**  Nothing else from me, Your Honor, and we're

3  very appreciative of your time today.

4       **THE COURT:**  All right.  Thank you very much.  Anything

5  else, Mr. Zajdel, from your point of view?

6       **MR. ZAJDEL:**  No, Your Honor.  Thank you for hearing

7  us.

8       **THE COURT:**  By the way, Mr.~Saudek, I wasn't trying to

9  be critical when I was talking about marketing or soliciting.

10 I mean it's perfectly clear that 16,000 people didn't call your

11 law firm.  You know, essentially if you did it's a heck of a

12 marketing effort.  I'll tell you we're laughing here.

13      But you filed an action that appeared to be a class

14 action and the Defendant responded by essentially applying the

15 fact that there is a binding arbitration agreement.  There's a

16 contract.  And so this matter could not be -- this matter could

17 not proceed in the form of a class action with everyone

18 together in one cause of action in light of the motion filed by

19 Chegg initially to compel arbitration which I granted.  And

20 this -- the case as to Mr. Lyles was dismissed without

21 prejudice.  So that's where we are.  I think we're pretty clear

22 on everything else.

23      So thank you all very much and everyone stay safe out

24 there in the pandemic.

25      (All Counsel - "Thank you, Your Honor.")

1           **THE COURT:**  That concludes the hearing.

2           **THE CLERK:**  This Honorable Court is now adjourned.

3           (Hearing adjourned.)

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, Ronda J. Thomas, Registered Professional Reporter,

5   Certified Realtime Reporter, in and for the United States

6   District Court for the District of Maryland, do hereby certify,

7   pursuant to 28 U.S.C. § 753, that the foregoing is a true and

8   correct transcript of the stenographically-reported proceedings

9   held in the above-entitled matter and the transcript page

10  format is in conformance with the regulations of the Judicial

11  Conference of the United States.

12

13                      Dated this 11th day of December 2020.

14

15                      _Ronda Thomas_

16                      _____

                        RONDA J. THOMAS, RPR, CRR
17
                        FEDERAL OFFICIAL COURT REPORTER
18

19

20

21

22

23

24

25

MR. COHEN: [2]  3/17
3/23
MR. MEAL: [16]  3/15
8/8 8/24 9/1 14/7 14/11
14/25 15/11 17/1 17/23
19/1 34/24 36/21 37/5
38/7 40/2
MR. SAUDEK: [1]  3/10
MR. TROJANOWSKI:
[1]  3/2
MR. ZAJDEL: [25]  2/22
3/7 5/9 19/21 23/5 23/8
23/15 23/21 24/6 24/11
24/14 24/18 24/21 25/5
25/10 25/22 26/3 28/8
33/14 33/19 34/12 37/2
38/14 38/20 40/6
THE CLERK: [1]  41/2
THE COURT: [45]

$
$16,000 [1]  24/17
$25,000 [2]  23/3 29/24
$3,400 [1]  31/3 32/8
32/11
$7.5 [3]  7/11 24/4 28/5
$7.5 million [3]  7/11
24/4 28/5

1
1,000 [3]  7/13 17/17
18/23
101 [1]  1/25
11th [1]  42/13
1332 [1]  4/17
1441 [1]  4/17
1446 [1]  4/17
148 [2]  26/14 26/17
15,000 [4]  7/7 17/16
18/21 23/6
16 [1]  32/6
16,000 [9]  23/9 23/19
24/23 25/1 25/15 26/1
26/1 27/21 40/10
16,351 [1]  7/20
16,691 [1]  7/20
19 [1]  2/13
19-3235 [1]  38/5
1998 [2]  26/14 26/16
1:19-cv-03235-RDB [1]
1/4

2
20 [2]  2/11 10/20
2009 [1]  35/21
2011 [2]  35/22 35/23
2014 [7]  6/14 6/15 27/3
32/24 32/25 35/15 35/15
2018 [1]  4/8
2019 [2]  4/15 4/18
2020 [4]  1/6 7/5 7/12
42/13

2020-20 [1]  2/11
2020-22 [1]  2/11
21 [1]  4/20
21-3 [1]  6/2
21-6 [1]  6/16
21201 [1]  1/25
22 [1]  2/11
24-4 [1]  6/16
25 [3]  2/5 4/24 14/18
259 [1]  27/3
26 [4]  2/8 5/2 10/20
39/18
266 [1]  27/3
27 [2]  9/10 14/18
27th [2]  2/4 4/21 6/8
28 [6]  4/16 5/5 10/21
26/9 39/19 42/7
29 [1]  4/8
29th [1]  4/4
2d [1]  35/21

3
3,400 [1]  30/25
30 [4]  6/15 7/5 32/25
35/15
30th [1]  18/22
3235 [1]  38/5
338 [1]  11/20
3849657 [1]  35/23
396 [1]  26/14
3:35 [1]  1/7

4
4,900 [1]  30/25
403 [1]  26/17
4th [2]  1/25 4/18

5
561 [1]  12/14
59 [2]  14/14 26/8
5th [1]  7/17

6
60 [3]  14/15 26/23 29/20
612 [1]  35/20
669 [1]  35/21

7
7.$5 million [1]  16/20
71 [1]  12/14
753 [1]  42/7
756 [1]  27/2

9
967 [1]  11/20

A
A's [3]  21/21 21/25 22/1
AAA [3]  18/21 23/7
23/13
ability [2]  17/9 17/10
able [2]  13/1 13/2
about [5]  4/5 4/8 19/2
20/20 40/9

above [3]  1/8 20/15 42/9
above-entitled [2]  1/8
42/9
absolutely [1]  18/20
accommodate [1]  26/19
according [6]  5/23 7/23
13/5 21/25 22/15 23/2
accordingly [2]  34/1
39/5
account [2]  7/16 26/20
Act [4]  6/11 9/3 9/15
35/11
action [35]  1/4 4/12 6/6
15/10 16/2 16/23 17/4
17/4 17/10 17/11 18/16
22/7 22/13 22/20 22/20
22/20 23/1 25/11 25/13
25/18 25/23 25/25 31/8
31/22 32/15 37/24 38/3
38/11 38/16 38/24 39/9
40/13 40/14 40/17 40/18
actions [5]  22/18 22/24
29/2 30/22 30/22
actual [1]  20/5
actuality [1]  22/18
actually [2]  2/11 17/23
20/1
additional [3]  2/24 7/13
18/23
address [3]  4/25 10/14
11/11
addressed [1]  38/4
addressing [2]  8/11
37/22
adjourned [2]  41/2 41/3
administrative [1]  22/4
advised [1]  23/13
after [5]  7/6 25/17 26/6
30/9 31/13
afternoon [10]  2/2 2/25
3/2 3/5 3/8 3/11 3/15
3/17 3/19 3/24
again [2]  4/2 11/5
against [4]  4/12 7/14
23/19 37/10
agree [6]  6/4 15/18
19/6 20/7 24/18 25/7
31/22 31/24 36/24 38/6
agreed [11]  6/14 30/21
30/24 30/25 32/4 32/5
32/5 32/6 32/24 35/14
36/1
agreement [63]
agreements [5]  9/6
12/13 29/23 33/1 35/19
agrees [1]  33/19
ahead [1]  37/4
Airlines [1]  35/22
all [40]  2/15 3/5 3/5 3/8
3/19 3/24 5/16 6/25 8/25
10/20 10/21 11/9 17/25
19/18 20/21 22/15 22/17
24/9 24/12 25/9 26/4

28/12 29/8 29/8 29/10
30/9 30/18 30/24 31/7
31/9 32/4 32/9 34/25
36/19 38/9 38/14 39/9
40/4 40/23 40/25
alleged [1]  17/20
almost [1]  29/8
already [3]  15/14 15/22
29/16
also [12]  1/19 2/19 3/1
3/3 3/12 10/6 10/11
11/12 14/23 18/2 21/19
27/5
Alternatively [1]  4/20
although [2]  19/1 29/5
always [1]  2/14
am [1]  27/7
ambiguity [3]  14/16
27/5 27/8
amend [1]  26/9
amended [2]  2/11 27/10
amending [1]  26/18
American [5]  7/8 7/9
7/21 26/13 28/3
among [1]  18/24
amount [3]  20/16 30/25
31/4
amounts [1]  15/9
analysis [2]  12/12 14/10
analyzing [1]  27/7
another [10]  5/3 7/13
13/4 27/23 33/5 33/8
33/8 34/10 36/8 37/7
answer [2]  13/24 21/3
any [22]  8/16 13/15
13/24 15/2 17/9 17/21
17/24 18/5 18/14 18/14
20/7 20/12 20/23 21/16
21/16 32/1 32/1 36/7
36/8 36/17 36/25 37/13
anyone [3]  23/12 29/4
38/1
anything [9]  19/4 19/10
20/13 22/1 33/16 33/16
39/24 40/1 40/4
apologize [3]  3/10 3/24
4/4
apologizes [1]  24/14
apparently [3]  7/4 7/24
27/21
appeared [1]  40/13
appears [1]  28/3
applicable [4]  9/6 9/13
10/10 28/20
application [1]  19/22
applying [2]  35/18 40/14
appreciate [3]  8/9 36/21
38/8
appreciative [1]  40/3
approach [1]  18/2
approaching [1]  16/20
appropriate [4]  11/10
17/8 17/12 18/11

April [9]  2/4 4/8 4/21 6/8
7/5 9/10 14/18 18/22
33/23
April 27 [2]  9/10 14/18
April 27th [1]  4/21
April 29 [1]  4/8
April 30 [1]  7/5
arbitrability [11]  9/19
12/17 13/12 13/20 14/1
15/4 15/14 15/15 18/6
18/8 37/7
arbitrate [12]  6/25 8/17
12/13 13/11 15/3 15/8
17/7 17/13 18/14 28/2
29/3 31/14
arbitrated [1]  20/19
arbitration [109]
arbitrations [2]  30/18
30/20
arbitrator [16]  9/19
11/11 14/23 15/1 16/23
17/19 18/3 21/10 21/14
27/17 27/20 29/18 31/25
36/10 36/17 37/12
are [27]  2/5 2/23 3/6
3/13 4/7 5/17 6/21 8/2
3/15 4/7 5/15 15/22 16/19
19/17 21/8 21/14 22/22
22/25 23/15 26/18 28/2
28/4 28/12 28/17 30/19
34/20 37/3 40/21
argues [1]  29/25
arguing [1]  16/5
argument [14]  10/19
12/24 13/5 13/9 13/14
13/23 20/12 20/14 20/22
21/22 31/4 31/18 31/20
35/16
arguments [3]  8/11
11/18 22/25
arises [2]  4/7 28/23
arising [2]  20/8 26/25
arrangement [1]  24/7
arrangements [1]  6/19
as [61]
aside [1]  32/11
ask [7]  14/2 14/12 24/13
24/24 26/4 32/19 34/21
asked [2]  24/16 33/15
asking [9]  16/9 16/13
28/18 29/20 30/12 34/18
34/20 34/23 36/2
assent [1]  35/25
asserting [1]  31/15
assertion [1]  31/7
asserts [1]  32/15
assign [2]  38/5 39/4
assigned [1]  39/6
associated [2]  7/10
16/19
Association [4]  7/8 7/9
7/21 28/3
assume [2]  14/12 18/19

**A**

assuming [1]  38/18
attached [1]  23/16
attempt [1]  19/22
audio [1]  2/9
August [1]  5/3
author [1]  26/9
authority [2]  12/6 21/17
available [2]  26/20 31/5
away [1]  21/18

**B**

back [4]  10/21 22/12
33/23 37/20
Baltimore [4]  1/6 1/25
4/14 5/22
based [5]  6/8 16/7 33/2
33/3 37/24
basically [1]  16/6
basis [8]  13/19 20/19
25/24 25/25 28/24 31/12
34/6 38/23
be [58]
because [30]  6/25 11/14
13/9 15/2 15/3 17/9
17/20 17/24 18/7 18/17
19/15 21/6 21/8 21/10
21/14 22/10 22/16 22/17
22/19 24/19 25/18 26/5
29/2 29/23 29/25 32/4
32/10 32/13 32/18 37/12
been [14]  2/11 3/25 3/25
4/4 8/16 15/2 16/17
22/13 31/9 34/9 34/16
34/22 36/7 38/2
before [16]  1/9 6/9
15/13 17/14 18/12 19/17
22/15 22/22 28/1 28/11
28/16 29/6 33/23 35/17
36/10 37/12
begin [1]  8/10
beginning [1]  5/3
behalf [15]  1/13 1/16
2/23 3/1 3/3 3/9 3/12
3/16 3/18 5/14 7/14 7/20
7/21 25/13 25/19
being [2]  8/4 21/14
believe [5]  5/14 9/2
12/25 23/16 28/9
below [1]  6/4
benefit [1]  19/16
BENNETT [1]  1/9
best [1]  16/3
between [8]  6/4 10/4
17/25 18/4 18/5 35/10
38/12 39/8
big [1]  21/19
binding [4]  6/5 20/3
20/10 40/15
bit [1]  3/25
both [1]  31/24
breach [22]  4/7 4/9 4/13
8/17 9/12 10/25 13/14

13/17 13/18 20/9 21/13
22/16 25/20 30/1 30/4
34/7 34/7 34/9 34/16
34/22 36/7 38/2
breached [11]  7/1 12/22
12/24 20/13 20/14 20/16
21/22 22/19 31/2 31/15
35/16
brief [6]  10/20 11/14
12/10 19/25 21/3 21/20
briefed [1]  21/18
briefs [3]  9/5 9/14 29/10
bring [3]  21/19 37/10
37/12
button [4]  5/24 6/13
32/24 35/14
bypass [2]  19/23 20/2

**C**

C-H-E-G-G [1]  2/3
California [16]  7/19 7/20
7/25 8/23 13/18 15/21
15/22 17/3 17/8 18/16
19/14 19/17 28/13 36/9
36/17 37/8
call [6]  2/19 3/20 13/25
24/23 25/15 40/10
called [3]  9/18 11/1
24/12
calling [1]  2/2
CAME [1]  1/8
campus [1]  5/22
can [16]  2/24 7/16 13/25
16/11 17/19 26/24 30/10
34/14 36/12 36/16 36/23
38/19 38/23 38/25 39/3
39/4
can't [3]  19/7 22/8 24/18
candid [1]  16/11
case [23]  2/4 4/7 5/7
7/15 9/4 9/24 10/12 11/6
11/13 13/2 15/13 25/4
25/21 29/11 31/11 31/22
34/4 38/4 38/5 38/5 39/4
39/5 40/20
cases [1]  29/9
catch [1]  3/25
CATHERINE [3]  1/20
2/14 2/18
cause [1]  40/18
cease [2]  10/23 13/18
Center [11]  9/4 9/24
10/4 10/8 10/12 11/10
12/12 12/16 12/19 12/25
15/7
certain [1]  6/3
certainly [13]  15/16
16/16 17/19 19/3 19/8
35/4 36/11 36/20 37/20
37/23 38/3 38/16 39/3
CERTIFICATE [1]  41/5
certification [1]  27/25
Certified [1]  42/5

certify [1]  42/6
challenge [21]  10/2 10/5
10/9 10/18 11/1 11/8
11/11 11/23 12/1 12/6
12/17 13/2 13/20 14/1
15/4 18/7 18/8 19/25
20/1 20/2 20/23
challenged [1]  20/22
challenging [3]  11/17
20/4 20/24
chambers [2]  39/12
39/13
change [3]  26/19 33/16
36/2
changing [1]  36/3
charge [1]  32/11
charges [1]  31/5
CHEGG [85]
Chegg's [8]  7/25 10/22
13/17 15/4 19/22 21/22
30/12 31/20
Chegg.com [3]  5/24
6/14 35/14
choose [1]  35/2
Circuit [15]  4/14 11/6
11/7 11/13 11/16 11/21
22/11 26/7 26/12 26/14
26/15 26/22 27/2 27/3
27/11
circumstances [1]  15/6
cite [1]  11/14
cites [1]  29/9
citing [1]  19/23
citizenship [4]  4/16
37/24 38/18 38/24
City [1]  4/14
CIVIL [3]  1/4 14/15
26/23
claim [5]  20/8 20/18
22/22 32/4 34/7
claimant [1]  22/3
claimants [2]  18/5 19/6
claims [3]  6/25 26/1
31/25
Clara [10]  7/19 8/23
15/21 15/23 16/24 33/10
36/9 36/17 37/8 37/10
clarification [21]  2/7 5/1
6/24 8/1 9/9 14/5 15/25
28/19 28/25 32/20 33/2
34/14 35/5 35/7 36/20
36/21 36/24 36/25 38/8
39/16 39/16
clarified [1]  27/11
clarify [6]  14/16 16/6
16/13 27/10 34/20 36/11
clarifying [1]  36/5
class [15]  4/12 6/6
25/13 25/18 25/23 25/25
27/20 27/24 28/11 30/21
32/1 32/15 39/9 40/13
40/17
classwide [2]  6/7 31/12

clause [38]  8/13 9/18
9/18 9/25 10/3 10/7
10/13 10/18 10/19 10/24
11/3 11/8 11/17 12/2
12/5 12/10 12/11 12/16
12/18 12/20 15/5 19/22
19/23 19/25 20/1 20/2
20/4 20/6 20/11 20/13
20/22 20/24 20/25 21/1
21/6 21/10 21/18 29/18
clauses [2]  30/8 30/8
clear [10]  8/20 9/22
12/12 14/4 26/21 36/16
37/6 37/9 40/10 40/21
clearly [11]  10/8 14/18
16/15 25/15 26/10 32/23
34/14 35/8 35/9 35/23
39/6
clerical [1]  26/24
clerk [6]  1/20 2/15 2/16
2/18 38/5 39/4
click [1]  35/24
clicking [4]  5/24 6/13
32/23 35/13
clickwrap [4]  6/19 33/1
35/19 35/24
client [5]  15/20 16/25
23/3 32/24 37/25
clients [1]  25/7
closed [2]  2/4 11/19
closing [1]  4/2
co [1]  3/13
co-counsel [1]  3/13
Code [2]  6/12 35/12
codified [2]  6/12 35/11
COHEN [2]  1/18 3/17
colleague [1]  36/16
college [1]  5/19
come [2]  30/10 31/2
coming [1]  32/14
commenced [2]  18/16
22/2
committed [1]  17/20
common [1]  39/11
company [2]  26/13
38/22
compel [8]  4/19 4/23
7/18 29/13 29/13 32/17
34/2 40/19
complaint [3]  4/22 22/8
22/11
complaints [1]  24/25
complete [1]  22/6
concerned [1]  35/2
concludes [1]  41/1
conclusion [2]  30/10
32/9
conduct [3]  11/23 11/24
21/13
conducted [1]  39/13
conducting [3]  2/5 2/9
2/12
Conference [1]  42/11

conformance [2]  42/10
confusion [1]  4/1
connection [1]  25/3
consider [1]  22/9
considering [1]  21/21
consistent [2]  2/10
35/19
consolidate [2]  31/22
31/25
consumer [2]  7/10
16/19 24/4
consumers [1]  30/5
contained [4]  5/25 8/13
10/13 12/20
contains [2]  9/17 9/25
contended [2]  7/5 7/12
contending [1]  7/15
contends [1]  6/24
contention [1]  38/1
contest [1]  11/18
context [3]  15/12 15/16
17/22
continued [1]  12/6
continuing [3]  13/10
15/7 17/13
contract [11]  9/6 9/13
10/10 29/12 31/16 33/3
33/22 37/25 38/2 38/12
40/16
contracted [1]  5/21
contractual [4]  20/14
20/17 24/7 32/12
contractually [2]  30/20
30/24
controlling [1]  26/19
controversy [1]  20/8
coordinates [1]  2/15
coordinating [1]  2/18
corporation [1]  8/21
correct [42]  3/6 3/7 3/22
3/23 8/23 8/24 14/6
14/24 18/25 19/3 19/9
19/24 23/5 23/8 23/13
23/14 23/15 23/20 23/21
24/2 24/6 24/15 25/4
25/21 25/22 26/3 26/20
26/24 27/5 28/7 28/8
33/13 33/14 33/14 34/11
34/12 34/23 36/20 37/2
37/23 38/13 42/8
correctly [1]  5/4
CORY [2]  1/14 2/22
cost [3]  7/3 31/19 32/8
CoStar [1]  35/20
costs [1]  21/24
could [17]  8/19 15/11
17/21 17/21 17/23 19/13
22/19 32/3 32/3 34/10
36/15 37/23 38/10 38/12
38/16 40/16 40/16
counsel [8]  2/20 2/24
3/13 8/4 8/5 16/16 36/14
40/25

## C

County [6]  5/22 7/19
15/23 16/24 33/10 36/9
course [2]  18/11 33/20
court [82]
Court's [6]  7/25 14/16
27/6 27/8 29/12 35/19
courthouse [1]  4/2
courtroom [1]  2/16
courts [2]  6/18 32/25
covenant [1]  12/21
covenants [1]  12/23
covers [1]  21/3
COVID [1]  2/13
COVID-19 [1]  2/13
critical [1]  40/9
CRR [2]  1/24 42/16
current [1]  2/10
currently [1]  28/12
customer [1]  5/21
customers [1]  24/7
customers' [1]  4/10
cuts [1]  30/17
cv [1]  1/4

## D

damages [4]  20/15
23/24 30/3 30/6
data [5]  4/7 4/9 4/13
25/20 30/4
Dated [1]  42/13
DAVID [4]  1/15 1/18 3/2
3/17
day [1]  42/13
days [3]  7/5 25/17 26/9
deal [4]  8/15 30/21 39/7
39/9
dealing [3]  12/21 12/24
30/2
deals [1]  39/22
dealt [1]  15/14
December [3]  1/6 4/18
42/13
decide [5]  15/7 15/15
15/16 18/17 18/18
decided [2]  21/14 32/13
decides [1]  28/13
deciding [1]  21/9
decision [1]  30/16
decisis [4]  19/5 19/8
19/10 19/12
declaratory [6]  15/9
16/1 37/23 38/10 38/15
38/24
deep [1]  5/6
defeat [1]  18/6
Defendant [8]  1/5 1/16
3/9 4/8 4/19 27/9 34/2
40/14
Defendant's [4]  2/6 4/23
5/1 35/4
Defendants [1]  6/23
defense [1]  9/13

defenses [2]  9/7 10/10
definitively [1]  19/7
Delaware [1]  8/22
delegation [34]  8/13
9/18 9/25 10/3 10/7
10/13 10/18 10/19 10/24
11/3 11/8 11/17 12/2
12/5 12/10 12/11 12/16
12/18 12/20 15/5 19/22
19/23 19/25 20/1 20/2
20/4 20/6 20/11 20/21
20/22 20/23 20/25 21/1
29/18
Delta [1]  35/22
demand [9]  7/2 22/5
22/5 23/4 23/23 23/24
29/24 29/24 32/17
demanded [1]  23/3
demands [14]  7/7 7/11
7/13 7/22 16/20 17/17
17/17 18/21 18/24 23/7
23/9 23/19 24/9 25/2
denied [1]  39/20
deny [1]  35/5
dependent [1]  13/11
Deputy [2]  2/15 2/16
described [1]  6/3
desired [1]  33/7
determination [7]  7/25
14/9 14/21 15/25 16/21
27/15 33/7
determinations [4]
29/21 29/22 30/4 30/10
determine [2]  27/19
33/11
determined [3]  6/20
27/16 27/20
determining [1]  26/11
did [11]  6/11 10/17
10/21 11/21 19/24 20/13
24/23 25/15 31/18 33/25
40/11
didn't [3]  22/12 29/3
40/10
different [3]  22/7 24/20
24/22
direct [2]  10/17 11/8
directed [9]  10/2 10/5
10/6 10/6 10/10 11/2
11/24 12/1 15/4
directing [1]  4/23
direction [1]  10/19
directly [1]  11/5
Direnfeld [1]  3/21
disagree [2]  17/1 25/5
disagreement [1]  29/7
disclaimer [1]  30/7
Discovery [3]  5/5 35/6
39/20
discretion [1]  14/22
discussed [2]  9/4 9/14
discussion [1]  27/3
Dismiss [2]  4/20 25/18

dismissal [2]  6/21 28/10
dismissed [3]  4/21 34/5
40/20
dispositive [1]  12/4
dispute [2]  20/7 21/11
disputes [3]  6/3 6/4
21/13
distinction [1]  10/3
district [5]  1/1 1/1 27/5
42/6 42/6
diversity [4]  4/16 37/24
38/17 38/23
DIVISION [1]  1/2
do [16]  8/10 11/7 11/9
18/20 18/23 21/5 21/5
28/13 29/10 30/12 31/16
31/21 32/5 35/2 35/2
42/6
does [5]  9/25 12/13
15/10 32/12 33/16
doesn't [5]  16/5 17/9
18/9 26/10 31/18
doing [2]  31/16 32/20
don't [11]  16/21 18/14
20/1 21/7 28/21 28/24
29/3 30/14 33/15 35/16
36/25
done [1]  21/25
DOUGLAS [2]  1/17 3/16
down [1]  4/2
draws [1]  10/4
due [1]  30/19

## E

earlier [4]  11/13 11/20
17/17 35/20
education [1]  5/18
effect [5]  8/12 19/5 19/8
19/10 19/13
effort [1]  40/12
efforts [2]  2/17 30/4
else [7]  23/12 34/4
39/24 40/1 40/2 40/5
40/22
employs [1]  11/18
end [3]  25/16 27/22
39/22
enforceability [15]  9/20
10/4 10/15 11/19 12/7
14/9 14/22 16/22 27/19
30/8 33/5 33/8 33/11
36/6 39/8
enforceable [11]  16/3
16/8 17/20 17/24 18/4
27/13 27/16 28/23 29/17
33/4 38/11
enforced [1]  29/16
enforcement [1]  20/9
enforcing [2]  29/11
29/14
entered [1]  28/10
entertain [2]  12/6 13/2
entirety [1]  11/23 12/1

entitled [2]  1/8 42/9
entity [2]  5/18 15/5
entry [1]  26/6
error [1]  26/21
ESQUIRE [6]  1/14 1/15
1/15 1/17 1/18 1/18
essence [2]  9/8 18/6
essentially [26]  4/3 4/4
4/6 4/11 5/7 5/17 5/23
6/2 6/9 6/23 7/15 14/16
16/9 23/18 24/8 26/15
26/17 29/12 33/6 33/10
33/22 34/8 34/20 35/23
40/11 40/14
et [1]  6/12
Evelius [1]  3/12
even [5]  16/2 22/15 26/7
29/23 31/17
everyone [2]  2/2 29/6
33/19 40/17 40/23
everything [1]  40/22
evidence [1]  26/20
exactly [1]  11/21
exceed [1]  21/24
except [2]  6/3 28/11
exception [1]  37/1
Excuse [1]  32/16
exercise [2]  13/12 35/2
exercised [2]  10/23
13/21
existence [1]  33/3
existing [1]  38/2
expeditious [1]  16/4
expenses [1]  31/20
expensive [1]  30/17
experienced [2]  4/9
39/2
explain [1]  25/6
exposure [1]  4/10
expressed [1]  10/19
expressly [1]  10/17
extent [7]  20/20 22/24
25/22 28/1 30/6 37/18
38/22

## F

F.2d [1]  35/12
F.3d [4]  11/20 26/14
26/17 27/2
fact [22]  10/18 10/21
11/1 12/10 12/15 13/11
13/12 13/20 15/13 15/14
15/21 16/7 16/19 17/19
19/13 21/19 28/1 30/18
34/12 34/19 34/25 40/15
facts [3]  4/6 17/15 22/15
factual [2]  29/21 30/3
failing [1]  20/17
fair [5]  12/21 12/23
20/16 24/22 30/2
faith [3]  12/21 12/23
30/2
far [1]  35/1

fashion [2]  36/12 38/13
Federal [9]  1/24 6/11 9/2
9/15 14/14 26/7 26/23
35/11 42/17
fee [4]  22/6 22/10 22/12
22/23
fees [14]  7/10 7/16
16/19 18/9 22/17 23/13
24/4 28/5 30/19 30/21
30/24 31/8 31/9 32/14
fellow [2]  18/5 19/5
Field [2]  34/18 35/20
file [12]  6/17 22/7 22/8
24/25 25/2 25/18 31/22
37/23 38/3 38/4 38/23
38/24
filed [34]  4/11 4/13 4/19
5/2 6/23 7/7 7/13 7/18
7/21 18/22 20/18 22/9
22/11 22/20 23/3 23/6
23/9 23/18 23/18 23/22
25/11 25/13 25/17 30/1
30/18 30/23 31/11 31/14
32/4 38/11 39/1 39/21
40/13 40/18
filing [18]  7/1 7/10 16/19
20/15 21/23 22/1 22/5
22/6 22/10 22/12 22/13
22/17 22/23 23/13 24/4
30/24 32/13 32/14
final [1]  29/10
find [3]  29/19 30/2 34/7
finding [1]  33/4
findings [1]  30/6
fine [2]  5/16 5/16
Fire [1]  26/13
firm [16]  3/6 7/6 7/13
7/18 18/22 18/22 23/8
24/12 24/24 25/1 25/7
25/12 27/2 27/22 31/21
40/11
first [8]  2/21 15/6 28/18
29/7 30/2 32/9 32/20
33/15
fits [1]  12/25
Floor [1]  1/25
forcing [1]  29/14 31/3
foregoing [1]  42/7
foregone [1]  32/9
forever [1]  21/15
form [3]  16/1 32/1 40/17
format [1]  42/10
formed [4]  6/10 33/24
33/25 35/10
former [1]  5/20
forth [3]  35/3 39/15
39/17
fortunately [1]  9/22
forum [8]  33/5 33/8 33/9
34/10 36/8 37/7 37/14
38/15
forward [2]  25/23 31/12
found [6]  27/1 32/23

**F**

**found... [4]** 34/15 35/8 35/11 36/5
**foundational [1]** 20/21
**four [1]** 4/5
**Fourth [13]** 11/6 11/7 11/13 11/16 11/21 26/7 26/12 26/14 26/15 26/22 27/2 27/3 27/4
**frankly [1]** 16/23
**frivolous [4]** 7/2 21/23 29/24 30/11
**fully [1]** 19/2
**further [1]** 15/2
**Fusha [1]** 35/22
**future [2]** 13/15 13/19

**G**

**Gallagher [1]** 3/12
**GAMPER [2]** 1/20 2/19
**gateway [1]** 9/19
**gather [3]** 3/19 8/6 23/6
**general [2]** 9/15 20/14
**generally [3]** 9/6 9/13 10/9
**get [4]** 17/6 17/15 29/23 39/21
**gets [3]** 21/7 28/17 31/17
**getting [1]** 5/6
**given [2]** 15/20 39/25
**glad [4]** 8/3 8/7 13/24 19/20
**go [3]** 37/4 37/18 38/25
**goes [2]** 21/18 21/21
**going [8]** 5/10 10/21 18/3 20/6 21/9 28/14 32/13 35/5
**good [13]** 2/2 2/25 3/2 3/5 3/8 3/11 3/15 3/17 3/19 3/24 12/21 12/23 30/2
**got [1]** 36/20
**gotten [1]** 36/19
**governs [2]** 6/12 35/12
**granted [8]** 4/22 26/11 34/1 34/2 35/4 39/16 39/18 40/19
**granting [1]** 25/17
**grants [2]** 33/6 33/6
**grasping [1]** 28/17
**ground [1]** 39/11
**grounds [1]** 26/18
**group [2]** 20/19 25/10
**guidance [1]** 9/23

**H**

**had [10]** 17/13 22/10 22/13 25/18 30/24 31/13 31/16 34/13 35/22 35/24
**half [3]** 32/7 32/20 32/21
**handle [1]** 39/13
**handling [2]** 8/6 16/4

**happen [3]** 17/21 18/24 22/10
**happened [1]** 22/18
**happens [2]** 21/12 38/14
**happy [1]** 21/3
**has [33]** 2/11 3/20 3/25 4/3 6/24 7/24 8/16 9/16 12/5 15/2 15/20 17/4 17/5 18/18 18/20 18/23 20/12 20/21 21/2 22/18 22/21 23/9 23/11 23/21 26/12 27/14 29/16 31/15 33/15 34/9 34/21 36/7 38/2
**hasn't [3]** 21/16 21/25 32/10
**have [61]**
**haven't [3]** 19/2 19/2 36/19
**having [5]** 19/12 28/17 28/24 38/4 39/9
**Haynes [2]** 11/13 11/16
**he [17]** 3/20 5/21 19/14 19/15 19/16 20/16 22/19 25/11 25/11 25/11 31/12 31/13 31/14 31/15 31/16 32/6 38/20
**he's [2]** 35/16 38/21
**headed [2]** 37/17 37/20
**hear [6]** 8/3 8/5 8/7 16/15 19/18 19/20
**hearing [8]** 1/8 2/6 4/25 39/14 39/17 40/6 41/1 41/3
**heck [1]** 40/11
**held [3]** 11/7 33/24 42/9
**here [49]**
**hereby [1]** 42/6
**herring [2]** 13/4 13/9
**Herrington [1]** 3/21
**high [1]** 5/19
**highlight [1]** 21/20
**him [6]** 11/25 19/17 20/18 25/12 31/16 37/11
**himself [1]** 23/25
**his [19]** 11/24 11/24 19/16 20/16 20/18 21/22 23/3 23/16 23/22 23/22 23/24 23/24 25/11 25/13 30/16 30/23 31/11 31/15 32/12
**Honor [65]**
**Honor's [2]** 9/10 19/11
**HONORABLE [2]** 1/9 41/2
**hopeful [1]** 19/14
**how [2]** 30/23 36/1

**I**

**I'll [8]** 8/3 8/5 8/7 8/10 8/15 16/15 19/20 40/12
**I'm [16]** 8/20 13/24 14/3

14/4 20/6 21/3 21/5 24/2 35/1 35/5 35/7 36/2 36/3 36/5 36/11 36/15
**I've [2]** 22/10 36/2
**idea [1]** 28/22
**identifiable [1]** 4/10
**identify [1]** 2/20
**impact [1]** 28/14
**implied [2]** 12/21 12/23
**important [2]** 11/12 20/5
**imposed [1]** 18/10
**imposing [1]** 7/2
**improper [1]** 8/12
**inaccurate [1]** 20/23
**INC [1]** 1/4
**include [1]** 18/24
**included [2]** 26/1 31/6
**including [2]** 7/14 9/19
**incorporated [5]** 2/4 3/9 4/9 8/21 39/10
**incorrect [2]** 24/11 28/9
**increased [1]** 31/19
**incur [1]** 18/9
**independently [1]** 13/21
**indicated [2]** 19/14 25/15
**indicates [1]** 14/17
**individual [5]** 6/5 20/18 23/22 28/2 38/22
**individually [1]** 20/19
**individuals [2]** 7/20 25/6
**Info [1]** 35/20
**information [1]** 4/10
**informed [2]** 7/9 23/11
**initial [3]** 7/11 10/22 10/22
**initially [3]** 24/24 39/25 40/19
**initiate [1]** 22/22
**initiated [2]** 22/3 22/21
**injustice [2]** 14/14 26/21
**instance [1]** 15/6
**Insurance [2]** 26/13 26/14
**intended [4]** 14/5 14/19 16/14 27/11
**intent [2]** 27/6 27/9
**interpretation [1]** 20/9
**interpreted [1]** 27/9
**interrupt [1]** 8/19
**intervening [1]** 26/19
**introduce [2]** 2/24 3/13
**invalidated [3]** 9/6 9/11 10/1
**irrelevant [1]** 12/11
**is [181]**
**isn't [3]** 13/11 17/10 18/15
**issue [29]** 6/9 9/1 10/14 11/15 12/4 12/5 13/24 13/25 15/13 15/16 17/12 18/3 18/18 19/15 20/21 21/3 21/5 21/6 21/18

27/18 27/19 28/23 33/22 35/6 37/6 37/19 38/15 38/16 39/7
**issues [5]** 9/19 9/20 19/16 21/9 30/3
**it [74]**
**it's [36]** 7/12 10/18 11/15 13/17 13/17 14/11 15/15 16/23 19/1 20/5 22/7 22/9 24/4 25/22 26/17 26/18 27/23 28/8 28/9 28/9 29/20 30/25 31/5 31/5 33/8 34/2 34/14 34/15 35/7 35/17 37/9 38/4 39/4 39/22 40/10 40/11
**its [12]** 4/10 10/17 10/23 12/20 13/12 13/13 13/21 15/20 21/17 24/7 26/6 32/15
**itself [1]** 16/15

**J**

**JABARI [6]** 1/3 2/23 4/11 22/17 31/10 31/11
**JEFFREY [2]** 1/15 3/1
**joining [1]** 21/23
**Jonathan [1]** 3/20
**Jones [1]** 3/12
**judge [1]** 19/14
**judgment [12]** 15/10 16/1 26/6 26/9 26/10 26/18 27/1 29/11 37/24 38/10 38/16 38/24
**judgments [1]** 29/10
**judicial [2]** 36/16 42/10
**July [1]** 7/12
**July 1 [1]** 7/12
**June [1]** 7/9
**June 8 [1]** 7/9
**jurisdiction [11]** 14/16 15/15 17/4 17/5 18/13 18/18 35/1 35/2 37/9 37/11 37/15
**just [28]** 8/19 8/20 9/16 10/10 11/2 11/14 14/2 15/1 16/11 16/22 17/15 17/16 20/3 20/6 20/24 21/18 22/8 28/6 33/16 33/21 36/22 36/23 36/23 37/5 37/9 38/19 39/1 39/9
**justifiable [1]** 15/19

**K**

**Katina [1]** 2/16
**key [1]** 10/3
**kind [4]** 6/19 14/3 17/21 35/19
**know [5]** 15/23 16/21 22/10 35/17 40/11

**L**

**L-Y-L-E-S [1]** 2/3

**language [2]** 10/12 26/22
**laughing [1]** 40/12
**law [25]** 1/20 2/18 3/6 6/18 7/6 7/13 7/18 13/18 18/22 18/22 23/8 24/12 24/23 25/1 25/7 25/12 26/7 26/19 26/21 27/2 31/21 33/1 35/8 35/18 40/11
**laws [1]** 8/22
**lawsuit [3]** 4/12 4/13 6/6
**least [1]** 10/6
**leave [5]** 5/4 33/5 35/6 39/19
**leaving [1]** 37/6
**left [4]** 16/22 16/22 33/8 34/10
**legal [3]** 21/11 29/22 30/6
**length [2]** 9/5 9/14
**let [9]** 14/2 14/12 17/15 19/18 24/20 24/22 32/19 34/13 36/23
**let's [2]** 14/12 18/19
**letter [1]** 10/22 10/22
**letters [3]** 22/21 23/16 23/17
**letting [1]** 4/5
**leveled [2]** 12/17 12/18
**leveling [1]** 13/3
**liability [3]** 30/3 30/7 30/8
**lie [2]** 14/23 16/3
**light [8]** 2/9 2/12 6/19 15/21 16/17 16/18 38/4 40/18
**like [1]** 32/14
**likely [1]** 19/1
**limitation [1]** 9/16
**limitations [1]** 30/7
**Limited [5]** 5/4 35/6 39/20
**linchpins [1]** 29/25
**line [1]** 3/22
**literally [1]** 28/4
**litigated [1]** 38/12
**litigation [1]** 27/21
**live [2]** 21/11 21/14
**located [1]** 15/21
**Lombard [1]** 1/25
**long [2]** 10/9 12/16
**longer [6]** 6/24 17/24 18/15 21/8 27/13 37/13
**look [1]** 20/5
**looks [1]** 36/18
**Lyle's [1]** 13/14
**LYLES [78]**
**Lyles' [6]** 9/12 10/25 11/23 12/9 18/5 19/5

**M**

**made [8]** 8/11 12/9

**M**

**made... [6]** 12/15 17/7 20/12 20/13 20/23 24/7
**main [1]** 25/12
**make [20]** 8/20 12/24 16/25 18/8 24/20 24/22 27/15 28/24 29/2 29/21 30/3 30/6 30/16 30/16 31/7 31/8 33/4 36/15 36/22 37/5
**makes [2]** 12/12 29/22
**making [2]** 11/7 11/10
**manifest [1]** 14/14 26/21
**manifested [1]** 35/25
**many [2]** 29/21 29/21
**MARK [4]** 1/18 3/11 3/15 5/13
**marketed [5]** 24/21 25/1 25/16 27/22 27/23
**marketing [3]** 25/8 40/9 40/12
**MARYLAND [19]** 1/1 1/6 1/25 3/6 5/20 5/22 6/18 7/6 18/23 22/11 24/24 33/1 35/8 35/18 38/1 38/20 38/21 38/23 42/6
**material [6]** 8/17 9/12 10/25 13/14 13/17 13/18
**materially [1]** 7/1
**materials [2]** 5/18 7/23
**matter [17]** 1/8 2/3 8/3 14/21 16/1 16/23 27/7 27/24 28/6 30/23 33/7 33/9 35/1 39/22 40/16 40/16 42/9
**matters [3]** 4/1 4/3 6/21
**may [12]** 9/6 10/1 10/14 11/17 14/17 14/23 15/18 15/18 16/22 27/5 31/25 32/1
**McNair [1]** 27/2
**me [35]** 2/23 3/12 6/9 14/2 14/12 15/19 15/19 15/23 15/25 16/4 16/13 16/22 17/15 19/18 21/2 22/12 24/2 24/20 24/22 27/15 28/1 32/16 32/19 33/12 33/23 34/13 34/18 34/20 35/17 36/2 36/10 36/23 38/6 39/6 40/2
**MEAL [12]** 1/17 3/16 5/14 8/6 8/19 14/2 23/16 27/14 34/13 36/19 37/4 40/1
**mean [4]** 12/14 31/17 33/6 40/10
**meaning [1]** 32/5
**mechanics [1]** 15/20
**meet [1]** 11/9
**memorandum [6]** 2/5 6/8 7/6 14/17 23/16 25/17

**mentioned [2]** 37/8 37/8
**merits [9]** 8/15 12/25 14/1 14/10 16/1 21/22 25/3 29/21 31/17
**might [2]** 13/24 38/15
**million [4]** 7/11 16/20 24/4 28/5
**mind [1]** 19/16
**minimum [1]** 19/4
**minute [2]** 16/16 38/19
**misconduct [1]** 11/24
**mistake [2]** 26/24 26/25
**mistaken [1]** 24/3
**mockery [1]** 29/22
**Modification [3]** 2/7 5/1 9/9
**moment [1]** 18/17
**money [1]** 31/4
**moot [1]** 39/20
**more [6]** 16/25 19/5 19/7 19/10 23/9 31/25
**most [1]** 16/3
**motion [28]** 2/6 4/19 4/23 5/1 5/3 5/4 6/23 7/25 8/12 8/12 9/8 15/17 25/18 26/9 26/11 27/9 28/14 29/12 29/13 32/17 32/20 34/2 35/4 35/5 35/6 39/15 39/19 40/18
**motions [2]** 1/8 28/2
**move [2]** 25/23 31/12
**moved [2]** 7/24 15/24
**moving [1]** 10/20 39/25
**MR [17]** 2/25 5/8 5/13 9/12 19/19 19/20 24/16 28/7 32/19 36/24 38/9 39/2 39/3 39/3 40/1 40/1 40/8
**Mr. [80]**
**Mr. Chegg [1]** 29/5
**Mr. Lyle's [1]** 13/14
**Mr. Lyles [62]**
**Mr. Lyles' [5]** 10/25 11/23 12/9 18/5 19/5
**Mr. Meal [9]** 5/14 8/6 8/19 14/2 23/16 27/14 34/13 36/19 37/4
**Mr. Saudek [1]** 5/10
**Mr. Zajdel [1]** 40/5
**Ms. [2]** 36/13 39/12
**Ms. Thomas [1]** 36/13
**Ms. Tyson [1]** 39/12
**much [4]** 8/8 8/25 40/4 40/23
**my [29]** 2/5 2/18 4/6 4/7 5/23 6/8 6/20 7/6 7/23 14/5 14/8 14/17 15/24 16/6 18/20 23/8 23/8 24/14 25/7 25/12 25/17 29/7 31/21 32/23 34/18 36/15 36/16 38/4 39/12

**N**

**name [1]** 23/22
**National [1]** 26/13
**necessarily [2]** 26/10 27/14
**necessary [1]** 31/8
**need [3]** 11/9 28/21 37/18
**needs [2]** 29/21 30/2
**new [1]** 26/20
**no [37]** 1/4 6/24 13/10 13/11 14/25 17/6 17/20 17/24 20/2 21/8 22/2 22/2 22/7 22/13 22/13 22/19 22/20 22/20 24/14 27/12 28/10 29/6 29/11 30/23 33/4 34/4 34/11 35/1 36/2 37/9 37/11 37/11 37/12 37/13 38/10 39/9 40/6
**nobody [1]** 28/11
**NORTHERN [1]** 1/2
**not [68]**
**note [3]** 6/18 39/1 39/4
**noted [6]** 6/20 26/17 27/4 27/4 33/23 35/13
**notes [1]** 4/7
**nothing [8]** 18/20 18/23 19/7 22/13 22/18 31/10 31/19 40/2
**notice [2]** 6/1 6/2
**noticed [1]** 35/24
**noting [3]** 6/24 32/25 39/13
**November [1]** 4/15
**November 8 [1]** 4/15
**now [12]** 2/11 9/14 10/17 16/19 27/18 27/21 28/4 29/17 31/9 31/15 36/19 41/2
**number [14]** 2/5 2/8 4/20 4/24 5/2 5/5 6/2 6/16 6/16 14/18 37/11 38/5 39/17 39/19
**nutshell [1]** 34/23

**O**

**obfuscates [1]** 27/6 27/8
**objection [1]** 34/11
**obligation [9]** 6/25 8/16 13/10 13/15 15/3 15/8 17/7 17/13 18/14
**obtain [1]** 37/19
**obviously [3]** 24/17 25/14 39/2
**occurred [2]** 4/8 22/13
**occurs [1]** 21/13
**October [3]** 4/4 7/17 7/17
**October 5th [1]** 7/17
**office [3]** 3/21 8/22 15/20

**offices [1]** 24/9
**Official [3]** 1/24 42/1 42/17
**okay [5]** 5/16 8/25 20/25 36/23 39/11
**omission [1]** 26/25
**once [1]** 30/17
**one [26]** 3/20 7/14 8/20 8/20 9/25 10/6 15/14 16/10 18/24 23/19 25/2 26/18 26/25 29/6 29/25 31/22 31/25 32/4 32/7 34/4 36/2 36/15 36/22 37/5 38/19 40/18
**onerous [2]** 7/3 22/17
**only [16]** 3/20 6/9 10/2 14/18 15/12 18/18 18/25 23/19 28/15 28/16 30/9 31/20 32/7 32/11 33/22 34/21
**open [3]** 15/16 15/19 36/8
**opening [1]** 4/1
**operable [2]** 14/18 14/19
**operate [4]** 14/5 14/20 16/14 27/11
**opine [2]** 6/18 33/1
**opinion [10]** 5/23 6/8 6/20 7/6 26/14 26/15 27/3 33/3 35/21 35/22
**opinions [2]** 19/24 35/20
**opportunity [1]** 8/9
**opposed [2]** 31/12 32/21
**opposition [2]** 8/11 12/9
**order [29]** 2/5 2/7 2/10 5/2 11/9 13/1 14/5 14/18 14/23 16/6 16/13 16/14 21/8 25/17 27/1 27/10 27/12 28/14 28/19 29/2 29/4 29/11 29/14 29/19 29/23 32/22 32/23 39/12 39/21
**original [2]** 27/6 27/8
**Orrick [4]** 3/13 3/16 3/18 3/21
**other [17]** 11/19 16/10 17/17 21/17 21/23 25/6 26/2 27/1 28/12 29/6 29/8 30/15 30/18 30/19 30/22 32/6 37/14
**others [1]** 25/20
**otherwise [3]** 13/25 31/24 32/1
**our [29]** 8/9 8/11 8/12 8/15 9/8 9/8 10/19 10/20 11/1 11/1 11/14 11/23 11/24 11/25 12/1 12/6 12/24 13/4 13/9 13/14 13/19 13/23 14/1 15/17 18/11 21/3 21/20 37/13 37/14

39/2
**ourselves [2]** 18/4 18/5
**out [10]** 4/7 11/1 20/8 28/18 29/14 29/22 31/4 36/16 38/22 40/23
**out-there [1]** 30/16
**over [12]** 3/10 7/11 10/20 16/20 17/4 17/5 18/13 24/4 28/4 32/1 37/11 37/15
**oversight [1]** 26/25
**own [3]** 12/20 23/22 23/22

**P**

**p.m [1]** 1/7
**PA [1]** 27/2
**Pacific [1]** 26/13
**page [5]** 10/20 10/20 10/21 27/3 42/9
**Page 20 [1]** 10/20
**Page 26 [1]** 10/20
**Page 266 [1]** 27/3
**Page 28 [1]** 10/20
**Pages [1]** 10/20
**Pages 3 [1]** 10/20
**paid [3]** 22/6 22/10 22/23
**pandemic [3]** 2/10 2/13 40/24
**Paper [12]** 2/5 2/7 4/20 4/24 5/2 5/5 6/2 6/15 6/16 14/18 39/17 39/19
**papers [2]** 7/5 23/3
**Paragraph [1]** 6/16
**Paragraph 4 [1]** 6/16
**part [5]** 24/14 25/10 27/1 33/6 33/16
**partial [1]** 28/9
**partially [4]** 4/1 4/2 28/8 28/9
**participate [2]** 6/6 25/23
**particular [2]** 9/10 10/9
**particularly [1]** 16/18
**parties [5]** 4/23 6/10 33/23 34/3 39/14
**parties' [2]** 7/1 9/5
**party [7]** 11/17 17/2 17/3 17/10 18/15 28/16 39/25
**pay [6]** 7/16 30/21 30/24 30/25 31/3 32/13
**pending [6]** 2/6 5/1 7/25 15/24 22/20 23/1
**people [14]** 21/24 24/12 24/17 24/23 25/2 25/14 25/15 26/2 27/22 28/12 30/18 31/21 32/7 40/10
**people's [1]** 30/19
**per [1]** 15/6
**perfectly [1]** 40/10
**performance [3]** 10/23 13/15 13/19

**P**

person [1] 29/14
person's [1] 31/25
personally [1] 4/10
petition [1] 7/18
phone [1] 2/3
phrase [2] 24/20 24/22
place [1] 21/9
plaintiff [13] 1/3 1/13
2/21 4/11 5/4 5/8 5/20
6/14 7/1 7/14 8/5 25/12
33/6
Plaintiff's [5] 4/22 6/25
16/16 35/5 39/19
please [1] 2/21
point [18] 5/8 5/12 9/2
11/6 11/15 12/15 13/3
24/1 24/25 28/4 29/7
33/21 36/22 36/24 37/5
39/24 40/1 40/5
portion [2] 28/18 39/23
position [3] 8/9 8/16 9/8
posture [4] 5/7 5/11
14/13 28/4
postured [1] 25/3
potentially [1] 37/20
Practice [1] 26/7
precautions [1] 2/13
precedent [1] 20/3
precisely [1] 37/22
preclude [1] 16/5
predicated [3] 27/12
34/14 34/16
prejudice [4] 4/22 28/10
34/5 40/21
prepare [2] 36/15 39/12
prepared [2] 36/12
36/14
present [5] 1/19 8/9
17/12 17/19 18/3
presented [1] 31/9
presenting [1] 18/7
preside [1] 32/1
presumably [2] 26/1
27/24
pretends [1] 29/5
pretty [1] 40/21
prevail [1] 18/19
prevent [1] 26/21
preventing [1] 14/13
previously [2] 5/25
26/12
principal [2] 8/22 15/20
probably [1] 39/5
procedural [5] 5/7 5/11
9/1 13/24 16/18
procedurally [2] 8/12
11/10
Procedure [3] 14/15
26/8 26/23
proceed [4] 4/24 32/6
34/3 40/17
proceeding [4] 17/3

28/6 32/2 37/10
proceedings [6] 2/12
7/24 15/22 15/24 36/12
42/8
process [1] 25/16
Professional [1] 42/4
Professor [1] 26/8
prohibitively [1] 30/17
proper [1] 22/12
proposed [1] 27/21
protect [1] 30/5
provide [2] 26/10 29/19
provided [3] 20/18
21/16 39/16
provides [5] 5/18 26/8
26/24
providing [1] 35/7
provision [18] 8/14 9/17
9/21 9/24 10/1 10/1
10/13 10/14 10/16 11/3
11/25 12/2 12/3 12/7
13/5 13/7 15/5 37/13
provisions [2] 11/19
12/22
publicly [1] 31/5
punitive [1] 4/12
purpose [4] 4/25 7/2
18/6 18/7
pursuant [4] 4/15 4/16
28/2 42/7
putting [1] 32/11

**Q**

question [8] 9/17 11/4
19/9 24/23 29/17 29/18
35/10 38/10
questionable [1] 19/4
questions [2] 13/24
21/2
quite [3] 16/23 19/13
35/7
quote [8] 11/14 11/16
11/20 12/13 25/16 25/16
27/22 27/23

**R**

ramifications [1] 39/9
rather [2] 11/11 30/21
RDB [1] 1/4
reached [1] 39/11
read [1] 20/6
really [7] 14/3 14/4 29/1
31/3 35/7 36/3 36/10
Realtime [1] 42/5
Realty [1] 35/20
reason [7] 8/13 8/17
10/24 12/22 13/18 19/10
26/4
reasonable [1] 8/2
reasons [4] 15/1 17/25
35/3 39/15
recognized [1] 9/3
reconsideration [1]

26/6
reconsidering [1] 36/3
record [6] 2/21 27/1
35/3 35/4 39/15 39/17
record's [1] 37/6
red [2] 13/4 13/9
redress [1] 4/13
reference [1] 12/9
references [1] 26/7
referred [1] 9/16
refers [1] 29/9
reflect [1] 35/3
reflected [3] 6/1 6/2
6/15
refusing [1] 31/21
regard [3] 11/10 14/25
18/12
regardless [3] 21/11
21/12 21/13
Registered [1] 42/4
regulations [1] 42/10
related [6] 13/12 20/8
30/4 38/4 39/4 39/5
relates [2] 18/25 34/3
released [1] 7/4
relief [5] 8/4 14/3 29/20
33/16 36/19
relieved [2] 8/16 15/2
relieves [1] 13/14
rely [1] 11/17
relying [1] 22/24
remains [1] 29/17
removed [1] 4/15
rendered [1] 9/11
Rent [11] 9/4 9/24 10/4
10/8 10/12 11/10 12/12
12/16 12/19 12/25 15/7
repeatedly [2] 10/21
22/21
reported [2] 1/23 42/8
reporter [7] 1/24 2/17
36/14 42/1 42/4 42/5
42/17
represent [5] 24/13
24/24 25/12 28/12 31/21
representative [1] 32/2
request [2] 16/17 36/4
requested [1] 36/13
requests [1] 23/24
required [2] 28/5 32/12
requirement [1] 11/9
requirements [1] 22/4
requires [3] 13/1 21/10
27/14
researched [1] 19/2
reserves [1] 19/9
resident [4] 5/20 38/19
38/20 38/21
resolve [1] 38/16
resolved [1] 6/5
respect [28] 2/6 5/25
6/21 8/4 14/9 14/13
14/15 14/23 16/6 19/21

21/1 21/2 25/1 25/19
25/20 26/5 26/6 28/6
30/7 31/20 32/20 32/22
34/6 34/19 37/25 37/25
38/1 38/18
respectfully [2] 17/2
37/14
responded [1] 40/14
responsible [5] 7/10
23/12 24/2 24/3 24/5
result [2] 2/13 7/8
resulting [1] 4/9
retained [1] 25/7
retainer [1] 25/11
reverse [1] 34/18
review [4] 4/6 7/23 14/8
26/5
reviewed [1] 39/14
revision [1] 8/18
RICHARD [1] 1/9
right [18] 5/17 6/6 8/25
10/23 13/12 13/17 13/21
19/18 20/17 24/5 24/10
25/9 26/4 32/13 32/15
34/25 38/9 40/4
ripe [1] 4/4
Ronda [5] 1/24 2/17
36/13 42/4 42/16
RPR [2] 1/24 42/16
rule [11] 9/15 14/14
14/15 17/8 17/9 17/11
19/15 22/1 26/8 26/23
29/20
ruled [7] 5/25 6/9 6/10
26/12 31/13 36/2 36/6
rules [6] 14/14 19/16
21/21 21/25 26/23 28/3
ruling [12] 9/10 15/17
17/6 18/20 19/11 19/13
19/16 29/13 34/19 36/16
37/18 37/19

**S**

safe [1] 40/23
said [9] 10/8 11/16
12/12 18/1 19/12 22/21
27/22 32/10 33/21
same [3] 11/18 12/22
15/12
Santa [10] 7/19 8/22
15/21 15/23 16/24 33/10
36/9 36/17 37/8 37/10
Sartin [1] 27/2
satisfied [1] 12/18
satisfies [1] 22/4
SAUDEK [9] 1/18 3/11
5/10 5/13 5/13 39/2 39/3
40/1 40/8
say [12] 14/25 16/13
18/9 19/7 19/24 21/17
28/21 31/2 32/16 32/21
34/20 39/22
saying [5] 9/24 20/3

21/8 24/15 29/2
says [5] 20/6 31/23
31/24 32/3 33/17
school [1] 5/9
second [3] 8/20 32/21
38/19
secondarily [1] 14/8
secondly [1] 8/15
section [6] 6/4 6/12 9/2
9/3 9/5 9/15 21/11 35/12
Sections [1] 4/16
see [1] 30/20
seek [4] 14/8 27/24
38/23 38/24
seeking [2] 14/3 17/18
seem [2] 15/23 15/25
seems [2] 15/19 16/4
sense [1] 16/25
sent [1] 22/12
separate [4] 7/7 17/17
18/21 23/7
separately [1] 13/20
September [3] 6/15
32/25 35/15
September 30 [6] 6/15
32/25 35/15
seq [1] 6/12
Sequoia [1] 11/6
serious [1] 19/9
served [1] 23/23
service [1] 22/5
services [2] 5/19 25/1
set [3] 35/3 39/15 39/17
settled [1] 20/10
severability [1] 12/11
severable [3] 12/10
12/13 12/16
severed [1] 12/20
she [1] 36/14
should [11] 7/15 18/10
18/16 21/20 26/11 27/10
27/16 27/19 27/20 38/3
39/1
side [2] 29/8 30/15
sign [1] 39/21
signed [1] 25/11
significant [1] 19/13
signup [5] 5/24 6/13
32/24 35/13
similarly [1] 25/20
simple [1] 35/7
simply [2] 17/16 33/2
since [4] 4/4 18/12
18/13 18/15
sins [1] 17/20
sit [1] 4/5
site [1] 35/14
sitting [1] 3/25
situated [1] 25/20
situation [3] 9/16 9/22
27/11
so [50]
so-called [1] 9/18

**S**

solicited [5]  24/9 24/17 24/18 24/19 27/23
soliciting [1]  40/9
some [10]  4/1 7/7 9/5 11/12 23/19 24/3 24/25 26/7 27/21 34/6
somehow [1]  27/10
someone [1]  39/1
somewhere [1]  37/19
sorry [1]  21/5
sought [3]  4/12 8/5 25/18
sound [1]  31/18
speak [3]  5/10 21/5 21/6
speaking [2]  3/10 5/14
speaks [1]  31/23
specifically [15]  2/16 6/18 7/4 10/11 10/12 11/1 11/3 11/8 11/17 12/2 21/10 22/2 24/16 27/4 39/8
squarely [1]  12/25
standard [2]  26/5 26/11
Standing [1]  2/10
stare [4]  19/5 19/8 19/10 19/12
started [1]  25/16
starting [1]  9/2
state [3]  28/25 36/8 38/22
states [6]  1/1 6/12 22/2 35/12 42/5 42/11
Stavlas [1]  2/14
stay [4]  4/20 7/24 15/24 40/23
stenographically [1]  42/8
stenographically-report ed [1]  42/8
steps [2]  16/18 30/16
still [5]  14/4 25/5 28/17 34/25 38/18
Street [1]  1/25
stretch [1]  16/11
strictly [1]  16/7
student [1]  5/21
students [1]  5/19
subject [1]  6/21
submissions [1]  39/14
subsequent [1]  9/9
subsequently [2]  4/18 18/15
substance [1]  13/23
such [4]  26/11 33/1 38/3 39/1
suffered [1]  30/6
sufficient [1]  20/25
suggested [1]  27/14
suing [1]  38/22
summarized [3]  5/7 5/11 33/12
summary [1]  8/2 28/7

**Superior [5]**  7/19 15/22 16/24 33/10 36/17
Supp [1]  35/21
support [1]  22/25
supposed [1]  28/20
supposedly [1]  23/1
Supreme [5]  9/4 9/23 12/12 19/23 20/3
sure [6]  8/20 14/3 14/4 18/8 19/2 19/21
survival [3]  21/6 21/10 21/17
survives [1]  13/6
Sutcliffe [1]  3/22

**T**

T-O-P-P-E [1]  3/1
T-R-O-J-A-N-O-W-S-K-I [1]  3/4
take [9]  5/4 29/3 31/8 32/10 35/6 36/25 38/6 38/15 39/20
taken [4]  2/13 16/18 22/14 22/24
talking [2]  20/20 40/9
teaching [2]  11/5 11/12
TELECONFERENCE [1]  1/8
tell [1]  40/12
tells [1]  22/16
terminate [3]  7/16 13/13 13/21
terminated [2]  13/16 30/1
termination [4]  13/6 13/7 13/8 20/9
terms [26]  2/12 6/1 6/14 9/1 12/4 12/8 12/23 13/6 13/8 14/9 14/13 15/19 17/18 20/8 20/15 21/8 21/12 21/22 27/7 27/18 30/9 32/25 34/18 35/15 37/6 38/11
test [1]  12/19
text [1]  20/5
than [11]  11/11 19/5 19/8 19/10 21/17 22/7 23/9 25/6 29/6 30/21 31/25
thank [9]  2/14 2/22 8/8 8/25 38/8 40/4 40/6 40/23 40/25
Thanks [1]  3/15
that [324]
that's [45]
their [7]  2/17 19/25 22/21 29/10 29/25 31/22 33/15
them [4]  24/13 24/24 32/4 32/8
themselves [3]  2/20 2/24 3/14
then [19]  3/9 4/15 4/18

5/3 7/12 8/5 8/15 10/14 12/17 14/8 16/9 18/19 24/3 30/6 30/15 32/7 32/15 32/25 39/7
there [47]
there'd [1]  19/9
there's [22]  12/9 15/7 18/3 18/13 19/7 21/12 28/19 29/11 30/1 33/22 34/1 34/6 34/7 34/15 34/16 34/19 35/1 37/10 37/12 38/10 39/5 40/15
therefore [2]  16/22 33/25
thereof [1]  20/10
these [16]  6/21 7/11 7/16 16/20 20/8 21/9 22/17 22/18 23/12 24/9 24/12 24/25 26/1 31/8 31/20 36/12
they [19]  6/11 19/24 20/1 20/2 20/13 20/16 20/23 21/14 22/22 29/3 29/4 29/4 29/10 30/14 30/15 32/10 33/24 33/25 38/23
they're [4]  12/14 20/3 20/24 28/18
they've [2]  20/22 20/24
thing [2]  8/21 17/8
things [1]  16/10
think [21]  4/3 8/2 8/10 12/4 15/11 15/12 15/15 16/11 17/7 17/23 17/23 20/16 21/3 21/20 29/1 33/12 33/15 37/20 37/23 39/11 40/21
thinks [1]  21/7
this [82]
Thomas [6]  1/24 2/17 36/13 36/13 42/4 42/16
those [14]  6/19 15/6 15/24 18/24 21/13 22/25 23/15 23/17 25/7 25/7 30/8 30/9 30/19 35/18
though [1]  22/16
thought [1]  17/11
thousand [2]  18/25 32/7
three [3]  7/5 25/17 26/18
through [4]  15/2 24/9 25/8 30/18
throughout [1]  19/25
time [5]  15/12 18/17 24/25 38/14 40/3
Timonium [1]  3/6
today [4]  2/6 2/16 39/15 40/3
today's [1]  37/18
together [1]  40/18
told [2]  20/24 31/16
tomorrow [1]  39/21
too [1]  5/6

took [3]  22/17 29/3 30/16
TOPPE [3]  1/15 2/25 3/1
total [1]  23/18
totaling [1]  7/11
totally [1]  37/17
toward [1]  12/18
transcript [4]  36/12 36/14 42/8 42/9
trial [2]  26/20 30/3
triggered [1]  5/3
triggers [1]  35/16
triple [10]  21/21 21/25 22/1 22/4 22/21 23/10 23/11 23/23 31/4 32/10
TROJANOWSKI [3]  1/15 3/3 3/3
trouble [1]  28/17
true [3]  23/17 31/18 42/7
try [1]  20/2
trying [4]  3/25 31/7 36/15 40/8
turn [1]  13/25
two [5]  2/24 16/10 26/19 29/25 37/11
type [2]  21/17 32/10
types [1]  6/3
Tyson [2]  2/16 39/12

**U**

U.S [1]  12/14
U.S.C [2]  4/16 42/7
ultimately [2]  4/14 4/21
under [21]  8/21 9/3 9/5 9/15 10/9 10/23 10/24 11/24 13/10 13/15 13/18 13/19 14/14 14/15 15/3 15/6 18/2 21/21 23/22 29/20 35/8
underlying [5]  14/6 14/19 14/20 16/8 16/14
underscoring [1]  13/6
understand [17]  4/6 5/18 7/17 16/10 16/16 16/17 21/7 23/2 24/1 24/3 24/8 25/25 28/24 33/18 36/22 37/17 38/7
Understood [1]  38/7
undertook [1]  30/5
unenforce [1]  28/19
unenforceable [6]  9/12 14/6 14/20 16/9 16/15 28/20
unintended [2]  27/5 27/8
UNITED [5]  1/1 6/12 35/12 42/5 42/11
University [1]  5/22
unless [1]  31/24
unnecessary [1]  7/3
until [5]  22/3 22/3 22/9

22/23 31/13
up [4]  4/1 21/9 21/19 33/8
upheld [3]  6/19 33/1 35/18
upon [9]  6/8 16/7 27/12 33/2 33/3 34/16 36/1 36/6 37/24
us [6]  17/6 17/25 18/10 31/3 32/14 40/7
use [13]  6/1 6/15 12/8 13/6 13/8 20/9 20/15 21/8 21/12 21/23 30/9 32/25 35/15
used [1]  26/22
uses [1]  12/23

**V**

valid [1]  21/8
validity [7]  9/20 10/2 10/4 10/15 10/17 12/7 20/10
variance [1]  33/13
various [2]  16/20 24/9
venue [1]  23/1
versus [6]  2/3 10/5 26/13 27/2 35/20 35/22
very [14]  8/8 8/25 9/22 9/22 10/8 11/12 11/12 17/16 22/25 39/2 39/2 40/3 40/4 40/23
view [12]  5/8 5/12 11/24 13/4 18/11 34/9 36/25 37/13 37/15 39/24 40/1 40/5
virtual [1]  2/12
virtue [1]  9/12
vs [1]  1/4

**W**

wait [1]  38/19
waive [3]  6/6 20/17 32/12
want [14]  2/14 8/20 11/14 14/4 19/15 21/5 21/6 29/4 29/4 30/15 32/18 36/14 36/22 37/5
wanted [4]  21/19 25/22 25/23 31/11
was [45]
Washington [1]  3/21
wasn't [3]  21/19 31/13 40/8
way [7]  2/9 10/21 13/12 16/4 36/8 37/12 40/8
we [46]
we'll [1]  39/12
we're [8]  2/9 13/3 18/7 19/2 20/20 40/2 40/12 40/21
we've [5]  3/25 21/18 39/11 39/13 39/14
web [1]  35/14

**W**

website [2]  5/24 6/14
weeds [1]  5/6
weeks [1]  4/5
well [18]  2/17 2/18 3/18
6/16 14/25 15/9 15/11
15/18 17/15 18/19 19/18
21/18 23/2 24/18 28/8
32/3 32/9 35/21
went [2]  15/1 31/14
were [6]  8/11 12/24 18/2
25/7 26/15 32/21
Westlaw [1]  35/23
what [32]  8/10 10/8
11/16 11/21 12/25 13/25
14/3 16/17 20/5 20/13
21/7 21/11 21/13 24/15
25/13 28/1 28/17 28/18
29/1 29/4 29/12 29/25
30/5 30/12 31/6 31/16
33/7 33/12 33/15 33/19
34/23 36/4
whatever [2]  28/13
30/25
when [5]  19/16 22/7
26/11 32/15 40/9
whenever [1]  26/25
where [16]  5/17 8/2 9/17
9/24 10/2 10/23 11/6
12/16 17/1 22/11 23/1
27/12 37/3 37/15 37/17
40/21
whether [27]  6/10 12/5
13/16 15/7 16/2 17/12
18/3 19/4 19/9 21/12
27/15 27/16 27/18 27/19
27/23 27/23 28/22 29/17
29/24 30/5 30/24 33/23
34/6 34/16 35/15 36/7
38/11
which [28]  2/4 2/7 2/11
4/12 4/24 5/2 5/2 5/4
6/15 9/13 16/10 16/11
18/2 21/19 22/4 22/22
23/20 23/23 24/4 25/13
27/12 27/22 29/25 35/9
35/18 35/22 36/25 40/19
while [1]  5/21
who [6]  2/15 3/13 5/21
25/15 36/14 36/18
who's [1]  2/19
whoever [1]  5/10
whole [6]  10/5 10/11
11/2 12/15 18/6 18/7
whom [2]  7/21 25/2
why [2]  17/11 30/1
will [19]  3/13 5/14 6/5
19/15 20/10 22/22 25/6
25/6 28/5 30/20 34/3
35/3 39/4 39/7 39/12
39/18 39/20 39/20 39/21
willing [1]  36/11
wind [1]  21/9

winning [1]  35/16
withdraw [1]  32/17
within [4]  12/25 14/22
26/9 30/9
without [9]  4/22 5/6
22/25 24/23 28/10 34/5
35/10 37/22 40/20
won't [1]  39/22
word [1]  13/6
words [1]  19/24
would [40]  2/20 6/20
13/25 14/25 15/11 15/23
15/25 16/3 16/3 16/6
16/25 17/1 18/5 19/3
19/4 19/4 19/10 19/15
21/2 24/2 26/1 27/24
29/5 29/19 32/4 32/5
32/6 32/7 32/10 32/14
36/15 37/15 37/18 37/20
37/20 38/5 38/6 38/17
39/5 39/9
Wright [1]  26/8
write [1]  32/16
wrong [1]  20/21

**Y**

yeah [3]  23/25 33/14
33/19
year [5]  4/21 7/18 9/10
11/13 11/20
yes [11]  5/9 8/24 14/7
14/11 23/17 25/7 26/3
33/24 34/24 34/4 37/4 38/15
you [99]
you'll [1]  8/6
you're [7]  14/3 16/9
16/13 24/15 34/18 34/23
37/23
you've [2]  22/3 36/20
your [92]

**Z**

ZAJDEL [12]  1/14 2/23
5/8 19/19 19/20 24/16
28/7 32/19 36/24 38/9
39/3 40/5